UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WESTCHESTER PUTNAM COUNTIES HEAVY & HIGHWAY LABORERS LOCAL 60 BENEFITS FUND, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Civil Action No. 3:24-cv-00334 Judge Aleta A. Trauger |
| Plaintiff, ) ) | <u>CLASS ACTION</u> |
| vs. ) ) | |
| SHOALS TECHNOLOGIES GROUP, INC., et al., ) ) ) | |
| Defendants. ) ) | |
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. 3:24-cv-00580 Judge Waverly D. Crenshaw, Jr. Magistrate Judge Jeffery S. Frensley |
| Plaintiff, ) ) | <u>CLASS ACTION</u> |
| vs. ) ) | |
| SHOALS TECHNOLOGIES GROUP, INC., et al., ) ) ) | |
| Defendants. ) ) | |
| KISSIMMEE UTILITY AUTHORITY EMPLOYEES' RETIREMENT PLAN, on Behalf of Itself and All Others Similarly Situated ) ) ) ) | Civil Action No. 3:24-cv-00598 Judge Waverly D. Crenshaw, Jr. Magistrate Judge Jeffery S. Frensley |
| Plaintiff, ) ) | <u>CLASS ACTION</u> |
| vs. ) ) | |
| SHOALS TECHNOLOGIES GROUP, INC., et al., ) ) ) | |
| Defendants. ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

**TABLE OF CONTENTS**

|  |  |  | **Page** |
|---|---|---|---|

I.      INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................2

III.   ARGUMENT..........................................................................................................7

         A.      The Related Actions Should Be Consolidated...........................................7

         B.      Erste AM Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff ..........................................................................................8

                 1.      Erste AM's Motion Is Timely......................................................9

                 2.      Erste AM Has the Largest Financial Interest in the Relief Sought by the Class ..................................................................9

                 3.      Erste AM Is Typical and Adequate of the Putative Class...........................9

         C.      The Court Should Approve Erste AM's Selection of Counsel ...............................11

IV.   CONCLUSION.....................................................................................................14

4888-4051-0655.v1

**TABLE OF AUTHORITIES**

**CASES**

*Bennet v. Sprint Nextel Corp.*,
No. 2:09-cv-02122 (D. Kan.)........................................................................................12

*Boston Ret. Sys. v. Alexion Pharms., Inc.*,
2023 WL 2932485 (D. Conn. Apr. 13, 2023)........................................................10, 11

*Burges v. Bancorpsouth, Inc.*,
2017 WL 2772122 (M.D. Tenn. June 26, 2017)........................................................13

*City of Sterling Heights Gen.Ret. Sys. v. Hospira, Inc.*,
No. 1:11-cv-08332 (N.D. Ill.) ....................................................................................12

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010)........................................................13

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865-AG-JCG (C.D. Cal.)...................................................................14

*In re Am. Realty Cap. Props., Inc. Litig.*,
No. 1:15-mc-00040 (S.D.N.Y.) ..................................................................................12

*In re Barrick Gold Sec. Litig.*,
No. 1:13-cv-03851 (S.D.N.Y.)....................................................................................12

*In re Cardinal Health, Inc. Sec. Litig.*,
No. 2:04-cv-00575-ALM (S.D. Ohio) ........................................................................13

*In re Enron Corp. Sec.*,
No. 4:01cv-03624 (S.D. Tex.) ....................................................................................13

*In re HealthSouth Corp. Sec. Litig.*,
No. 2:03-cv-01500-KOB-TMP (N.D. Ala.)................................................................14

*In re National Prescription Opiate Litigation*,
MDL 2804 (N.D. Ohio) ..............................................................................................12

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
No. 1:01-cv-01451-REB-KLM (D. Colo.) .................................................................14

*In re Twitter, Inc. Sec. Litig.*,
No. 4:16-cv-05314 (N.D. Cal.) ...................................................................................12

4888-4051-0655.v1

*In re UnitedHealth Group Inc. Sec. Litig.*,
   No. 0:06-cv-01691-JMR-FLN (D. Minn.) .................................................................14

*In re Vivendi Universal, S.A. Sec. Litig.*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009)....................................................................10

*Jones v. Pfizer*,
   No. 1:10-cv-03864 (S.D.N.Y.)................................................................................12

*Kissimmee Utility Auth. Emps. Ret. Plan v. Shoals Techs. Grp., Inc.*,
   No. 3:24-cv-00598 (M.D. Tenn.)..................................................................... *passim*

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
   No. 1:02-cv-05893 (N.D. Ill.) .................................................................................14

*Okla. Police Pension & Ret. Sys. v. Shoals Techs. Grp., Inc.*,
   No. 3:24-cv-00580 (M.D. Tenn.)................................................................................1

*OSI Risk Arbritrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014)..........................................................................11

*Schuh v. HCA Holdings, Inc.*,
   No. 3:11-cv-01033, ECF 567 (M.D. Tenn. Apr. 11, 2016) .....................................13

*St. Clair Cnty. Emps.'Ret. Sys. v. Acadia Healthcare Co., Inc.*,
   2019 WL 494129 (M.D. Tenn. Jan. 9, 2019)...........................................................13

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
   325 F.R.D. 280 (D. Minn. 2018)..............................................................................12

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)...............................................................................10, 11

*Washtenaw Cnty. Emps. Ret. Sys. v. Dollar Gen. Corp.*,
   2024 WL 1468982 (M.D. Tenn. Apr. 4, 2024)...................................................8, 9, 10

*Westchester Putnam Cntys. Heavy & Highway Laborers Local 60*
   *Benefits Fund v. Shoals Techs. Grp., Inc.*,
   No. 3:24-cv-00334 (M.D. Tenn.).......................................................................1, 8, 9

4888-4051-0655.v1

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§77z-1(a)(1) ................................................................................................................8
§77z-1(a)(3)(A) ...........................................................................................................9
§77z-1(a)(3)(A)(i) .......................................................................................................8
§77z-1(a)(3)(B)(i) .....................................................................................................1, 8
§77z-1(a)(3)(B)(ii) ....................................................................................................1, 7
§77z-1(a)(3)(B)(iii) ......................................................................................................1
§77z-1(a)(3)(B)(iii)(I) .................................................................................................8
§77z-1(a)(3)(B)(iii)(I)(cc) ...........................................................................................9
§77z-1(a)(3)(B)(v) ....................................................................................................2, 11

Federal Rules of Civil Procedure
Rule 23 ................................................................................................................8, 9, 10
Rule 42(a) ..............................................................................................................1, 7

4888-4051-0655.v1

## I.    INTRODUCTION

Presently pending before this Court are three related securities class actions (the "Related Actions") brought on behalf of purchasers of Shoals Technologies Group, Inc. ("Shoals" or the "Company") common stock between January 27, 2021 and May 7, 2024 (the "Class Period"), including purchases directly in Shoals' December 2022 secondary public offering of Class A common stock (the "SPO") against the Company, certain senior officers, directors, and underwriters for alleged violations of the Securities Act of 1933 (the "1933 Act") and Securities Exchange Act of 1934 (the "1934 Act").[1]  The PSLRA requires district courts to resolve consolidation before appointing a lead plaintiff in securities cases like this.  *See* 15 U.S.C. §77z-1(a)(3)(B)(ii).[2]  Here, the Related Actions should be consolidated because they each involve substantially similar issues of law and fact.  *See* Fed. R. Civ. P. 42(a).

As soon as practicable after its decision on consolidation, the court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions."  15 U.S.C. §77z-1(a)(3)(B)(ii).  The lead plaintiff is the member "of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §77z-1(a)(3)(B)(i). Erste Asset Management GmbH ("Erste AM") should be appointed lead plaintiff because it filed a timely motion, has a substantial financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests.  *See* 15 U.S.C. §77z-1(a)(3)(B)(iii).  In addition, Erste

---

[1]    The Related Actions are: *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefits Fund v. Shoals Techs. Grp., Inc.*, No. 3:24-cv-00334 (M.D. Tenn.); *Okla. Police Pension & Ret. Sys. v. Shoals Techs. Grp., Inc.*, No. 3:24-cv-00580 (M.D. Tenn.); and *Kissimmee Utility Auth. Emps. Ret. Plan v. Shoals Techs. Grp., Inc.*, No. 3:24-cv-00598 (M.D. Tenn.).  All emphasis is added and all citations are omitted unless otherwise indicated.

[2]    Because the Private Securities Litigation Reform Act of 1995's ("PSLRA") lead plaintiff provisions applicable to the 1933 Act and 1934 Act are virtually identical, only the 1933 Act provisions are cited herein.

4888-4051-0655.v1

AM's selection of Motley Rice LLC and Robbins Geller Rudman & Dowd LLP as lead counsel for the putative class should be approved. 15 U.S.C. §77z-1(a)(3)(B)(v).

## II.      STATEMENT OF FACTS

Founded in 1996, Shoals is a provider of electrical balance of systems ("EBOS") solutions and components for solar, battery storage, and electrical vehicle charging applications. Shoals' EBOS provides components necessary for the transfer of electrical power produced by solar panels to intermediate locations within a solar project and ultimately to the power grid. Shoals employs a proprietary EBOS system, which it dubs a "combine-as-you-go" solution, which the Company claims offers several advantages over conventional EBOS systems using "homerun" wiring architecture. In contrast to conventional EBOS systems, Shoals' combine-as-you-go solution uses specialized wire harnesses to connect multiple strings of solar panels to Shoals' proprietary above-ground feeder cable known as a "Big Lead Assembly" ("BLA"). The BLA is Shoals' core combine-as-you-go product.

Shoals claims that its proprietary wire system requires fewer wires and wire connections than other offerings and eliminates altogether the need for other materials utilized in homerun wiring architecture, which the Company states results in lower labor and material costs. Of particular importance to investors, Shoals purports that its proprietary solutions have greater reliability and lower maintenance costs than conventional EBOS systems.

Shoals offers its customers an assurance type warranty that protects against manufacturer defects. The Company accounts for warranty liabilities by recording a reserve provision for estimated future costs related to warranty remediation expenses. Since Shoals' initial public offering in January 2021 until the revelations detailed herein, the Company recorded only modest amounts in warranty-related reserves. For example, for fiscal years ending December 31, 2021 and 2022 Shoals' estimated accrued warranty reserve was $100,000 and $600,000, respectively.

- 2 -

Shoals generates the majority of its revenue from the sale of "system solutions," which are complete EBOS systems that employ several of the Company's EBOS components. Shoals also generates revenue from the sale of individual EBOS components, as well as other components used for battery storage and EV charging applications. In fiscal year 2022, Shoals derived approximately 88% and 22% of its revenue from the sale of system solutions and from the sale of components, respectively. During the Class Period, Shoals' combine-as-you-go system solutions carried higher margins than its other products and was therefore the most profitable source of revenue for the Company.

Shoals provides investors with measures of client demand and anticipated future business through two operational metrics: (i) backlog; and (ii) awarded orders. The Company defines "backlog" as "signed purchase orders or contractual minimum purchase commitments with take-or-pay provisions." *Kissimmee* Action, ECF 1 at ¶32. "Awarded orders" is defined as orders that Shoals is in the "process of documenting a contract but for which a contract has not been signed." *Id.* Shoals often reports its backlog and awarded orders through a single monetary figure representing the total sum of future expected revenue. Accordingly, Shoals' backlog and awarded orders are each important forward indicators of the Company's future financial, operational, and business performance.

Throughout the Class Period, Defendants emphasized the purported "quality," "reliability," and "safety" of Shoals' EBOS products and claimed these purported advantages were critical to the Company's ability to generate business. For example, speaking during an August 2022 conference call, Defendant Jason R. Whitaker emphasized the "performance, quality, reliability, [and] installation savings" of Shoals' offerings and represented that these benefits served as a launch pad for the Company's "long-term" relationships with its clients, stating in pertinent part as follows:

4888-4051-0655.v1

Case 3:24-cv-00334    Document 22    Filed 05/21/24    Page 8 of 24 PageID #: 117

Components revenue increased 97% year-over-year, driven by increases in shipments of battery storage products as well as shipments of solar products to a significant number of new customers. New customers projects are typically designed to timeline systems and they generally start the relationship with Shoals by buying components that will work with these types of systems.

***Re-fixing the performance, quality, reliability, installation savings and customer service that Shoals offers***, they become open to trying our combine-as-you-go architecture and buy the BLA. ***Once customers make the transition, this usually marks the start of a long-term relationship***.

*Kissimmee* Action, ECF 1 at ¶33.

Defendants' filings with the Securities and Exchange Commission ("SEC") likewise highlighted the "several advantages" that Shoals' products purportedly enjoyed over conventional EBOS systems with claims that Shoals' combine-as-you-go system had "greater reliability," "lower maintenance costs," and "lower[] material and shipping costs" as compared to competing products. *Kissimmee* Action, ECF 1 at ¶34.

Due in substantial part to the "value proposition" that Shoals' products purported to offer, Defendants claimed throughout the Class Period that demand for Shoals' products was "robust" and "continue[d] to grow," and highlighted the Company's "record" breaking revenue and earnings. *Kissimmee* Action, ECF 1 at ¶35. For example, in connection with Shoals' fourth quarter 2022 earnings announcement, the Company boasted that it had "'set new records for revenue, gross profit, net income, adjusted EBITDA and adjusted net income'" for both the fourth quarter and full year 2022. *Id.* Further emphasizing Shoals' performance, Defendant Whitaker represented that Shoals was "'commercially, operationally and financially'" the strongest "'it ha[d] ever been.'" *Id.*

Unbeknownst to investors, however, during the Class Period Shoals was suffering from a massive, undisclosed warranty problem that impacted approximately 30% of wire harnesses Shoals had manufactured during the 2020 through 2022 time period. Beginning several months prior to the start of the Class Period, Shoals had utilized defective specialty wires manufactured by a third party

- 4 -

in a substantial portion of its wire harnesses, resulting in excessive "shrinkback" whereby insulating material surrounding wires at connection points improperly contracted, leaving live wires exposed and creating serious risks of fire, injury, or death to Shoals' customers. As a result, Shoals was liable for millions of dollars in undisclosed warranty remediation costs, which the Company has ultimately estimated could cost as much as $185 million. The widespread use of defective wires in its projects has also significantly damaged Shoals' reputational standing among its customers. As a result, Shoals' ability to competitively differentiate its offerings has been materially impaired, exposing the Company's business, finances, and operations to significant disruption and reputational harm, as well as the material undisclosed risks of lost sales, increased costs, and other negative consequences.

In May 2023 – approximately three years after the Company began utilizing defective and potentially dangerous wiring in its harness installations – Shoals first mentioned the shrinkback issue in a Form 10-Q quarterly report for its first fiscal quarter ended March 31, 2023. The report materially misrepresented the scope of the issue, stating the Company only had $400,000 in accrued warranty liability at quarter end, a $200,000 decrease from the prior quarter. The quarterly report also misleadingly downplayed the harm to the Company by describing the shrinkback issue as impacting only "a subset of specific colored wire provided by one specific supplier." *Kissimmee Action*, ECF 1 at ¶37.

Then, on August 1, 2023, Shoals reported its second fiscal quarter 2023 results and revealed that it was recording a $9.4 million warranty expense to reflect costs primarily related to shrinkback remediation, offsetting other claimed improvements in the Company's margin profile and causing its gross margins to decline sequentially to 42.4% from 45.9% in the prior quarter. During the corresponding conference call, Defendant Dominic Bardos sought to assuage investor concerns

- 5 -

regarding the Company's warranty expense exposure, falsely stating that the warranty expense incurred within the quarter was "adequate to do the remediation required." *Kissimmee* Action, ECF 1 at ¶38. Contrary to this representation, Shoals would go on to announce an additional $50 million in shrinkback warranty expenses the following quarter, representing a more than five-fold increase. Shoals would likewise disclose that 30% of its wire harnesses manufactured from 2020 to 2022 had been impacted by the shrinkback issue and that ultimate remediation costs could reach as high as $185 million.

As would later be revealed, the installation of defective – and potentially dangerous – wire harnesses on so many of the Company's projects has also negatively impacted Shoals' customer relationships. For example, a November 10, 2023 Roth MKM analyst report stated their "checks" with Shoals' customers

> suggest that since receiving the safety notice from SHLS regarding shrinkback . . . , customers are likely scrambling to identify any instances of the issue. ***Critical concerns we have heard include (1) Serious injury or death, (2) The exposed wiring may cause fire and property damage, and (3) PUCs may get involved with increased scrutiny***.

Moreover, at least one affected site has already reported property damage arising from a brush fire believed to have ignited as a result of contact with a defective, Shoals-installed wire harness.

In subsequent quarters, Shoals has revealed dramatically deteriorating results, reflecting in part the effects of the shrinkback issue on the Company's customer relationships, and the materialization of the risks concealed by Defendants' materially misleading misstatements and omissions as detailed herein. In reporting its fourth fiscal quarter of 2023 results, Shoals revealed a sequential quarterly decline of $2 million in the Company's backlog and awarded orders. The Company also issued disappointing revenue guidance for fiscal year 2024 of $480 million to $520 million that was approximately 19% below consensus estimates at the midpoint. Shoals' business

- 6 -

further deteriorated in its first fiscal quarter of 2024, with backlog and awarded orders falling sequentially by over $16 million and the Company reducing its already disappointing guidance to a range of $440 million to $490 million due in part to an "unprecedented" customer cancellation and project delays. In a Form 10-Q quarterly report the Company filed with the SEC, Shoals has also disclosed that the Company "may increase" its estimated warranty liability a "material" amount. *Kissimmee* Action, ECF 1 at ¶41.

As a result of these disclosures, the price of Shoals Class A common stock has declined from a Class Period high of over $40 per share to less than $8 per share by the end of the Class Period, causing Erste AM's funds and the proposed class members to suffer hundreds of millions of dollars in losses and economic damages under the federal securities laws.

## III.  ARGUMENT

### A.  The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §77z-1(a)(3)(B)(ii). Consolidation is appropriate where actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a).

Consolidation is appropriate because the Related Actions rely on the same underlying facts and assert the same false and misleading statements and omissions. Moreover, the Related Actions all bring claims under the federal securities laws against substantially overlapping defendants.[3] Consolidation would preserve judicial resources and promote efficient prosecution of the litigation. Accordingly, the Court should consolidate the Related Actions.

___

[3]  Any minor differences between the Related Actions will be reconciled with the filing of a consolidated complaint.

4888-4051-0655.v1

## B. Erste AM Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1933 or 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(1); *see also* 15 U.S.C. §77z-1(a)(3)(B)(i). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §77z-1(a)(3)(A)(i). The statutory notice in the first-filed *Westchester* action was published on March 22, 2024. *See* Declaration of Christopher M. Wood in Support of Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Wood Decl."), Ex. A.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that –

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii)(I); *Washtenaw Cnty. Emps. Ret. Sys. v. Dollar Gen. Corp.*, 2024 WL 1468982, at *1 (M.D. Tenn. Apr. 4, 2024). Erste AM meets these requirements and should be appointed Lead Plaintiff.

- 8 -

### 1. Erste AM's Motion Is Timely

The March 22, 2024, statutory notice published in connection with the filing of the first-filed *Westchester* complaint advised class members of the pendency of the action, the claims asserted, and the right to move the Court for appointment as lead plaintiff within 60 days, or by May 21, 2024. *See* Wood Decl., Ex. A; 15 U.S.C. §77z-1(a)(3)(A). In addition, on May 8, 2024 and May 15, 2024, notices were published in connection with the filing of the *Oklahoma Police* and *Kissimmee* complaints, respectively, informing class members of the pendency of the actions, the claims asserted (including the 1933 Act claims and the class periods associated therewith) and the right to seek appointment as lead plaintiff by May 21, 2024. *See* Wood Decl., Exs. B-C. This Motion is timely filed and Erste AM is eligible for appointment as lead plaintiff.

### 2. Erste AM Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification, Erste AM's funds purchased or acquired over 3.1 million shares of Shoals common stock during the Class Period and suffered over $33 million in losses as a result of Defendants' alleged misconduct. *See* Wood Decl., Exs. D, E. To the best of its counsel's knowledge, there are no other named plaintiffs with a larger financial interest. Therefore, Erste AM satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. Erste AM Is Typical and Adequate of the Putative Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc). "Under Rule 23, there are two requirements for establishing one's status as the lead plaintiff: (1) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (2) the representative parties will fairly and adequately protect the interests of the class." *Washtenaw*, 2024 WL 1468982, at *1 (cleaned up).

- 9 -

"The typicality requirement of Rule 23 'insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members.'" *Washtenaw*, 2024 WL 1468982, at *2. Here, if appointed, Erste AM intends to allege that Defendants violated the federal securities laws by disseminating materially false and misleading statements and omissions and that Erste AM's funds were harmed in connection therewith, just like all of the other putative class members. Therefore, the Court should find its claims are typical to the claims of the other class members.

"In order to adequately represent a class, 'the representative must have common interests with unnamed members of the class, and . . . it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Washtenaw*, 2024 WL 1468982, at *3. Erste AM is an Austrian asset management company with billions of Euros of assets under management. As described in the accompanying Declaration of Dr. Leopold Specht, Erste AM serves as the investment management company for the funds listed in Erste AM's accompanying Certification. *See* Wood Decl., Ex. F at ¶¶28-41. None of the funds are independant legal entities and they do not have the legal capacity to sue or be sued in their own name. *See id.* at ¶5 ("The fund is not a legal entity."). As the funds' investment management company, Erste AM (and only Erste AM) is authorized to act on behalf of the funds, including bringing claims for losses incurred by the funds in this Action. *See id.* at ¶¶21-45; *see also Boston Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *6-*9 (D. Conn. Apr. 13, 2023) (holding, at the more rigorous class certification stage, that Erste AM has standing to represent its funds and appointing Erste AM as class representative in securities class action); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 581-82 (S.D.N.Y. 2009) (finding "that the relationship between Austrian funds and their management companies qualifies for the *Huff* exception" and that an Austrian management company was

- 10 -

"authorized to sue as a matter of law")[4]; *OSI Risk Arbritrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 404 (D. Del. 2014) (finding investment manager had standing to sue where funds have "'no legal personality and cannot on their own'" and where manager had "'exclusive right'" and "'legal mandate'" to "engage in litigation on behalf of the . . . funds"). Erste AM is familiar with the requirements and responsibilities of being a lead plaintiff in a securities class action and is willing to undertake those responsibilities on behalf of the putative class in this case. *See* Wood Decl., Ex. D. Last year, Erste AM served as a lead plaintiff and later class representative in *Alexion*, which resulted in a $125 million recovery for investors. Moreover, Erste AM is not aware of any potential conflicts of interest or any matters that would preclude it from fulfilling its duties as lead plaintiff. Additionally, as explained below, Erste AM has selected experienced and qualified counsel with an office in this District, further evidencing its ability to fairly and competently represent the interests of the class.

Because Erste AM filed a timely motion, has a large financial interest in the relief sought by the class, and demonstrated its typicality and adequacy, the Court should adopt the presumption that it is the "most adequate plaintiff."

### C. The Court Should Approve Motley Rice and Robbins Geller As Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §77z-1(a)(3)(B)(v). Erste AM requests the Court to approve

---

[4]    The so-called prudential (or "*Huff*") exception allows third-party standing "where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008). Erste AM has a close relationship to its funds, as evidenced by the fact it serves as their management company, and there is a barrier to the funds asserting the claims given they do not have the capacity to bring suit. *See Alexion*, 2023 WL 2932485, at *7 ("Erste has demonstrated 'a close relationship to the injured party,' *Huff*, 549 F.3d at 109 – i.e., to investors in the funds that Erste manages – akin to that which allows '[t]rustees [to] bring suits to benefit their trusts'") (alterations in original).

- 11 -

Motley Rice and Robbins Geller as Lead Counsel for the class. These firms have substantial experience representing defrauded investors and a demonstrated history of success serving as lead counsel in numerous securities fraud class actions, including in this District. *See* Wood Decl., Exs. G-H (firm resumes). Motley Rice and Robbins Geller have a history of successfully prosecuting securities class actions together, including *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.) ($1.025 billion recovery), *In re Twitter, Inc. Sec. Litig.*, No. 4:16-cv-05314 (N.D. Cal.) ($809.5 million recovery); *Jones v. Pfizer*, No. 1:10-cv-03864 (S.D.N.Y.) ($400 million recovery); *In re Barrick Gold Sec. Litig.*, No. 1:13-cv-03851 (S.D.N.Y.) ($140 million recovery); *Bennet v. Sprint Nextel Corp.*, No. 2:09-cv-02122 (D. Kan.) ($131 million recovery); and *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 1:11-cv-08332 (N.D. Ill.) ($60 million recovery).

As discussed above and in its accompanying resume, Motley Rice has recovered billions of dollars for shareholders in numerous securities fraud actions. *See* Wood Decl., Ex. G; *see also W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 287 (D. Minn. 2018) ("Plaintiffs' counsel – lawyers from Robbins Geller Rudman & Dowd LLP and Motley Rice LLC – is well-qualified to serve as class counsel in this case. First, the filings in this case demonstrate that counsel has sufficiently investigated and identified potential claims in this case. . . . Second, counsel has experience serving as class counsel in other disputes. . . . Third, counsel has demonstrated in this case and others that they have significant knowledge of securities law. . . . Finally, the Court is persuaded that counsel has sufficient resources to serve as class counsel in this case."). In addition, Motley Rice currently serves as lead counsel in the multi-district litigation captioned *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio), which is pending in this Circuit. That

- 12 -

litigation – which has to-date seen the recovery of tens of billions of dollars – has been described as "the most complex civil action ever tackled by any American court."

Robbins Geller, a 200-attorney firm with an office in this District, regularly represents institutional and individual investors in nationwide securities litigation, including within the Sixth Circuit and this District. *See* Wood Decl., Ex. H. District courts throughout the country, including the judges of this Court, have noted Robbins Geller's reputation for excellence in prosecuting securities class actions. *See, e.g.*, *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, at *6 (M.D. Tenn. Jan. 9, 2019) (appointing Robbins Geller as lead counsel, finding that "this Court has previously found Robbins Geller to be 'well qualified' for the task of representing a class in a securities action"); *Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122 (M.D. Tenn. June 26, 2017) (certifying class and appointing Robbins Geller as class counsel); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2010 WL 1790763, at *4 (M.D. Tenn. Apr. 30, 2010) (finding Robbins Geller attorneys to be "well qualified and experienced to represent the class"). Notably, Robbins Geller attorneys involved in this case are responsible for obtaining each of the three largest securities fraud class action recoveries ever obtained in this District. *See, e.g.*, *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, ECF 567 at 12-13 (M.D. Tenn. Apr. 11, 2016) (in granting final approval to a $215 million recovery, the largest securities class action recovery ever in Tennessee, while recognizing that Robbins Geller and its local counsel "were gladiators" and expressing the court's "appreciat[ion for] the work that you all have done on this"). Robbins Geller attorneys have also obtained the largest securities fraud class action recovery in this Circuit as well as in the Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits.[5]

---

[5] *See In re Enron Corp. Sec.*, No. 4:01cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the **Fifth Circuit**); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities

- 13 -

Robbins Geller's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. And, while trials in shareholder class actions are rare, Robbins Geller has tried several shareholder class actions to verdict including a trial earlier this year in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG-JCG (C.D. Cal.), in which the jury returned a verdict in favor of the shareholder class, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.

Erste AM's selection of counsel is highly qualified and thus reasonable. Accordingly, Motley Rice and Robbins Geller should be approved as lead counsel.

## IV.    CONCLUSION

The Court should consolidate the Related Actions because they share overlapping questions of law and fact. In addition, Erste AM has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, Erste AM respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Lead Counsel.

DATED:  May 21, 2024

Respectfully submitted,

BARRETT JOHNSTON MARTIN
  & GARRISON, PLLC
JERRY E. MARTIN, #20193

s/ Jerry E. Martin
JERRY E. MARTIN

---

class action recovery in the ***Sixth Circuit***); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the ***Seventh Circuit***); *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the ***Eighth Circuit***); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the ***Tenth Circuit***); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the ***Eleventh Circuit***).

- 14 -

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel

MOTLEY RICE LLC
GREGG S. LEVIN (*pro hac vice* forthcoming)
CHRISTOPHER F. MORIARTY (*pro hac vice*
forthcoming)
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
glevin@motleyrice.com
cmoriarty@motleyrice.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*
forthcoming)
DANIELLE S. MYERS (*pro hac vice*
forthcoming)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com

CHRISTOPHER M. WOOD, #032977
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

- 15 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 21, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Jerry E. Martin
JERRY E. MARTIN

BARRETT JOHNSTON MARTIN
    & GARRISON, PLLC
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

# Mailing Information for a Case 3:24-cv-00334 Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund v. Shoals Technologies Group, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rachel A. Avan**
  ravan@labaton.com

- **Margaret V. Dodson**
  margaret.dodson@bassberry.com

- **Marco A. Dueas**
  mduenas@saxenawhite.com

- **Renatta A. Gorski**
  renatta.gorski@lw.com

- **Lester R. Hooker**
  lhooker@saxenawhite.com

- **Michele D. Johnson**
  michele.johnson@lw.com

- **Britt K. Latham**
  blatham@bassberry.com,renatta.gorski@lw.com,lauren.fane@lw.com,heather.waller@lw.com,llewis@bassberry.com,lbilbrey@bassberry.com,christian.beveridge@lw.

- **James Gerard Stranch , IV**
  gstranch@stranchlaw.com,complexlit@stranchlaw.com

- **Heather A. Waller**
  heather.waller@lw.com,chefiling@lw.com,heather-waller-8915@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Case 3:24-cv-00334     Document 22     Filed 05/21/24     Page 22 of 24 PageID #: 131

# Mailing Information for a Case 3:24-cv-00580 Oklahoma Police Pension and Retirement System v. Shoals Technologies Group, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rachel A. Avan**
  ravan@labaton.com

- **Marco A. Dueas**
  mduenas@saxenawhite.com

- **Lester R. Hooker**
  lhooker@saxenawhite.com

- **James Gerard Stranch , IV**
  gstranch@stranchlaw.com,complexlit@stranchlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Case 3:24-cv-00334    Document 22    Filed 05/21/24    Page 23 of 24 PageID #: 132

# Mailing Information for a Case 3:24-cv-00598 Kissimmee Utility Authority Employees' Retirement Plan v. Shoals Technologies Group, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Scott R. Christiansen**
  scott@cdpension.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com

- **Francisco J. Mejia**
  fmejia@rgrdlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,CWood@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Case 3:24-cv-00334    Document 22    Filed 05/21/24    Page 24 of 24 PageID #: 133