UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re SHOALS TECHNOLOGIES GROUP, INC. SECURITIES LITIGATION | Case No. 3:24-cv-00334-AAT<br><br>CLASS ACTION |
| This Document Relates To: All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM'S**
**APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF SELECTION OF COUNSEL, AND**
**IN OPPOSITION TO THE COMPETING MOTION**

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ...................................................................................................... 2

    A. Oklahoma Police Has Satisfied the PSLRA's Procedural Requirements .............. 2

    B. Oklahoma Police Has the Largest Financial Interest of Any Qualified Plaintiff or Movant ...................................................................................................... 4

    C. Erste AM Cannot Trigger the Most Adequate Plaintiff Presumption .................... 5

        1. Erste AM Lacks Article III Standing ........................................................... 5

        2. Erste AM Is Subject to Disqualifying Unique Defenses .......................... 10

        3. Courts Consistently Reject Erste AM for Lack of Standing ..................... 12

    D. Oklahoma Police Satisfies Rule 23's Typicality and Adequacy Requirements ... 18

        1. Oklahoma Police's Claims Are Typical of Those of the Class ................ 18

        2. Oklahoma Police Will Fairly and Adequately Protect Class Interests ...................................................................................................... 19

        3. Oklahoma Police Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Enacted the PSLRA ................................................. 20

    E. Oklahoma Police's Selection of Lead Counsel Should be Approved ................... 22

III. CONCLUSION .................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am. Corp., Sec., Derivative, & ERISA Litig.*,
2011 WL 3211472 (S.D.N.Y. July 29, 2011) ............................................................. 7

*Baydale v. American Express Co.*,
2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) ...................................................... 6, 11

*Blitz v. AgFeed Indus., Inc.*,
2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012) ........................................................ 3

*Boston Ret. Sys. v. Alexion Pharms., Inc.*,
2023 WL 2932485 (D. Conn. Apr. 13, 2023) ..................................................... 15, 16

*Boston Ret. Sys. v. Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021) .................................................................... 12

*Coopersmith v. Lehman Bros., Inc.*,
344 F. Supp. 2d 783 (D. Mass. 2004) ...................................................................... 3

*Dolan v. Axis Cap. Holdings Ltd.*,
2005 WL 883008 (S.D.N.Y. Apr. 13, 2005) ............................................................. 3

*French v. CBL Assocs. Props., Inc.*,
2016 WL 7668501 (E.D. Tenn. Sept. 26, 2016) ..................................................... 22

*Friedman v. Quest Energy Partners LP*,
261 F.R.D. 607 (W.D. Okla. 2009) ........................................................................ 17

*Gross v. AT&T Inc.*,
2019 WL 7759222 (S.D.N.Y. June 24, 2019) .......................................... 5, 6, 7, 8, 14

*Hevesi v. Citigroup, Inc.*,
366 F.3d 70 (2d Cir. 2004) ..................................................................................... 19

*In re Bard Assocs., Inc.*,
2009 WL 4350780 (10th Cir. Dec. 2, 2009) ........................................................... 17

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................. 22

*In re Gildan Activewear Inc. Sec. Litig.*,
2010 WL 11746218 (S.D.N.Y. Sept. 20, 2010) ................................................................ 23

*In re Netflix, Inc., Sec. Litig.*,
2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ................................................................ 10

*In re Paysafe Ltd. Sec. Litig.*,
2024 WL 1636415 (S.D.N.Y. Apr. 16, 2024) ................................................................ 11

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ................................................................ 11

*Meerain v. Intel Corp.*,
2018 WL 2412111 (N.D. Cal. May 29, 2018) ................................................................ 3

*Miraglia v. Human Genome Scis. Inc.*,
2012 WL 987502 (D. Md. Mar. 22, 2012) ................................................................ 3

*Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*,
357 F. Supp. 2d 1027 (S.D. Ohio 2005) ................................................................ passim

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ................................................................ 11

*Plymouth Cnty. Ret. Assoc. v. Array Techs., Inc.*,
2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) ................................................................ 15

*Porter v. Graftech Int'l Ltd.*,
2024 WL 2189642 (N.D. Ohio May 15, 2024) ................................................................ 8

*Ross v. Abercrombie & Fitch Co.*,
2007 WL 895073 (S.D. Ohio Mar. 22, 2007) ................................................................ 17

*S. Ferry LP No. 2 v. Killinger*,
271 F.R.D. 653 (W.D. Wash. 2011) ................................................................ 11, 12

*Schriver v. Impac Mortg. Holdings, Inc.*,
2006 WL 6886020 (C.D. Cal. May 2, 2006) ................................................................ 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................ 6

*St. Clair Cty Emps. Ret. System v. Acadia Healthcare Co.*,
2019 WL 494129 (M.D. Tenn. Jan. 9, 2019) ................................................................ 20, 22

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008)...................................................................................... 6, 7, 8

**Statutes**

15 U.S.C. § 78u-4(a)................................................................................................... *passim*

15 U.S.C § 77z–1(a)(1)....................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................. *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730 (1995) ................... 21

S. Rep. No. 104-98 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679 ................................................ 21

Proposed Lead Plaintiff Oklahoma Police Pension and Retirement System ("Oklahoma Police") respectfully submits this response in support of its appointment as Lead Plaintiff and approval of its selection of counsel, and in opposition to the competing motion of Erste Asset Management GmbH ("Erste AM"), joined by Kissimmee Utility Authority Employees' Retirement Plan ("Kissimmee") (the "Competing Motion").[1]

## I.    <u>INTRODUCTION</u>

Oklahoma Police is the only plaintiff or movant seeking appointment as Lead Plaintiff that is qualified to represent the Class.  While Erste AM claims a larger loss than Oklahoma Police, it acknowledges that five funds—not Erste AM—purchased Shoals common stock and suffered losses when Defendants' misconduct was revealed.  Erste AM cannot trigger the "most adequate plaintiff" presumption and must be disqualified because it lacks Article III standing—a threshold issue for a lead plaintiff—and is subject to unique defenses that risk severe prejudice to the Class.

Erste AM seeks to justify its motion by invoking the prudential exception to Article III standing for third parties, but Erste AM does not qualify for this exception under relevant law given the structure of its five funds—composed of individual unit holders who hold legal and equitable title to their securities claims.  Erste AM knows this: it was disqualified as a lead plaintiff movant for lack of standing in two of its three lead plaintiff motions to date (and withdrew from the third on other grounds).  For these reasons, and in the best interests of the Class, the Court should deny the Competing Motion and appoint Oklahoma Police as Lead Plaintiff.

---

[1] All citations are omitted, and all emphasis is added unless otherwise noted.  Pursuant to L.R. 7.01(a)(1), the undersigned counsel conferred with counsel for plaintiffs and defendants regarding the relief sought by Oklahoma Police.  Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefits Fund supports, and Erste AM and Kissimmee oppose, Oklahoma Police's appointment as lead plaintiff and approval of counsel.  Shoals Technologies Group, Inc. ("Shoals") and the individual defendants take no position on the appointment of a lead plaintiff or counsel. The underwriter defendants have not responded to Oklahoma Police's requests for conferral.

## II. ARGUMENT

### A. Oklahoma Police Has Satisfied the PSLRA's Procedural Requirements

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") establishes a straightforward, sequential procedure for identifying the lead plaintiff for "each private action arising under" the Securities Exchange Act of 1934 (the "Exchange Act") "that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i).[2]

First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising Class members: (1) "of the pendency of the action, the claims asserted therein, and the purported class period;" and (2) "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, the notice of pendency for the initial complaint filed in this action, which solely alleged violations of Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, was published on March 22, 2024.[3] After counsel for Oklahoma Police filed a subsequent complaint that alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act **and** Sections 10(b) and 20(a) of

---

[2] The PSLRA procedures for actions brought under the Securities Act of 1933 (the "Securities Act") mirror those of the Exchange Act. *See* 15 U.S.C § 77z–1(a)(1). Only the Exchange Act provisions are cited herein.

[3] *See* Declaration of J. Gerard Stranch, IV in Support of the Memorandum of Law in Support of Oklahoma Police's Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, and in Opposition to the Competing Motion ("Stranch Decl."), Ex. A (notice of pendency of *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefits Fund v. Shoals Techs. Grp., Inc.*, No. 3:24-cv-00334 (M.D. Tenn.)).

2

the Exchange Act and SEC Rule 10b-5 promulgated thereunder, Oklahoma Police's counsel published the corresponding notice of pendency on May 8, 2024.[4]

Second, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

> (aa) has either filed the complaint *or* made a motion in response to a notice
> . . .
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Blitz v. AgFeed Indus., Inc.*, 2012 WL 1192814, at *1-2 (M.D. Tenn. Apr. 10, 2012). Oklahoma Police readily meets these requirements.

Oklahoma Police is the "most adequate plaintiff" under the PSLRA because it: (1) filed the first complaint that asserts both Securities Act and Exchange Act claims; (2) holds the largest financial interest of any qualified plaintiff or movant; and (3) satisfies Rule 23's typicality and adequacy requirements. First, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), Oklahoma Police filed the initial complaint that alleges violations of the Securities Act. Having filed the first Securities Act complaint, Oklahoma Police may be considered for appointment as Lead Plaintiff.[5] Second,

---

[4] *See* Stranch Decl., Ex. B (notice of pendency of *Okla. Police Pension & Ret. Sys. v. Shoals Techs. Grp., Inc.*, No. 3:24-cv-00580 (M.D. Tenn.)). The notice of pendency for a second complaint alleging both Securities Act and Exchange Act violations was published by counsel for Kissimmee on May 15, 2024. *See* Stranch Decl., Ex. C (notice of pendency of *Kissimmee Util. Auth. Emps. Ret. Plan v. Shoals Techs. Grp., Inc.*, No. 3:24-cv-00598 (M.D. Tenn.)).

[5] *See, e.g.*, *Meerain v. Intel Corp.*, 2018 WL 2412111, at *2 n.5 (N.D. Cal. May 29, 2018) ("'[T]hose presumed most adequate to serve as lead plaintiffs include either those who have filed a complaint *or* those who made a motion for appointment within the 60 day period'") (quoting *Coopersmith v. Lehman Bros., Inc.*, 344 F. Supp. 2d 783, 790 (D. Mass. 2004) (emphasis in original)); *Miraglia v. Human Genome Scis. Inc.*, 2012 WL 987502, at *3 n.1 (D. Md. Mar. 22, 2012) ("The 60-day deadline to seek appointment as lead plaintiff . . . does not apply to the named plaintiffs, each of whom filed complaints") (collecting authorities); *Dolan v. Axis Cap. Holdings*

(*footnote continued on next page*)

Oklahoma Police has the largest financial interest of any qualified plaintiff or movant—with a loss of $527,458 on its Class Period (defined herein) purchases of Shoals common stock under the prevailing last-in, first-out ("LIFO") accounting method *and* standing to assert Securities Act claims based on its purchase of shares of Shoals common stock in the December 2022 secondary public offering (the "SPO"). Third, Oklahoma Police has made a prima facie showing of its typicality and adequacy. *See infra* Section II.C. As a sophisticated institutional investor with a substantial financial stake in the claims asserted in this action, Oklahoma Police is precisely the type of lead plaintiff that Congress envisioned when enacting the PSLRA.

Under the sequential procedure required by the PSLRA, once the Court has identified the "most adequate plaintiff," the presumption may only be rebutted by proof that the most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, Oklahoma Police has the largest financial interest in the outcome of the litigation of any qualified plaintiff or movant, has demonstrated its typicality and adequacy, and there is no proof whatsoever that Oklahoma Police is inadequate or subject to unique defenses.

**B.  Oklahoma Police Has the Largest Financial Interest of Any Qualified Plaintiff or Movant**

The PSLRA instructs courts to adopt the presumption that the "most adequate plaintiff" is the plaintiff or movant that "has the largest financial interest in the relief sought by the class" and otherwise meets the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As reflected in its Certification and the chart detailing Oklahoma Police's loss calculation, Oklahoma Police made

---

*Ltd.*, 2005 WL 883008, at *3 (S.D.N.Y. Apr. 13, 2005) ("Although neither filed a motion to be appointed as lead plaintiff prior to the sixty-day deadline, . . . both [plaintiffs] filed a complaint within the notice period" and "therefore satisfy the first prong of 15 U.S.C. § 78u-4(a)(3)(B)(iii)").

a significant investment in Shoals common stock during the Class Period between January 27, 2021 and May 7, 2024, inclusive (the "Class Period") and has a substantial financial interest in the relief sought by the Class—having incurred a LIFO loss of $527,458. *See* Stranch Decl., Ex. D (Oklahoma Police Certification),[6] Ex. E (chart reflecting Oklahoma Police's estimated loss).[7]

As discussed below, while Erste AM claims a large loss, Erste AM must be disqualified because Erste AM is not the owner of the Shoals securities listed in its Certification, *see* ECF No. 23-4 (certifying that five funds—not Erste AM—purchased and sold Shoals common stock), and thus Erste AM cannot satisfy the injury-in-fact requirement necessary to establish Article III standing and is subject to unique defenses. *See infra* Section II.B.2. Accordingly, Oklahoma Police has the largest financial interest of any qualified plaintiff or movant seeking appointment as Lead Plaintiff and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### C. Erste AM Cannot Trigger the Most Adequate Plaintiff Presumption

#### 1. Erste AM Lacks Article III Standing

The ability to demonstrate standing for claims pursuant to Article III of the Constitution is a prerequisite for claiming an injury-in-fact stemming from violations of the federal securities laws. *Gross v. AT&T Inc.*, 2019 WL 7759222, at *1 (S.D.N.Y. June 24, 2019) ("[T]he minimum

---

[6] The Certification filed in support of Oklahoma Police's opposition, Stranch Decl., Ex. D, corrects an inadvertent omission from the Certification filed on May 29, 2024 in support of Oklahoma Police's notice of intent to oppose, ECF No. 26-5 at 2, *i.e.*, that Oklahoma Police filed a motion seeking appointment as lead plaintiff on May 24, 2024 in *Raby v. Evolv Technologies Holdings, Inc.*, No. 1:24-cv-10761 (D. Mass.), which is pending. There are no other updates.

[7] In addition—and unlike Erste AM—Oklahoma Police has standing to assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act, having purchased 2,202 shares of Shoals common stock in the December 2022 SPO. *Compare* Oklahoma Police Certification, Stranch Decl., Ex. D (reflecting Oklahoma Police's purchase of 2,202 shares of Shoals common stock in the SPO from J.P. Morgan Securities LLC, a named underwriter defendant, on December 2, 2022 at $22.25 per share, the SPO price); *with* Erste AM Certification, ECF No. 23-4 (reflecting that none of the funds listed purchased Shoals common stock in the SPO).

requirement for an injury-in-fact for purposes of Article III standing is that the plaintiff have legal title to, or a proprietary interest in, the claim being asserted.").  For a variety of reasons, Erste AM cannot establish its standing to assert claims—a failure that necessitates Erste AM's disqualification lest the Class be subject to a "litigation sideshow" at a later stage of the case, when the Class's interests could be prejudiced.  *Baydale v. American Express Co*., 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) (rejecting movant whose "status raises complex and novel issues of law which would require extensive factual and foreign legal analysis" that "can be circumvented at this early stage by selecting another lead plaintiff").

Erste AM cannot show the requisite injury-in-fact to establish its Article III standing to prosecute this action because Erste AM did not purchase Shoals common stock during the Class Period *or* in the December 2022 SPO.  Article III standing "requires that the plaintiff personally has suffered some actual or threatened injury[,]" and the injury must be "particularized," *i.e.*, "it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  When an asset management company like Erste AM brings suit in federal court under the U.S. securities laws, it can only establish Article III standing to sue if it has "legal title to, or a proprietary interest in, the claim."  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008).  Indeed, asset managers like Erste AM—that have not demonstrated their legal title or property interest in the claims at issue in satisfaction of *Huff*—are subject to "serious" unique standing defenses that preclude their appointment as lead plaintiffs. *See*, *e.g.*, *Gross*, 2019 WL 7759222, at *1 (rejecting asset management company for lack of Article III standing under *Huff*), *reconsideration denied*, 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019) ("[D]eclarations and supporting documents show that [movant] is an asset manager for three relevant funds[,]" but because "the Funds, not [movant], have legal title to the relevant . . . shares,

there is no question . . . that the claims alleging violations of federal securities laws belonged . . . to the Funds. . . .   The declarations and other supporting documents . . . continue to show, at a minimum, a non-speculative risk that [movant] lacks a property interest in the asserted claims").

Here, Erste AM concedes that five funds "purchased or acquired . . . Shoals common stock during the Class Period[,]" and those five funds—not Erste AM—"suffered . . . losses as a result of Defendants' alleged misconduct."[8]  *See* ECF No. 22 at 14; *see also id.* at 12, 15 ("As a result of these disclosures, the price of Shoals . . . common stock has declined . . ., causing ***Erste AM's funds*** . . . to suffer . . . losses and economic damages. . . .   Erste AM intends to allege that Defendants violated the federal securities laws . . . and that ***Erste AM's funds*** were harmed in connection therewith").  Erste AM cannot establish its standing to assert Exchange Act claims because it neither is nor ever was the beneficial owner of the securities listed in its Certification, and as such, Erste AM did not purchase or sell Shoals common stock during the Class Period when the Exchange Act violations occurred.  *See*, *e.g.*, *In re Bank of Am. Corp., Sec., Derivative, & ERISA Litig.*, 2011 WL 3211472, at *13 (S.D.N.Y. July 29, 2011) ("[P]laintiffs do not have standing to bring claims on behalf of purchasers or sellers of securities that the plaintiffs did not themselves purchase or sell during the class period").[9]

Nor can Erste AM establish that it has standing by resorting to the so-called prudential exception set forth in *Huff*, pursuant to which courts may permit third-party standing where a plaintiff demonstrates: "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests."  *Gross*, 2019 WL 3500496, at *3 (citing *Huff*, 549 F.3d

---

[8] The five funds listed in Erste AM's Certification and chart reflecting the five funds' estimated losses are Erste Green Invest, Erste Green Invest Mix, Erste Responsible Stock America, Erste Responsible Stock Global, and Erste WWF Stock Environment.  *See* ECF Nos. 23-4, 23-5.

[9] Similarly, and as detailed above, Erste AM does not have Securities Act standing because neither Erste AM nor any of the five funds purchased Shoals common stock in the SPO.  *See supra* n.7.

7

at 109). *Huff* explicitly found the prudential exception does not apply to "most, if not all, cases of investment manager standing." *Id.* ("[T]he investment advisor-client relationship is not the type of close relationship courts have recognized as creating a prudential exception. . . ."). Erste AM concedes that the funds listed in its Certification "do not have the capacity to bring suit[,]" ECF No. 22 at 16 n.4, but Erste AM claims its "close relationship to its funds" and the funds' inability to bring suit on their own satisfy both prongs under *Huff*. *Id.* While Oklahoma Police agrees that the funds do not have the capacity to sue, Erste AM does not have that right either. Erste AM submits an expert declaration to support its claim that it qualifies for the prudential exception, ECF No. 23-6, but a close review of Austrian law demonstrates that Erste AM lacks authority or legal capacity to sue on behalf of the funds or their individual unit holders.

While Erste AM contends that it is "authorized to institute legal action on behalf of Erste AM and the Funds," ECF No. 23-4 at 2, ¶ 2, it does not dispute that the Funds, and not Erste AM, purchased Shoals stock. *See id.* at 4-7 (reflecting purchases by the five funds). Erste AM also concedes that the funds lack legal personality and therefore "do not have legal capacity to sue or be sued in their own name." ECF No. 22 at 15. However, it does ***not*** follow that Erste AM is therefore "authorized to act on behalf of the funds, including bringing claims for losses incurred by the funds in this Action." *Id.* Under Austrian law, it is the individual unit holders of the funds— not the funds or Erste AM—that hold title to the securities and related tort claims. *See* Stranch Decl., Ex. F (Declaration of Professor Chris Thomale ("Thomale Decl."), ¶¶ 38, 83) (explaining that under Austrian law, "both legal and equitable title . . . rests with the unit holders[,]" who are thus entitled to "pursue their divisible claims in tort"); *see also, e.g.*, *Porter v. Graftech Int'l Ltd.*, 2024 WL 2189642, at *9 (N.D. Ohio May 15, 2024) (articulating the well-established proposition

that it is the owner of a security, and not the investment advisor who purchased the shares, who can claim damages from violations of the federal securities laws).

As an asset management company, Erste AM does have certain indirect powers to represent the funds and the unit holders, but those powers are limited to activities like making investment decisions, exercising voting rights, receiving dividends, and performing ancillary activities related to the management of the funds. Thomale Decl. ¶ 79; *see also id.* ¶¶ 62-74 (explaining that Section 52 of Austrian Investment Fund Act ("InvFG 2011") grants asset management companies the power to "dispose of the fund assets" and "to exercise the rights to [or in] the fund assets"). The tort claims at issue in this litigation fall outside the purview of "the core area of portfolio management or the core area of professionalism of management companies as addressed in Section 52 *InvFG 2011*." *Id.* ¶ 78.[10] Tort claims, which are monetary and divisible, do not constitute fund assets. *Id.* ¶¶ 82-85. Significantly, Austrian law "does not empower an asset management company to unilaterally extend the scope of its mandate beyond activities necessary for the efficient management of, specifically and exclusively, *fund* assets." *Id.* ¶ 81.

The approach under Austrian law toward ownership and representation for claims is supported by both public policy and economic considerations. For example, should the injured parties, *i.e.*, the unit holders, be forced into a compulsory principal-agent relationship with the asset management company to litigate tort claims, the actual tort victims would be barred from disposing of or litigating their own claims. *Id.* ¶¶ 86-87. To avoid this result, Austrian law "follows a restrictive approach to ousting tort victims from the right to pursue their claims in tort[,]" which would not encompass the co-owning unit holders here. *Id.* ¶ 88. In addition,

---

[10] The fact that unit holders are not powerless in this relationship is evident in the unit holders' right to divest at any time. *Id.* ¶ 77.

9

Case 3:24-cv-00334   Document 29   Filed 06/04/24   Page 14 of 32 PageID #: 460

Austrian law only permits third parties to sue on behalf of others under very limited circumstances, which would not apply to the general language of InvFG 2011 Section 52 here, and Dr. Specht's authorities to the contrary are out of date and lack support in case law. *Id.* ¶ 90-92; *see also id.* ¶ 93 (explaining that the ability of third parties to pursue claims in the loss-shifting context is limited because "if a party [(here, the unit holders)] may pursue a claim for damages on her own, nobody else may pursue that claim in their own name on behalf of somebody else"). Further, from an economic perspective, should the claims belonging to the unit holders be prosecuted by the management company for the benefit of the funds, unit holders who invested during the Class Period but subsequently divested of their position would receive no recovery, while unit holders in the funds following the Class Period would stand to receive a windfall. *Id.* ¶¶ 98-100. Erste AM's (and indeed, Dr. Specht's) broad reading of its powers is in tension with Austria's narrowly interpreted statutes and principles of statutory construction as well as economic realities and public policy concerns. *Id.* ¶¶ 90, 96, 102-104.

### 2. Erste AM Is Subject to Disqualifying Unique Defenses

Erste AM's lack of standing is disqualifying not only because it cannot establish a threshold injury-in-fact, but also because the PSLRA precludes appointment of a lead plaintiff that "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Under the PSLRA, a court does not look "at this early stage" at whether defendants will be able to "prove a defense;" rather, the inquiry is whether there is "a degree of likelihood that a unique defense might play a significant role" in the litigation, and whether the court can "protect the absent class members from the expense of litigating" the issue. *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (rejecting lead plaintiff movant who "was not the legal entity who held" the security to avoid "subject[ing] the class to the burden of litigation focused on her standing"). Accordingly, where "there is at

10

least a potential that a plaintiff will be subject to unique defenses, disqualification is appropriate" and courts can protect class members by rejecting a movant whose "standing ***could*** be challenged without definitively holding that such challenges would be successful." *In re Paysafe Ltd. Sec. Litig.*, 2024 WL 1636415, at \*6 (S.D.N.Y. Apr. 16, 2024).

As Professor Thomale has explained, "[a]t a minimum, the contention made by Dr. Specht [as to Erste AM's statutory authority or legal capacity to pursue claims] is unsettled as a matter of Austrian law." Thomale Decl. ¶ 13. "Courts in securities class actions have found that the uncertain standing of a class representative creates unique legal issues for that plaintiff and destroys its typicality and adequacy as a class representative." *S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 659 (W.D. Wash. 2011) (denying lead plaintiff's motion to serve as class representative); *see also In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851, at \*12 (W.D. Tenn. Dec. 15, 2010) (finding movant's failure to obtain title to underlying securities meant that future "litigation about his standing to bring those claims is certain").

Courts are therefore hesitant to even open the door to "litigation sideshow[s]" about foreign law's application to Article III standing, especially where another adequate and typical lead plaintiff is readily available. For example, in an action in which a foreign money manager submitted the opinion of a foreign law expert to claim that the money manager was "not only permitted to bring suit on behalf of its funds but also has sole authority to sue for them," the court explained: "[E]ven if this Court credited that opinion, [the movant]'s status raises complex and novel issues of law which would require extensive factual and foreign legal analysis. Such a diversion would be a needless litigation sideshow . . . [and] can be circumvented at this early stage by selecting another lead plaintiff." *Baydale*, 2009 WL 2603140, at \*3; *see also Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) (noting,

with regard to foreign investment manager movant that acknowledged it did not own the securities but submitted an expert declaration that it was the only entity that could sue on behalf of its funds, that "[a]t this stage, . . . it is sufficient to note that arguments could be raised regarding [movant]'s third party standing, which subjects it to a unique defense and may prejudice the class"); *Killinger*, 271 F.R.D. at 659 (finding issue regarding assignment of claims under German law "present[ed] a unique legal issue that could ultimately severely prejudice the class" as it was "predictable that [the movant's] standing could become a major focus of the litigation"). Accordingly, the Court should reject Erste AM's motion because its, at minimum, questionable standing would subject it to unique defenses that could prejudice the Class's interests.

### 3. Courts Consistently Reject Erste AM for Lack of Standing

Erste AM's lack of Article III standing, atypicality, and inadequacy is underscored by the fact that Erste AM has ***never*** been appointed as a lead plaintiff in a securities class action.[11] Erste AM has only moved for appointment as lead plaintiff in three prior securities class actions; Erste AM was rejected for lack of standing in *PureCycle* and *Array* and withdrew from *OPKO Health*.[12]

---

[11] Erste AM is a separate entity from Erste-Sparinvest KapitalanlLagegesellschaft mbH ("Erste-Sparinvest"), an investment management firm that merged with and into Erste AM on November 3, 2018, with retroactive effect from December 31, 2017. *See* Our History, https://www.erste-am.com/en/about-us/company/history (last visited June 3, 2024). Erste AM misleadingly claims that it "served as a lead plaintiff" (*see* ECF No. 22 at 16) in *Boston Retirement System v. Alexion Pharmaceuticals, Inc.*, when in fact Erste-Sparinvest—not Erste AM—and the Public Employee Retirement System of Idaho ("PERSI") were appointed lead plaintiff. No. 16-cv-2127, 2017 WL 11827768, at *1-2 (D. Conn. Apr. 12, 2017). A year and a half ***after*** Erste-Sparinvest and PERSI's appointment, Erste-Sparinvest merged into Erste AM on November 3, 2018. Over two years later, the August 19, 2021 motion to dismiss order references Erste-Sparinvest AM—not Erste AM— and PERSI as the lead plaintiffs. 556 F. Supp. 3d 100, 110 (D. Conn. 2021).

[12] In *OPKO Health*, Erste AM moved for appointment as lead plaintiff but conceded it did not have the largest financial interest. *See* Stranch Decl., Exs. G, H, Motion and Notice, *Steinberg v. OPKO Health, Inc.*, No. 18-cv-23786 (S.D. Fla. Nov. 13 & 27, 2018), ECF Nos. 24, 43.

In *Theodore v. PureCycle Technologies, Inc.*, Erste AM was rejected because, just like here, it "fail[ed] to demonstrate that it ha[d] *any* financial interest in the relief sought in this litigation." No. 21-cv-809, 2021 WL 5259840, at \*4 (M.D. Fla. Aug. 5, 2021). In its motion and certification, Erste AM listed Erste AM Fonds Nr. 566 ("Erste 566") as the fund that "purchased shares of Purecycle" and "incurred the loss," but Erste AM did not explain its relationship to Erste 566. *Id.* at \*3. Despite the difference in name, Erste 566 is the *same fund* as one of the five funds at issue here, Erste WWF Stock Environment ("Erste WWF").[13]

In its reply in *PureCycle*, Erste AM asserted that it is the "Austrian management company for" Erste 566 and "therefore has standing and is authorized to sue on its fund's behalf[,]" but the Court rejected this argument as unsupported. *Id.* at \*4. Unlike here, Erste AM stated that Erste 566 "executed . . . a [purportedly] valid assignment conveying its property interest in the claims against defendants in this lawsuit to Erste AM[,]" but the Court also rejected this argument because Erste AM did not explain what "its fund" refers to and "did not file the assignments with the Court." *Id.* Accordingly, the Court denied Erste AM's motion for appointment because, like here, Erste AM did "not state that it bought PureCycle shares[,]" stated instead that "its fund incurred a loss" but did not "establish its relationship to this fund," and its arguments "regarding an assignment from the fund [were] conclusory and provide[d] no meaningful information." *Id.*

Similarly, in *Plymouth County Retirement Association v. Innovative Technology, Inc.* ("*Array*"), the Court declined to appoint Erste AM—even though it was found to have the largest financial interest—because "Erste AM ha[d] not established it has standing to sue on behalf of

---

[13] *See* Stranch Decl., Ex. I (Reply, *Plymouth Cnty. Ret. Assoc. v. Array Techs., Inc.*, No. 1:21-cv-04390 (S.D.N.Y. Aug. 3, 2021) ("For certain marketing purposes, Erste AM Fonds Nr. 566 also is known as 'ERSTE WWF Stock Environment' . . . . To the extent a competing movant may speculate that Erste AM Fonds Nr. 566 and ERSTE WWF Stock Environment are different entities, they are not"), ECF No. 88 at 8 n.6)).

Erste 566[,]" "the entity that bought and sold Array shares." No. 21-cv-4390, 2021 WL 4298191, at *4-5 (S.D.N.Y. Sept. 21, 2021). Unlike here, Erste AM submitted a purported assignment stating that "Erste 566 assign[s] to Erste AM any and all claims of [Erste 566] against the defendants in this case." *Id.* at *4.[14] In rejecting Erste AM, the Court found *Gross* "instructive on this point[,]" where that "court found that a Belgian asset manager did not have a property interest in a securities claim where it did not own the underlying securities and where the asset manager's fund did not assign an ownership interest in the claims." *Id.* (citing *Gross*, 2019 WL 7759222, *reconsideration denied*, 2019 WL 3500496). Erste AM tried to distinguish itself from the asset manager in *Gross* "on the grounds that Erste 566 did assign the claims[,]" but the assignment was found to be "deficient because Erste 566 assigned its claims to Erste AM **after** the commencement of this litigation. Article III standing must be present when the litigation **commences**." *Id.*

The Court in *Array* also rejected Erste AM for lack of standing because it did not fall under the *Huff* prudential exception. "Instead of establishing" barriers to Erste 566 litigating its own claims, Erste AM attempted to support its third-party standing by analogizing to other cases, but the Court was unpersuaded because the cases did not analyze third-party standing under *Huff*. *Id.* at *5 (finding that Erste AM "failed even to establish **any** barriers that prevented Erste 566 from bring[ing] the securities claims for the shares that Erste 566 bought and sold"). Given the "serious questions about its standing," the Court rejected Erste AM because appointment "**risks severely prejudicing the Class**." *Id.* ("These issues and their attendant risks can be avoided at this early

---

[14] Although Erste 566/Erste WWF purportedly assigned its claims to Erste AM in *PureCycle* and *Array*, Erste AM now concedes that the funds, including Erste WWF, "do not have the capacity to bring suit[,]" ECF No. 22 at 16 n.4. Thus, the funds would not have the capacity to assign claims to Erste AM. *See also* Thomale Decl. ¶ ¶ 59, 67 (explaining that, under Austrian law, the funds "have no legal personality," fund assets belong to unit holders, and unit holders' tort claims cannot be assigned to a third party like Erste AM absent the explicit consent of the individual unit holders).

stage by appointing another lead plaintiff that is capable of adequately representing the Class").[15] The same disqualifying concerns from *PureCycle* and *Array* apply here. Given its lack of Article III standing, Erste AM has not established that it has ***any*** financial interest in this litigation.

Erste AM's appointment as a class representative in *Alexion* is not evidence of its "standing to represent its funds" in this litigation, as Erste AM claims. *See* ECF No. 22 at 15-16. First, as noted above, Erste-Sparinvest—not Erste AM—and PERSI were originally appointed lead plaintiff in *Alexion* in 2017, and they served together in that joint capacity for several years. *See supra* n. 11. Second, the Court based its holding that Erste AM qualifies for the *Huff* prudential exception on an erroneous interpretation of Austrian law that Erste AM has "'a close relationship to the injured party,' . . . i.e., to investors in the funds that Erste manages[,] ***akin to that which allows [t]rustees [to] bring suits to benefit their trusts***." *Boston Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *7 (D. Conn. Apr. 13, 2023) (finding that InvFG 2011 "describe[s] the investment manager as a trustee ('Treuhänder') of persons saving for investments. . . . Under Austrian law, the management company is similar to a common-law trustee in that the company owes a fiduciary duty to investors"). In fact, Austrian regulators chose the co-ownership model (Miteigentumsmodell) over the trust model (Treuhandmodell), and "Austrian investment law does ***not*** recognize the management company as a fully fledged trustee endowed with a legal title to the trust or fund assets. Instead, ***both legal and equitable title . . . rests with the unit holders***." *See* Thomale Decl., ¶ 38. Contrary to the Court's interpretation in *Alexion*, an asset management

<hr/>

[15] On reconsideration, the Court found that Erste AM "would not be subject to standing defenses ***merely*** based on the timing" of the assignment but again rejected Erste AM due to "a serious risk that [it] will be subject to unique standing defenses regarding the invalidity of the Assignment." *Plymouth Cnty. Ret. Assoc. v. Array Techs., Inc.*, 2021 WL 5051649, at *2 (S.D.N.Y. Nov. 1, 2021) ("Erste AM has not established that the Assignment . . . was sufficient under Austrian law to confer . . . the requisite property interest under *Huff*. . . . Given this uncertainty, the Court finds that there is a non-speculative risk that Erste AM's standing could be successfully challenged").

company's power to "exercise the rights to the assets" on behalf of the co-owning individual unit holders under InvFG 2011 ***does not confer the right to sue***." *Id.* ¶ 92. Indeed, under InvFG 2011, "tort claims are not considered fund assets[,]" and InvFG 2011 "does not empower an asset management company to unilaterally extend the scope of its mandate beyond activities necessary for the efficient management of ***fund*** assets." *See id.*, ¶¶ 70, 81.[16]

Third, the Court further based its holding that Erste AM qualifies for the *Huff* prudential exception on an erroneous finding that Erste AM "is the only party related to the funds that has a cause of action under Rule 10b-5 because ***Erste***—and not its funds or any particular unit holder— ***is the actual purchaser of Alexion stock***[,]" and as such there is a barrier "with respect to the unit holders of the funds' assets" ability to assert their own interests. *Alexion*, 2023 WL 2932485, at *8. The Court's finding conflicts with the fact that, as here, the Erste entity acknowledged that the ***funds*** purchased and sold the relevant securities, ***not*** Erste-Sparinvest or Erste AM, on behalf of the individual unit holders.[17] Moreover, "it is the individual unit holders—not the management company—that have the right to litigate their alleged tort claims" in large part because "investment funds . . . do not have any legal personality separate from the co-owning unit holders[,]" and "[a]s a result, the only persons—natural or legal—suffering any damage are the co-owning unit

---

[16] Accordingly, while Erste AM (and Dr. Specht) seeks to imply that it is comparable to a trustee, the Court should recognize that the co-ownership structure established by Austrian law means that Erste AM does not hold title to investments or related claims. *See id.* ¶¶ 38, 49, 92. "Management companies only act as mandatees," enabled by statutory authority, which is limited in scope. *Id.*

[17] *See* Stranch Decl., Ex. J (Memorandum, *Boston Ret. Sys. v. Alexion Pharms., Inc.*, No. 3:16-cv-02127 (D. Conn. Jan. 17, 2017) ("Erste-Sparinvest and PERSI satisfy [typicality] because . . . they or ***their funds*** purchased and/or acquired Alexion securities"), ECF No. 12 at 10), Ex. K (Declaration, *Boston Ret. Sys. v. Alexion Pharms., Inc.*, No. 3:16-cv-02127 (D. Conn. Jan. 17, 2017) (certification reflecting purchases and sales by DWS (Austria) Vermögenbildungsfonds, ESPA STOCK BIOTEC, and VBV Passive World Equities), ECF No. 13-1 at 4-5).

16

holders." *See* Thomale Decl., ¶¶ 82, 88.b.  Thus, Erste AM's appointment as a class representative in *Alexion* does not support a finding of standing here due to the errors in that Court's analysis.

Having failed to establish its financial interest, typicality, and adequacy in its original motion, Erste AM cannot now cure these deficiencies with assignments, new declaration(s), or otherwise.  First, "Erste AM has no statutory authority or legal capacity to pursue the Actions on behalf of the Funds and their unit holders."  *See* Thomale Decl. ¶ 13.  The absence of assignments to Erste AM here—unlike in *PureCycle* and *Array*, where Erste 566/Erste WWF purportedly conveyed property interests in "its" claims to Erste AM through assignments—militates against Erste AM's appointment.  Given the PSLRA 60-day filing deadline expired on May 21, 2024, the Court should not consider any new assignments, whereby the five funds or even the individual unit holders may seek to assign their claims to Erste AM.[18]  Second, lead plaintiff movants' failure to provide declarations together with their motion weighs against their adequacy, and courts routinely refuse to consider declarations submitted after the original motion.[19]

---

[18] *See*, *e.g.*, *In re Bard Assocs., Inc.*, 2009 WL 4350780, at *1-3 (10th Cir. Dec. 2, 2009) (denying petition for writ of mandamus from rejected movant—where the district court "conclud[ed] that the PSLRA's strict time limits precluded it from considering assignments made after the filing of [movant's] lead plaintiff motion"—in part because the movant was not "precluded from obtaining . . . assignments before the 60-day filing deadline"); *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 612 (W.D. Okla. 2009) (refusing to consider assignments that "occurred after the filing of the motion to be appointed lead plaintiff" because the "plain language of the statute precludes consideration of any supplemental information filed after the sixty day window has closed").

[19] *See*, *e.g.*, *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 WL 6886020, at *9 (C.D. Cal. May 2, 2006) (finding movant was inadequate in part because they "present[ed] no declarations" with their motion); *Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at *4 & n.3 (S.D. Ohio Mar. 22, 2007) ("declin[ing] to consider" declarations from members of a rejected movant group seeking reconsideration where the original group filed "no joint affidavit or declaration . . . concerning their cohesiveness [or] any mechanism for making decisions").

**D.** **Oklahoma Police Satisfies Rule 23's Typicality and Adequacy Requirements**

In addition to possessing the largest financial interest in the litigation of any qualified movant, Oklahoma Police also satisfies the applicable requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). However, at the lead plaintiff selection stage, lead plaintiff candidates need only make a preliminary showing of Rule 23's typicality and adequacy prongs. *Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1034 (S.D. Ohio 2005) ("[A]t [the lead plaintiff] stage in the proceedings, Plaintiffs need only make a prima facie showing that they meet the typicality and adequacy prerequisites of Rule 23").

**1.** **Oklahoma Police's Claims Are Typical of Those of the Class**

The typicality requirement of Rule 23(a)(3) is met when a plaintiff's or movant's claims "arise out of the same course of conduct or series of events, and are based on the same legal theory as the other members of the class." *Fannie Mae*, 357 F. Supp. 2d at 1034. Here, Oklahoma Police satisfies the typicality requirement. With respect to the Exchange Act claims, like all other Class members, Oklahoma Police: (1) purchased Shoals common stock during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statement and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by Defendants' misconduct, causing the price of Shoals common stock to fall. With respect to the Securities Act claims, like all other Class members, Oklahoma Police: (1) purchased Shoals common stock pursuant and/or traceable to the registration statement and prospectus (together, the "SPO Materials") for the December 2022 SPO; (2) at prices artificially inflated by Defendants'

materially false and misleading statements and/or omissions; and (3) was damaged thereby.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirements of Rule 23(a)(3).  *See Fannie Mae*, 357 F. Supp. 2d at 1034 (finding plaintiffs' claims are typical where plaintiffs, like other class members, purchased the relevant securities, assert claims that arise from "the same alleged misrepresentations and omissions by Defendants[,]" and "suffered damages in connection with such purchases").  As such, Oklahoma Police's claims are typical of the Class's claims and meet Rule 23(a)(3)'s typicality requirement.[20]

### 2. Oklahoma Police Will Fairly and Adequately Protect Class Interests

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it will "fairly and adequately represent[] the interests of the class."  *Fannie Mae*, 357 F. Supp. 2d at 1034.  The adequacy requirement is satisfied if "(1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation."  *Id.*  Here, Oklahoma Police's interests are aligned with those of the other Class members and are not antagonistic in any way.  Oklahoma Police incurred substantial financial harm due to Defendants' misrepresentations and omissions during the Class Period and in the SPO Materials and, therefore, has a sufficient interest in the outcome of the litigation to ensure vigorous prosecution of the litigation.  There are no facts to suggest an actual or potential conflict of interest between Oklahoma Police and the other Class members.  To the contrary, as a public pension fund with a substantial financial interest in the

---

[20] The fact that Oklahoma Police sold out of its position in Shoals stock prior to the end of the expanded Class Period filed in the *Kissimmee* Complaint does not impede Oklahoma Police's appointment.  *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004) (explaining that class representatives need not have standing for every claim alleged in a class action).

litigation, Oklahoma Police unquestionably has the experience and the incentive to vigorously represent the Class and successfully prosecute this action against Defendants. *See id.* at 1035 (finding that pension fund plaintiffs' "interests are not antagonistic to the class, and their chosen counsel are duly qualified and competent").

In addition, Oklahoma Police has further demonstrated its adequacy through its selection of Saxena White to serve as Lead Counsel for the Class. Before selecting Saxena White, Oklahoma Police performed significant due diligence by considering various law firms. As discussed below, *see infra* Section II.D, Saxena White is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to effectively prosecute complex securities and shareholder litigation. Saxena White also has demonstrated its commitment to prosecuting this litigation "from the outset" by investigating and filing both the initial complaint and the first complaint alleging Securities Act claims. *St. Clair Cty Emps. Ret. System v. Acadia Healthcare Co.*, 2019 WL 494129, at *6 n.12 (M.D. Tenn. Jan. 9, 2019).

Accordingly, in addition to having the largest financial interest, Oklahoma Police also satisfies the typicality and adequacy requirements of Rule 23.

### 3. Oklahoma Police Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Enacted the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, Oklahoma Police is the paradigmatic lead plaintiff envisioned by Congress in its enactment of the PSLRA. Oklahoma Police is a sophisticated "institutional investor" with a substantial financial interest in the litigation, "which comports with the PSLRA's expressed preference for such lead plaintiffs." *Fannie Mae*, 357 F. Supp. 2d at 1035 ("The PSLRA's legislative history explains: 'with pension funds accounting for $4.5 trillion or nearly half of the institutional assets, in many cases the beneficiaries of pension funds—small investors—ultimately have the greatest stake in

the outcome of the lawsuit"); *see also* S. Rep. No. 104-98, at 11 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679, 690 ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs"); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in the class action will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Oklahoma Police is a public pension system that provides retirement and related benefits for qualified police officers and their beneficiaries in the state of Oklahoma. Oklahoma Police has approximately 10,000 active members and retirees and manages approximately $3 billion in assets. As reflected in its Certification, Stranch Decl., Ex. D, Oklahoma Police purchased a significant number of Shoals common stock shares during the Class Period and suffered a substantial loss due to the alleged violations of the federal securities laws. Oklahoma Police also understands the duties of a lead plaintiff, is willing to oversee the vigorous prosecution of the action, and has pledged to "provid[e] testimony at deposition and trial, if necessary." *Id.* Oklahoma Police's understanding of the duties of a lead plaintiff under the PSLRA is informed by its experience as lead or co-lead plaintiff prosecuting securities class actions through which it has recovered more than $245 million on behalf of investors. *See, e.g.*, *Milbeck v. TrueCar, Inc.*, No. 2:18-cv-02612 (C.D. Cal.) ($28.25 million recovery, with Saxena White as lead counsel); *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million recovery); and *In re Am. Home Mortg. Sec. Litig.*, No. 2:07-md-01898 (E.D.N.Y.) ($37 million recovery. Further, Oklahoma Police has already taken action to safeguard the Class's interests by filing the initial complaint that alleges Securities Act violations. Thus, the Class would benefit from Oklahoma Police's history of leadership, experience, and oversight. *See, e.g.*, *Fannie Mae*, 357 F. Supp. 2d at 1035 (determining

that pension fund plaintiffs "are well-grounded and sophisticated institutional investors that can commit substantial resources to this litigation"); *St. Clair*, 2019 WL 494129, at *5 (appointing "sophisticated institutional investors with prior experience serving as lead plaintiff").

### E. Oklahoma Police's Selection of Lead Counsel Should be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *French v. CBL Assocs. Props., Inc.*, 2016 WL 7668501, at *3 (E.D. Tenn. Sept. 26, 2016). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(a); *see Fannie Mae*, 357 F. Supp. 2d at 1034 ("'The district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, not the court, the power to select a lawyer for the class'") (quoting *In re Cavanaugh*, 306 F.3d 726, 732 n.11 (9th Cir. 2002)); *St. Clair*, 2019 WL 494129, at *6 (noting proposed lead counsel's securities litigation experience and finding "no reason to disturb that choice").

Here, Oklahoma Police has selected and retained Saxena White to serve as Lead Counsel for the Class. As set forth in its Firm resume, Saxena White has substantial experience representing investors and a demonstrated history of success serving as lead counsel in securities class actions and other forms of complex shareholder litigation. *See* Stranch Decl., Ex. L (Firm resume of Saxena White). Saxena White's track record in securities litigation includes: the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 10-cv-00990 (D. Del.); the $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 1:17-cv-00304 (D. Colo.); the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 3:14-cv-01395 (M.D. Fla.); the $63 million recovery in *Plymouth County Retirement System v. Patterson Cos. Inc.*, No. 0:18-cv-00871 (D. Minn.); the $53.3 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 1:04-cv-07644 (N.D. Ill.); the

$50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 1:17-cv-02587 (N.D. Ga.); the $30 million recovery in *In re James River Holdings Ltd. Securities Litigation*, No. 3:21-cv-00444 (E.D. Va.) (pending final approval); the $28.5 million recovery in *In re FibroGen, Inc. Securities Litigation*, No. 3:21-cv-02623-EMC (N.D. Cal.) (pending final approval); and the $28 million recovery in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 2:20-cv-00856 (S.D. Ala.). Saxena White also has secured significant recoveries for injured shareholders through derivative litigation. For example, Saxena White achieved a $240 million settlement and significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement ever. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541-JST (N.D. Cal.). Saxena White also achieved a $180 million settlement in a derivative action involving a corruption and bribery scheme, one of the largest shareholder derivative settlements in history, in *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 2:20-cv-04534 (S.D. Ohio).

By approving Oklahoma Police's choice of Lead Counsel, the Court will also advance the important goal of increasing diversity among class counsel, so that the attorneys leading the case "reflect the diversity of the proposed national class." *In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 WL 7330596, at \*2 (N.D. Cal. July 14, 2020); *see also In re Gildan Activewear Inc. Sec. Litig.*, 2010 WL 11746218, at \*1 (S.D.N.Y. Sept. 20, 2010) (because the "proposed class includes thousands of participants, both male and female, arguably from diverse backgrounds, . . . it is therefore important to all concerned that there is evidence of diversity, in terms of race and gender, in the class counsel I appoint"). As a federally certified woman- and minority-owned firm specializing in representing injured investors as plaintiffs in securities litigation, Saxena White is committed to diversity and empowering women and minority attorneys. For example, Saxena

White was selected by the Chief Judge of the Northern District of Ohio as Co-Lead Counsel for the First Energy matter not only for its "impressive" and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 2:20-cv-04534, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020). Saxena White would staff this litigation with a diverse team of qualified and capable attorneys that reflects the diversity of the Class.

Pursuant to L.R. 83.01(d)(1), Oklahoma Police has selected Stranch, Jennings & Garvey, PLLC ("SJ&G") to serve as Local Counsel for the Class.[21] SJ&G has extensive experience prosecuting complex litigation, including securities class actions, and will serve to facilitate the litigation on a local level. *See* Stranch Decl., Ex. M (Firm resume of SJ&G). For example, founding partner Gerard Stranch was the lead trial attorney and managed over 20 attorneys plus paralegals and clerks for the Sullivan Baby Doe opioids case against Purdue Pharmaceuticals, Mallinckrodt, Endo Health Solutions and Endo Pharmaceuticals, Inc. (*Staubus v. Purdue Pharma LP*, No. C41916-C (Tenn. Cir. Ct., Sull. Cnty.)), which resulted in two bankruptcies that included negotiated multi-billion-dollar national settlement deals for Purdue Pharma and Mallinckrodt, and

---

[21] While Oklahoma Police seeks approval of its selection of Local Counsel pursuant to L.R. 83.01(d)(1), Erste AM conspicuously omits from its Competing Motion any explanation as to: (1) why Erste AM needs two law firms, rather than one, to serve as lead counsel for the Class, or how those two firms will coordinate to avoid duplication of efforts (*see* ECF No. 22 at 16-19); (2) why Erste AM needs a third law firm to serve as local counsel, or what role that third firm will play, when one of its two proposed lead counsel maintains an office in Nashville with Tennessee-barred counsel (*see* ECF No. 22 at 19-20); (3) why Erste AM needs a fourth law firm to "represent[] and counsel[]" it "in this matter[,]" or what role that fourth firm will play (*see* ECF No. 23-4, ¶ 9); or (4) given that Kissimmee "joined" the Competing Motion and Erste AM seeks Kissimmee's designation as "a plaintiff in the action" (*see* ECF No. 21 at 2, ECF No. 21-1, ¶ 3), what role, if any, a fifth law firm—that appeared in the *Kissimmee* action complaint, but not in the Competing Motion (*see* Kissimmee Complaint, ECF No. 1 at 46)—will play.

a default judgment on liability against Endo for repeated discovery violations. The remaining claims against Endo in the landmark case settled as jury selection was beginning for $35 million, the largest per capita opioid recovery against Endo by multiple orders of magnitude.[22] In sum, given its history with securities class actions in this District, SJ&G will capably serve the Class.

Saxena White and SJ&G have the skill, knowledge, and experience that will enable Oklahoma Police to prosecute this action effectively and expeditiously. Thus, the Court may be assured by appointing Oklahoma Police as Lead Plaintiff and approving its selection of Lead Counsel and Local Counsel that the Class will receive the highest caliber of representation. Accordingly, the Court should approve Oklahoma Police's selection of Saxena White to serve as Lead Counsel and SJ&G to serve as Local Counsel for the Class.

## III. CONCLUSION

For the foregoing reasons, Oklahoma Police respectfully requests that the Court: (1) appoint Oklahoma Police as Lead Plaintiff; (2) approve Oklahoma Police's selection of Saxena White to serve as Lead Counsel and SJ&G as Local Counsel for the Class; and (3) deny the Competing Motion.

Dated: June 4, 2024

Respectfully submitted,

**STRANCH, JENNINGS & GARVEY, PLLC**

By: */s/ J. Gerard Stranch IV*

J. Gerard Stranch IV
The Freedom Center
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801

---

[22] For this work, Mr. Stranch and his opioid litigation team were honored as the "Tennessee Trial Lawyer of the Year" by the Tennessee Trial Lawyers Association.

25

gstranch@stranchlaw.com

*Local Counsel for Proposed Lead Plaintiff
Oklahoma Police Pension and Retirement System,
and Proposed Local Counsel for the Class*

**SAXENA WHITE P.A.**

Lester Hooker (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

-and-

Rachel Avan (*pro hac vice*)
Marco A. Dueñas (*pro hac vice*)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 216-2220
ravan@saxenawhite.com
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff Oklahoma
Police Pension and Retirement System, and
Proposed Lead Counsel for the Class*

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2024, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all

registered users, as follows:

**Britt K. Latham**
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
Email: blatham@bassberry.com

**Michele D. Johnson**
Latham & Watkins
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Email: michele.johnson@lw.com

**Heather A. Waller**
Latham & Watkins LLP (Chicago Office)
330 N Wabash Avenue
Suite 2800
Chicago, IL 60611
Email: heather.waller@lw.com

**Renatta A. Gorski**
Latham & Watkins LLP (Chicago Office)
330 N Wabash Avenue
Suite 2800
Chicago, IL 60611
Email: renatta.gorski@lw.com

**Margaret V. Dodson**
Bass, Berry & Sims (Nashville Office)
150 Third Avenue South
Suite 2800
Nashville, TN 37201
Email: margaret.dodson@bassberry.com

Jerry E. Martin
Barrett Johnston Martin & Garrison, LLC
200 31st Avenue North
Nashville, TN 37203
Email: jmartin@barrettjohnson.com

*/s/ J. Gerard Stranch IV*
J. Gerard Stranch IV