EXHIBIT I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

PLYMOUTH COUNTY RETIREMENT : Civ. A. No. 1:21-cv-04390 (VM)
ASSOCIATION, Individually and on Behalf : (Consolidated)
of All Others Similarly Situated, :
: **CLASS ACTION**
Plaintiff, :
:
vs. :
:
ARRAY TECHNOLOGIES, INC., et al., :
:
Defendants. :

---------------------------------------------------------- x

**REPLY IN FURTHER SUPPORT OF THE MOTION OF**
**ERSTE ASSET MANAGEMENT GMBH FOR APPOINTMENT AS**
**LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ........................................................................................................................1

ARGUMENT.................................................................................................................................2

I.      Erste AM Has Article III Standing And Neither PERA Nor The Investor Group Have Offered Any Evidence To The Contrary ....................................................................2

II.     Erste AM Timely Filed A Certification With Valid Electronic Signatures ........................6

III.    Erste AM's PSLRA Certification Does Not "Violat[e]" The "PSLRA" By Inadvertently Omitting A Single Motion For Appointment As Lead Plaintiff....................9

i

## TABLE OF AUTHORITIES

CASES

*BG Litigation Recovery I, LLC v. Barrick Gold Corp.*,
180 F. Supp. 3d 316 (S.D.N.Y. 2016) ...................................................................... 5

*Bhojwani v. Pistiolis*,
2007 WL 2197836 (S.D.N.Y. June 26, 2007) ......................................................... 8

*Blaich v. Employee Solutions, Inc.*,
1997 WL 842417 (D. Ariz. Nov. 21, 1997)............................................................. 8

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
2017 WL 5759361 (N.D. Ohio Nov. 28, 2017)........................................................ 5

*Bray v. Frontier Communications Corp.*,
2018 WL 525484 (D. Conn. Jan. 18, 2018)............................................................. 1

*Constance Sczesny Trust v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) ............................................................................ 3

*Entezari v. Lorillard, Inc.*,
2014 WL 6684600 (Del. Ch. Nov. 25, 2014) .......................................................... 3

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996)............................................................................. 8

*Gronich v. Omega Healthcare Investors, Inc.*,
2018 WL 1626078 (S.D.N.Y. Mar. 27, 2018) ......................................................... 6

*Gross v. AT&T Inc.*,
2019 WL 3500496 (S.D.N.Y. July 31, 2019) .......................................................... 4

*Gross v. AT&T Inc.*,
2019 WL 7759222 (S.D.N.Y. June 24, 2019) .......................................................... 4

*In re Horsehead Holding Corp. Securities Litigation*,
2017 WL 5188057 (D. Del. Nov. 9, 2017)............................................................... 2

*In re Mersho*,
2021 WL 3121385 (9th Cir. July 23, 2021).............................................................. 6

*In re Olsten Corp. Securities Litigation*,
181 F.R.D. 218 (E.D.N.Y. July 10, 1998) ............................................................... 1

*In re Vivendi Universal, S.A. Securities Litigation*,
605 F. Supp. 2d 570 (S.D.N.Y. 2009) ..................................................................... 4

*Khunt v. Alibaba Group Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ..................................................................... 10

*Kuriakose v. Federal Home Loan Mortgage Co.*,
2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008).......................................................... 9

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
2009 WL 1458234 (D. Minn. May 26, 2009)........................................................... 5

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    63 F. Supp. 3d 394 (D. Del. 2014)..................................................................... 2, 3

*Patel v. Reata Pharmaceuticals, Inc.*,
    2021 WL 2983249 (E.D. Tex. July 15, 2021) ......................................................... 6

*Roby v. Ocean Power Technologies, Inc.*,
    2015 WL 1334320 (D.N.J. Mar. 17, 2015).............................................................. 10

*Vladimir v. Bioenvision, Inc.*,
    2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) .......................................................... 9

*W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*,
    549 F.3d. 100 (2d Cir. 2008) ................................................................................. 5

## STATUTES

15 U.S.C. § 7001(a)(2)................................................................................................ 9

15 U.S.C. § 7006(5) ................................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(b)(vi)................................................................................... 9

Erste Asset Management GmbH ("Erste AM") respectfully submits this Reply in further support of its Motion, pursuant to the PSLRA, 15 U.S.C. § 78u-4, for appointment as Lead Plaintiff and approval of its selection of Motley Rice to serve as Lead Counsel for the class, and in opposition to all competing motions, and in response to the arguments raised by PERA (ECF No. 83) and the Institutional Investor Group (the "Investor Group") (ECF No. 84).[1]

## INTRODUCTION

PERA and the Investor Group acknowledge that Erste AM is "the movant claiming the largest financial interest in the relief sought by the class in this Action," PERA Br. 1, and that Erste AM "claims[s] the largest financial interest," Inv'r Grp. Br. 1.[2]  Both, therefore, concede Erste AM is presumptively the "most adequate plaintiff" under the PSLRA.  *See In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-21 (E.D.N.Y. July 10, 1998) ("[T]he presumptive criterion [is] that the most adequate plaintiff is the one who 'has the largest financial interest in the relief sought by the class.'").  However, both PERA and the Investor Group then lodge a series of attacks on Erste AM that, as discussed below, are meritless and should be rejected.  Dispositively, neither competing movant has offered any "proof" to rebut the strong statutory presumption to which Erste AM is entitled.  *See Bray v. Frontier Commc'ns Corp.*, 2018 WL 525484, at \*10 (D. Conn. Jan. 18, 2018) ("Arkansas Teacher and Mr. Lagomarsino therefore are presumptively the lead plaintiffs, a presumption that can be rebutted only with 'exacting proof' that they do not meet the criteria of Rule 23 – that is, that they are atypical or inadequate.  [The other movant] has not established with

---

[1]    References to "PERA Br. __" and "Inv'r Grp. Br. __" are to ECF Nos. 83 and 84, respectively.  References to "Ex. __" are to exhibits to the Declaration of William H. Narwold, filed herewith.  All capitalized terms are defined in Erste AM's opening brief (ECF No. 71) unless otherwise indicated.

[2]    The remaining movant, Discovery Global Opportunity Master Fund, Ltd., has filed a notice of non-opposition stating "it appears that Erste Asset Management GmbH possesses the 'largest financial interest in the relief sought by the class' as required by the PSLRA."  ECF No. 81.

exacting proof that Arkansas Teacher and Mr. Lagomarsino are atypical or inadequate." (citation omitted)).

Because Erste AM is the presumptive lead plaintiff under the PSLRA and neither PERA nor the Investor Group have met the exacting burden to rebut that presumption, Erste AM should be appointed Lead Plaintiff and its selection of Motley Rice as Lead Counsel should be approved.

## ARGUMENT

**I.      Erste AM Has Article III Standing And Neither PERA Nor The Investor Group Have Offered Any Evidence To The Contrary**

PERA contends that Erste AM "has not evidenced its standing to bring suit on behalf of the entity [i.e., Erste AM Fonds Nr. 566] which appears to have incurred the entirety of [Erste AM]'s claimed $4.9 million in losses." PERA Br. 1-2. Similarly, the Investor Group asserts that "there need be evidence that Erste AM is . . . authorized to move on this fund's behalf." Inv'r Grp. Br. 9.[3]

As an initial matter, "[a]t this stage in the litigation, it is the [competing movant]'s burden to show that standing will be a legitimate issue in order to rebut the presumption." *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014); *see also In re Horsehead Holding Corp. Sec. Litig.*, 2017 WL 5188057 (D. Del. Nov. 9, 2017) ("Although Dyson may later be required to affirmatively establish that it has standing [under the PSLRA], that is not a task for this point in the case."). Here, neither PERA nor the Investor Group has presented any proof or evidence that calls into question Erste AM's standing to assert claims on behalf of its

---

[3]      That the Investor Group questions Erste AM's standing is troubling given that their own counsel here, Labaton Sucharow, currently serves as Co-Lead Counsel in *Boston Retirement System v. Alexion Pharmaceuticals, Inc.*, No. 3:16-CV-2127 (AWT) (D. Conn.) ("*Alexion*"), a case in which Erste AM serves as Co-Lead Plaintiff with Labaton Sucharow's client. Yet, counsel for the Investor Group chose not to contact counsel for Erste AM to confer on this issue.

2

fund.  *See, e.g.*, *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the presumptive lead plaintiff] would be uniquely subject.").

In contrast, several courts have rejected similar challenges to Erste AM's standing.  For example, in *Alexion*, a competing movant "argue[d] that Erste-Sparinvest [now Erste AM] lacks standing to represent the class."  Lead Pl. Order at 3, attached as Ex. A.  The court rejected that argument and appointed Erste-Sparinvest as Co-Lead Plaintiff over that objection.  *See id.* (rejecting argument that "Erste-Sparinvest lacks standing to represent the class," finding that Erste-Sparinvest is "a sophisticated institutional investor which purchased shares," and noting that the competing movant "has not produced any proof to the contrary").[4]

Similarly, in 2014, the Delaware Court of Chancery appointed Erste AM (then Erste-Sparinvest) as co-lead plaintiff in a consolidated shareholder class action and rejected arguments against its standing to assert claims on behalf of one of its funds.  *See Entezari v. Lorillard, Inc.*, 2014 WL 6684600, at *2 (Del. Ch. Nov. 25, 2014) ("The Smith Group has raised standing . . . challenges to the adequacy of Erste as a co-lead plaintiff, but these concerns do not change my analysis. . . . I am satisfied for present purposes that Erste has standing to bring an action on behalf of VBV Passive World Equities, the fund managed by Erste that actually holds Lorillard stock.").

---

[4]    Despite challenging standing here, counsel for the Investor Group conceded Erste-Sparinvest's standing in *Alexion*.  *See Alexion* Reply Mem. 6-8, 11, attached as Ex. B (noting, *inter alia*, "Gwinnett County has presented no evidence that calls into question Erste-Sparinvest's standing to assert claims on behalf of the investors in its funds" and citing *OFI Risk Arbitrages* for the proposition that "[a]t this stage in the litigation, it is the [competing movant's] burden to show that standing will be a legitimate issue in order to rebut the presumption").

3

The *Lorillard* court noted that "[t]his conclusion is consistent with that reached in *In re Vivendi Universal, S.A. Securities Litigation*, 605 F. Supp. 2d 570 (S.D.N.Y. 2009)." *Id.*[5] Here, just as in *Alexion*, *Lorillard*, and *Vivendi*, Erste AM is the Austrian management company for its fund – Erste AM Fonds Nr. 566 – and therefore has standing and is authorized to sue on its fund's behalf as a matter of law.[6]

Ignoring this, PERA, *see* PERA Br. 2-4, and the Investor Group, *see* Inv'r Grp. Br. 8 n.5, cite to and rely on *Gross v. AT&T Inc.*, 2019 WL 7759222 (S.D.N.Y. June 24, 2019), and *Gross v. AT&T Inc.*, 2019 WL 3500496 (S.D.N.Y. July 31, 2019). But as the *Gross* court explained in its order on reconsideration, the Belgian asset manager faced "a non-speculative risk" of "a standing challenge" because its managed funds had not executed an assignment of claims in favor of the asset manager. *Gross*, 2019 WL 3500496, at *2-3. According to the court, "[t]he only question . . . is whether the Funds have . . . conveyed a property interest in th[e] claims to [the lead-plaintiff movant] through an assignment or through some other means." *Id.* at *2. The court found on reconsideration that no such assignment existed. *Id.* at *3 ("All that was necessary was

---

[5]    In *Vivendi*, Judge Holwell similarly rejected challenges to the standing of an Austrian "management company" called "Raiffeisen." 605 F. Supp. 2d at 581-82. The court held that Raiffesen "ha[d] standing to bring claims" of securities fraud under Rule 10b-5 on behalf of its funds. *Id.* at 581. Specifically, the court reasoned that "[a]n Austrian investment fund has 'no legal personality of its own.' 'It is administered by a management company' and '[o]nly the management company is entitled to act for the account of a fund.'" *Id.* at 581 (citation omitted). The court found that "'in order for [an Austrian] management company to be entitled to pursue claims for the account of the fund, there is no need for an explicit consent by the fund's owners . . . or a particular power of attorney. . . . Nor is it necessary that the power to file claims is mentioned in the fund rules. The power of the [Austrian] management company to file claims for the account of the fund is directly derived from and based on the [Austrian] statute." *Id* (ellipses in original). Thus, the court concluded that, because "Raiffeisen is the management company for its funds," it "is authorized to sue as a matter of law." *Id.* at 582.

[6]    For certain marketing purposes, Erste AM Fonds Nr. 566 also is known as "ERSTE WWF Stock Environment" due to Erste AM donating part of its management fee to the Worldwide Fund for Nature. To the extent a competing movant may speculate that Erste AM Fonds Nr. 566 and ERSTE WWF Stock Environment are different entities, they are not.

4

for the Funds to execute an assignment of claims, with a condition that all benefits derived therefrom must be remitted back to the Funds.").

Here, in contrast to *AT&T*, Erste AM's fund executed (on July 12, 2021, before the lead plaintiff motion was filed) a valid assignment conveying its property interest in the claims against the defendants in this lawsuit to Erste AM.  *See* Ex. C ("Electronically Signed Assignment").[7] Thus, because its fund executed a valid assignment, Erste AM has Article III standing (even under *AT&T*).  *See, e.g.*, *BG Litig. Recovery I, LLC v. Barrick Gold Corp.*, 180 F. Supp. 3d 316, 329 (S.D.N.Y. 2016) (explaining the Supreme Court and Second Circuit permit assignees to bring claims, including those under the federal securities laws); *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d. 100, 108 (2d Cir. 2008) ("[A]n assignment of claims . . . fulfills the constitutional requirement of an 'injury-in-fact.'"); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 2009 WL 1458234, at *2 (D. Minn. May 26, 2009) (rejecting argument that movants were "subject to unique defenses" because they "received effective assignments of claims").[8]

---

[7]   To be clear, Erste AM does not believe its own fund is required to assign the claim to Erste AM.  *See, e.g.*, *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *4 (N.D. Ohio Nov. 28, 2017) ("SGSS Germany's execution of assignments and alternative reliance upon them is a fail-safe.  Had I found SGSS Germany did not have standing pursuant to the prudential exception, I would have found the investors had standing to pursue these claims, thus giving them the authority to assign those claims." (citations omitted)). Rather, Erste AM obtained the assignment to rebut potentially misleading challenges by competing movants.  Moreover, Erste AM's assignment was validly signed with electronic signatures that can be verified by the same straightforward process of uploading the document, *see* Ex. D ("Assignment Verification Screenshot"), and generating a verification report (like Erste AM's PSLRA certification), *see* Ex. E ("Assignment Verification Report").  Counsel for PERA and the Investor Group never contacted counsel for Erste AM to ask about the existence of any assignment.

[8]   PERA incorrectly argues that Erste AM "has failed to provide . . . ***any facts*** regarding the ***complexities*** of its legal structure," but it is PERA that offers no "facts" to support its speculation – apart from noting the unremarkable fact that Erste AM has "subsidiaries . . . across various countries."   PERA Br. 3 n.1 (emphases added); *see also* https://www.erste-am.com/en/about-us/company/our-group (describing Erste AM's "branch offices across seven countries").

5

## II.     Erste AM Timely Filed A Certification With Valid Electronic Signatures

There is no merit to Investor Group's and PERA's arguments that Erste AM's PSLRA certification (ECF No. 72-1) is "unsigned" and therefore defective.  *See* PERA Br. 5 n.2 (noting that "PERA was unsuccessful" in using Erste AM's "verification website"); Inv'r Grp. Br. 1-4 (arguing that Erste AM's PSLRA certification is "unsigned," "facially deficient," "of no legal significance or consequence," "the same as filing no certification at all," and "fatally incomplete"). For the Investor Group, this is clearly a disingenuous argument given that its counsel communicated with counsel for Erste AM concerning Erste AM's PSLRA certification and its electronic signature in connection with their respective clients' lead plaintiff motions in another PSLRA securities class action, *PureCycle*.[9]  On July 23, 2021, Erste AM's counsel emailed the Investor Group's counsel (at its request) the original pdf of Erste's PSLRA certification in *PureCycle* along with its "Verification report" and several screen shots depicting exactly how one can easily upload the original pdf to the verification website.  Thus, counsel for the Investor Group

---

PERA's speculation has no bearing on the Rule 23 analysis in any event.  As a threshold matter, a movant meets its *prima facie* burden on "adequacy" when, as here, it has retained counsel with "experience prosecuting securities class actions," it has a "financial interest" in the lawsuit large enough to "ensure vigorous advocacy on behalf of the class," and "there is no reason to believe" that they have "interests that are adverse to those of the class members."  *Gronich v. Omega Healthcare Inv'rs., Inc.*, 2018 WL 1626078, at *3 (S.D.N.Y. Mar. 27, 2018).  Additionally, "courts regularly reject the notion that detailed background information is required by a lead-plaintiff movant to show that he or she is adequate and typical."  *Patel v. Reata Pharms., Inc.*, 2021 WL 2983249, at *8 (E.D. Tex. July 15, 2021) (finding movant's "basic background information" was "sufficient . . . for the Court to make an informed lead-plaintiff determination").

Indeed, apart from speculation and innuendo, PERA never attempts to explain how having branch offices renders an institutional investor inadequate or atypical or otherwise shifts the burden to Erste AM to delve into its corporate structure in greater detail than that which is publicly available on its website.  *See In re Mersho*, 2021 WL 3121385, at *6 (9th Cir. July 23, 2021) (finding district court erred when it "placed the burden on [the presumptively most adequate plaintiff] to prove adequacy").

[9]     *Theodore v. PureCycle Techs., Inc.*, No. 6:21-cv-809-PGB-GJK (M.D. Fla.).

6

knew that Erste AM's PSLRA certification in *PureCycle* was valid and verifiable and was aware of precisely how the verification process worked.  Notwithstanding, counsel for the Investor Group persisted in casting aspersions regarding the Erste AM certification submitted in this case.[10]

Moreover, counsel for PERA never contacted counsel for Erste AM to confer on this issue or to inquire how the verification link actually worked.  If PERA's counsel had done so (rather than waiting to brief the issue before the Court), Erste AM's counsel would have emailed them the original pdf of the PSLRA certification (just as they had emailed the Investor Group's counsel on July 23, 2021), along with instructions and screen shots depicting exactly how one could upload the original pdf to the verification website.

Notwithstanding their representations, counsel for the Investor Group did not (as they claim) make "countless attempts" to "verify" Erste AM's certification "by uploading Erste AM's certification for verification."  Inv'r Grp. Br. 6.  Rather, the Investor Group's counsel downloaded a file-stamped pdf copy of ECF No. 72-1 (which included an "Exhibit A" cover page) from

---

[10]    The Investor Group also mischaracterizes Erste AM's certification as "blank" and does so by misleadingly including an incomplete, cropped image of the certification that entirely omits the below portion of the certification that describes the electronic signature itself:

| Winfried Buchbauer<br>Managing Director | Magdalena Reischl<br>Legal Advisor |
|---|---|
| **Erste Asset Management GmbH**<br>**electronically signed** | |

| Inspection information: | The electronic signatures of this document can be inspected at the <u>website of Rundfunk und Telekom Regulierungs-GmbH (https://www.signatur.rtr.at/en/vd/Pruefung.html)</u>. |
|---|---|
| Note: | This document was signed with one or more qualified electronic signatures. A qualified electronic signature has the equivalent legal effect of a handwritten signature. (Art 25 REGULATION (EU) No 910/2014 ("eIDAS Regulation")). |

*See* Ex. F ("Electronically Signed Certification"); *see also* ECF No. 72-1 at 3 (same).

7

PACER.  That altered, combined, and downloaded pdf is *not* the original signed certification, and could not be recognized as such by the authentication website, a fact known by counsel for the Investor Group given that Erste AM's counsel had provided them such an original, along with explanatory screen shots, in connection with the *PureCycle* case.

When the original certification is properly uploaded as instructed, *see* Ex. G ("Document Upload Screenshot"), the website generates a "Verification report" that confirms the signatures are "valid," *see* Ex. H ("Certification Verification Report").[11]

To the extent that any other movant challenges the fact that Erste AM's certification bears an electronic (rather than ink) signature, that contention fails.  *See, e.g.*, *Bhojwani v. Pistiolis*, 2007 WL 2197836, at *8 (S.D.N.Y. June 26, 2007) (rejecting "contention that [movant's] PSLRA certificate is defective, because . . . it bears an electronic signature"; finding lack of "any authority for the proposition that PSLRA does not permit a plaintiff to execute a certificate by means of an electronic signature"; and noting "'it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit []a certificate,' at this stage of the litigation" (third alteration in original)).  Indeed, counsel for the Investor Group itself submitted an electronically signed PSLRA certification in the *PureCycle* case.  *See* Ex. I at 6 ("DocuSigned by James W. Boenig DBE21B720950420…").  Its attack on Erste AM's certification here thus rings hollow.[12]

---

[11]    Erste AM is willing to provide the original (non-filed-stamped) pdf of Erste AM's PSLRA certification upon request by the Court.

[12]    Significantly, the plain language of the PSLRA does not require a lead plaintiff movant to file a shareholder certification at all.  Rather, the certification requirement applies only to members of the putative class who file complaints.  *See, e.g.*, *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 61 (D. Mass. 1996) ("[A] purported class member seeking to serve as lead plaintiff is not required to file a certification, pursuant to section 21D(a)(2)(A), with his or her motion."); *Blaich v. Emp. Sols., Inc.*, 1997 WL 842417, at *2 (D. Ariz. Nov. 21, 1997) ("[T]he [movant] had no obligation under the PSLRA to file such a certification because it did not file the Complaint.").  As such, even if competing movants' certification-related contentions were meritorious (they are not), they are of no consequence under the statute.

Further, electronic signatures such as the ones on Erste AM's PSLRA certification are valid and enforceable under federal law.[13]  Moreover, Erste AM's PSLRA certification notes that it is "signed with two or more qualified electronic signatures" that have "the equivalent legal effect of a handwritten signature" and cites to "Art 25 REGULATION (EU) No 910/2014 ('eIDAS Regulation')."[14]  *See* Electronically Signed Certification; *see also* ECF No. 72-1 at 3 (same).

### III.  Erste AM's PSLRA Certification Does Not "Violat[e]" The "PSLRA" By Inadvertently Omitting A Single Motion For Appointment As Lead Plaintiff

The Investor Group also contends that Erste AM's PSLRA certification commits a "violation of PSLRA certification requirements" because it inadvertently omitted (due to an organizational name change) that Erste AM (then called "Erste-Sparinvest") filed a motion seeking appointment as lead plaintiff in *In re Nielsen Holdings plc Securities Litigation*, 1:18-cv-07143 (S.D.N.Y.).  Inv'r Grp. Br. 9 n.6.  This inadvertent omission is insufficient to rebut Erste AM's *prima facie* showing of adequacy.  *See, e.g.*, *Kuriakose v. Fed. Home Loan Mortg. Co.*, 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) ("The omission of the one case was not very significant because, as an institutional investor, [movant] is not subject to the PLSRA's strict ban on 'professional plaintiffs' who have served as lead plaintiff in more than five class actions in the previous three-year period." (quoting 15 U.S.C. § 78u-4(a)(3)(b)(vi))); *Vladimir v. Bioenvision, Inc.*, 2007 WL 4526532, at *9 (S.D.N.Y. Dec. 21, 2007) ("[T]he Court has discretion . . . to use or

---

[13]    The federal Electronic Signatures in Global and National Commerce Act ("ESIGN") provides that a transaction or document "may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation."  15 U.S.C. § 7001(a)(2).  An "'electronic signature' means any electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record."  15 U.S.C. § 7006(5).

[14]    The European Union "adopted eIDAS (Regulation (EU) N°910/2014) in 2016 to meet the need for a single e-signature law across its member states."  Dan Puterbaugh, E-Sign Rising, ACC Docket, September 2017, at 50, 51.

9

ignore the alleged technical inadequacy of a certificate as a determinative factor."); *Silverberg v. DryShips Inc.*, 2018 WL 10669653, at *3 n.2 (E.D.N.Y. Aug. 21, 2018) ("[C]ourts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties." (citation omitted)).  The inadvertent omission is particularly irrelevant given Erste AM withdrew its motion voluntarily when another movant – represented by counsel for the Investor Group – claimed a greater loss.[15]

Here, "[t]he failure to correct . . . inconsequential clerical errors, like the one[] at issue, simply is not the type of adequacy issue that would 'divert the fact finders' attention from the merits and thus infect the claims of the class as a whole.'"  *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 539 (S.D.N.Y. 2015) (citation omitted).[16]

DATED:  August 3, 2021

Respectfully submitted,

**MOTLEY RICE LLC**

*/s/ William H. Narwold*
William H. Narwold
20 Church St., 17th Floor
Hartford, CT  06103
Telephone:  (860) 882-1681
Facsimile:  (860) 882-1682
bnarwold@motleyrice.com

and

---

[15]    Counsel for the Investor Group have acknowledged previously that "courts routinely excuse minor defects in PSLRA certifications when that movant plainly has the largest financial interest."  *See* Ex. J at 5 ("Berkowitz Reply Br.").

[16]    However, to the extent the Court views the inadvertent omission of Erste AM's motion in *Nielsen* as a deficiency, Erste AM stands ready to submit a supplemental certification.  *See, e.g.*, *Roby v. Ocean Power Techs., Inc.*, 2015 WL 1334320, at *9 (D.N.J. Mar. 17, 2015) ("Courts have found supplemental certifications sufficient to remedy deficiencies in the PSLRA certification.") (collecting cases); *see also* Berkowitz Reply Br. at 3 (counsel for the Investor Group emphasizing that "[c]ourts in this Circuit routinely allow lead plaintiff movants to supplement and/or amend their motions in order to comply with the PSLRA's policy of appointing the movant with the largest financial interest").

Gregg S. Levin
William S. Norton
Christopher F. Moriarty
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
glevin@motleyrice.com
bnorton@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for Erste Asset Management GmbH and*
*Proposed Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 3, 2021.

/s/ William H. Narwold
William H. Narwold