# EXHIBIT A

| | | |
|---|---|---|
| In re SHOALS TECHNOLOGIES GROUP, INC. SECURITIES LITIGATION | ) ) ) ) ) | Civil Action No. 3:24-cv-00334 Judge Waverly D. Crenshaw, Jr. Magistrate Judge Alistair Newbern |
| This Document Relates To: | ) ) ) ) ) | CLASS ACTION |

[PROPOSED] SUPPLEMENT TO CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Pursuant to Federal Rule of Civil Procedure 15(d), Lead Plaintiff Erste Asset Management GmbH and plaintiff Kissimmee Utility Authority Employees' Retirement Plan (collectively, "Plaintiffs") hereby supplement their operative Consolidated Complaint for Violations of the Federal Securities Laws (ECF 75) (the "Complaint").

Through this supplement, ¶54 of the Complaint is replaced in its entirety with the following:

54.     FE2 also reported that Shoals was aware of at least four or five other very large scale utility projects similar to the one in Phoenix that reported exposed wire by June 2022.  FE2 reported that Shoals agreed to replace the wiring at the Phoenix solar field at a cost of $3.5 million to $4 million.  FE1 reported that with the other customers who reported exposed wires to Shoals, the Company was facing expenses of over $15 million by June 2022.  FE1's and FE2's reports regarding the number of solar sites with exposed wire, and Shoals' response to reports of exposed wire is consistent with Defendant Prysmian's Answer and Affirmative Defenses to Plaintiff Shoals' First Amended Complaint, *Shoals Techs. Grp., LLC v. Prysmian Cables & Sys. USA, LLC*, No. 3:23-cv-01153 (M.D. Tenn. Jan. 1, 2025), ECF 60 (the "Answer"), which alleges that by December 2022, Shoals was aware of at least *eight* solar sites where exposed wires had been reported:

- 1 -

To the extent Shoals is alleging it incurred remediation costs, then Prysmian [Cables and Systems USA, LLC] denies that Shoals did not understand this before "summer and fall of 2023"; such allegation is belied by Shoals' internal response to reported exposed conductor as early as March 2022, including conducting site visits to inspect reported exposed conductor, engaging third-party testing companies to analyze its harnesses and composition of its own T-Connector overmold, engaging one of Prysmian's primary competitors to test Prysmian's cable for shrinkback, and reaching its own conclusion that the exposed conductor was caused by improper installation methods. Prysmian further states that, as of December 2022, Shoals informed Prysmian that it was aware of reported exposed conductor at eight solar sites.

Indeed, Shoals was aware of adhesion and molding issues on its connector produced *since at least 2020*. This is also confirmed by the Answer, which alleges that "Shoals was previously aware of adhesion and molding issues on its connector products between at least 2020 and 2023, which may have caused or contributed to exposed conductors."

Through this supplement, ¶55 of the Complaint is replaced in its entirety with the following:

55.     FE3 is a former Shoals Plant Quality Manager who worked for the Company between December 2023 and July 2024. FE3 reported that he/she was made aware of the shrinkback issues immediately upon joining the Company. FE3 reported that Shoals had not been doing any internal testing for shrinkback issues prior to the disputes with Prysmian Cables and Systems USA, LLC ("Prysmian"). Instead, Shoals relied solely on the suppliers to provide appropriate documentation and test results to show that the wires were meeting the proper requirements. FE3 reported that there were no quality controls, checks or testing done with respect to wiring received from suppliers. FE3 reported that such testing did not begin until approximately December 2023. FE3's reports are consistent with the Answer, which alleges that:

[A]s of the date Shoals filed this lawsuit, Shoals did not have a formal or objective adhesion quality testing protocol or wire inspection protocol in place to certify that its molded connector products sufficiently adhered to its suppliers' wire and verify the integrity and quality of its manufactured harnesses. Shoals also acknowledged in internal communications that it did not conduct regular supplier audits after its initial qualification process.

- 2 -

DATED: [Insert Date]

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
HENRY S. BATOR, #040431

_____
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
cwood@rgrdlaw.com
hbator@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DEBRA J. WYMAN (*pro hac vice*)
MATTHEW I. ALPERT (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com

MOTLEY RICE LLC
GREGG S. LEVIN (*pro hac vice*)
WILLIAM S. NORTON (*pro hac vice*)
CHRISTOPHER F. MORIARTY (*pro hac vice*)
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: 843/216-9000
glevin@motleyrice.com
wnorton@motleyrice.com
cmoriarty@motleyrice.com

Lead Counsel for Lead Plaintiff

- 3 -

BARRETT JOHNSTON MARTIN
  & GARRISON, PLLC
JERRY E. MARTIN, #20193
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
jmartin@barrettjohnston.com

Local Counsel

KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON, P.A.
ROBERT D. KLAUSNER
SEAN M SENDRA
7080 Northwest 4th Street
Plantation, FL  33317
Telephone: 954/916-1202
bob@robertdklausner.com
sean@robertdklausner.com

Additional Counsel for Plaintiff Kissimmee
Utility Authority Employees' Retirement Plan

- 4 -