# EXHIBIT B

SHOALS TECHNOLOGIES GROUP,
LLC,

§
§
§
§

Plaintiff,

§
§

CIVIL ACTION NO. 3:23-cv-01153

§
§

v.

§
§

Judge William L. Campbell, Jr.
Magistrate Judge Barbara D. Holmes

PRYSMIAN CABLES AND SYSTEMS
USA, LLC,

§
§
§
§

Defendant.

§

## DEFENDANT PRYSMIAN'S
## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF SHOALS' FIRST AMENDED COMPLAINT

Defendant Prysmian Cables and Systems USA, LLC ("Prysmian") files its Answer and Affirmative Defenses to Plaintiff Shoals Technologies Group, LLC's ("Shoals") First Amended Complaint (Dkt. No. 57) ("Amended Complaint").

For its Answer, Prysmian responds, by corresponding paragraph numbers, to each of the numbered paragraphs of the Amended Complaint.

## I.
## PRYSMIAN'S GENERAL DENIAL AND PRELIMINARY STATEMENT

The following matters are incorporated by reference into Prysmian's responses to each paragraph of the Amended Complaint.

A.      Pursuant to Federal Rule of Civil Procedure 8(b)(3), Prysmian generally denies all of the allegations in the Amended Complaint except for those that it specifically admits. Prysmian specifically denies any liability to Shoals. To the extent that the titles, headings, subheadings, paragraphs, and footnotes of the Amended Complaint are intended to be allegations directed to Prysmian, they are, unless otherwise expressly admitted, denied.

B.     Prysmian reserves the right to seek to amend and/or supplement its Answer as may be appropriate or necessary.

## II.
### ADMISSION AND DENIALS

### INTRODUCTION

1.     Paragraph 1 of the Amended Complaint states arguments and conclusions to which no response is required.  To the extent a response is required, Prysmian denies the allegations in Paragraph 1.

2.     Prysmian admits that Shoals used Prysmian's wire to manufacture products. Prysmian denies the remaining allegations in Paragraph 2.

3.     Prysmian admits Shoals discontinued purchasing Prysmian cable in 2023. Prysmian denies the remaining allegations in Paragraph 3.

### PARTIES

4.     Prysmian is informed and believes, and based thereon admits, that Shoals is a Tennessee limited liability company with a principal place of business in Portland, Tennessee, and that Shoals' sole member is Shoals Holding LLC, whose sole member is Shoals Parent LLC, whose sole member is Shoals Intermediate Parent, Inc., a Delaware corporation.  Prysmian otherwise lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 4 and, on that basis, denies them.

5.     Prysmian admits the allegations in Paragraph 5.

6.     Prysmian admits the allegations in Paragraph 6.

7.     Paragraph 7 of the Amended Complaint states a conclusion of law to which no response is required. To the extent a response is required, Prysmian admits it is the successor-in-

2

interest to General Cable for certain actions undertaken by General Cable prior to the merger. Prysmian denies the remaining allegations in Paragraph 7.

### JURISDICTION AND VENUE

8. Paragraph 8 of the Amended Complaint states a legal conclusion to which no response is required. To the extent a response is required, for purposes of this case only, Prysmian admits that this Court has subject matter jurisdiction over this matter.

9. Paragraph 9 of the Amended Complaint states a legal conclusion to which no response is required. To the extent a response is required, for purposes of this case only, Prysmian admits that it is registered with the Tennessee Secretary of State to do business in the state of Tennessee and can be served with process at CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546. Prysmian denies that it has committed any wrongful actions, including but not limited to any alleged intentional or reckless misconduct directed at Shoals; and Prysmian denies that Shoals has incurred injuries and harm giving rise to any viable claims against Prysmian. Prysmian denies the remaining allegations in Paragraph 9.

10. Paragraph 10 of the Amended Complaint states a legal conclusion to which no response is required. To the extent a response is required, for purposes of this case only, Prysmian admits that Prysmian has transacted business in the Middle District of Tennessee. Prysmian denies the remaining allegations in Paragraph 10.

### FACTUAL ALLEGATIONS

11. Prysmian admits only that Shoals represents that it is "a leading provider" of electrical balance of system ("EBOS") solutions for solar energy projects. Prysmian is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 11 and therefore denies the same.

12.     Prysmian admits that Shoals' EBOS products are comprised of multiple components, including photovoltaic wire.  Prysmian denies that photovoltaic wire is a "specialized" component part, as it is a common, stock product.  Prysmian denies the remaining allegations in Paragraph 12.  Prysmian further states that the wire at issue is a low voltage wire.

13.     Prysmian admits the allegations in Paragraph 13.

14.     Prysmian admits that Shoals purchases wires from multiple suppliers to manufacture its EBOS systems.  Prysmian is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 and therefore denies the same.

15.     Prysmian admits the allegations in Paragraph 15.

**SHOALS' PURCHASE OF PHOTOVOLTAIC WIRE FROM PRYSMIAN**

16.     Prysmian admits that it manufactures electrical wires used in the energy and telecom industries.  Its wire portfolio includes size 10 and 12 American wire gauge ("AWG") black and red copper photovoltaic wire, which Shoals purchased pursuant to General Cable's Terms & Conditions.  The colors red and black refer to the exterior color of polymer insulation on these wires.  The black and red photovoltaic wires Shoals purchased from Prysmian that are the subject of this lawsuit contain a stranded—not solid—copper conductor.  Prysmian denies that Prysmian's photovoltaic wires are defective and denies the remaining allegations in Paragraph 16.

17.     Paragraph 17 purports to cite excerpted marketing information from a General Cable website, the content of which speaks for itself such that no response is required.  To the extent that a response is required, Prysmian denies any incomplete excerpt and/or characterizations that are different from, incomplete, or inconsistent with, the statements on the referenced website. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian also denies that these marketing statements supersede the terms, representations, or warranties in General Cable's Terms & Conditions.  Prysmian denies the remaining allegations in Paragraph 17.

4

18.     Prysmian admits that it provided general specification information regarding its commodity off-the-shelf SunGen® Photovoltaic Wire to many customers, including Shoals. Further, Paragraph 18 purports to cite information allegedly from a Prysmian document, which speaks for itself such that no response is required.  To the extent that a response is required, Prysmian denies any characterizations that are different from or inconsistent with the document. Prysmian further states that the cited document contains multiple representations that the referenced SunGen® Photovoltaic Wire contains a stranded conductor. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian denies that these marketing statements supersede the terms, representations, or warranties in General Cable's Terms & Conditions.  Prysmian denies the remaining allegations in Paragraph 18.

19.     Paragraph 19 purports to cite information allegedly from a Prysmian document, which speaks for itself such that no response is required.  To the extent that a response is required, Prysmian denies any characterizations that are different from or inconsistent with the document. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian also denies that these marketing statements supersede the terms, representations, or warranties in General Cable's Terms & Conditions.  Prysmian denies the remaining allegations in Paragraph 19.

20.     Paragraph 20 purports to cite information allegedly from a Prysmian document, which speaks for itself such that no response is required. To the extent that a response is required, Prysmian denies any characterizations that are different from or inconsistent with the document. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian also denies that these marketing statements supersede the terms, representations, or warranties in General Cable's Terms & Conditions.  Prysmian denies the remaining allegations in Paragraph 20.

Case 3:23-cv-00343   Document 92   Filed 04/21/25   Page 5 of 41 PageID #: 2579

21. Paragraph 21 purports to cite information allegedly from a Prysmian document, which speaks for itself such that no response is required. To the extent that a response is required, Prysmian denies any characterizations that are different from or inconsistent with the document. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian also denies that these marketing statements supersede the terms, representations, or warranties in General Cable's Terms & Conditions. Prysmian admits that it states that its SunGen® Photovoltaic Wire complies with the applicable portions of certain industry standards but denies that the specification sheet certifies that the Prysmian wire complies with *inapplicable* portions of those standards. For example, the UL 44 and UL 2556 standards set forth shrinkback requirements that apply only to wires with solid conductors, not wires with stranded conductors; and all of the SunGen® Photovoltaic Wire that Prysmian sold to Shoals that are at issue in this case contained *stranded* copper conductors. Shoals, in fact, knows that the UL 44 shrinkback test only applies to wires with solid conductors, and has admitted and acknowledged this in internal communications before it filed this lawsuit. Prysmian denies the remaining allegations in Paragraph 21.

22. Prysmian denies that Shoals' representative could have reasonably relied on Prysmian's specification sheets to say that Prysmian's wires comply with inapplicable portions of the UL standards, such as the shrinkback test in UL 44. Prysmian is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and therefor denies the same.

23. Prysmian denies the allegations in Paragraph 23. Prysmian further denies that Shoals *ever* requested or that Prysmian *ever* manufactured a SunGen® Photovoltaic Wire or any other wire specifically for Shoals' use on its Electric Balance of Systems applications or otherwise. Prysmian manufactures the same SunGen® Photovoltaic Wire for various uses by numerous

customers. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian also denies that the statements or representations contained in Paragraph 23 supersede the terms, representations, or warranties in General Cable's Terms & Conditions.

24. Prysmian admits that it sent Shoals pricing information for Prysmian's black and red photovoltaic wire. Such pricing information constituted an offer to purchase, which Shoals then accepted for the purchases at issue in this lawsuit. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian also denies that weekly price sheets or specifications contained in Paragraph 24 supersede the terms, representations, or warranties in General Cable's Terms & Conditions. Prysmian denies the remaining allegations in Paragraph 24.

25. Prysmian admits that Shoals had a contractual relationship with Prysmian for the purchase of Prysmian black and red photovoltaic wire, pursuant to the General Cable Terms & Conditions. Prysmian denies the remaining allegations in Paragraph 25.

26. The allegations in Paragraph 26 state arguments and conclusions of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 26.

27. Prysmian admits that it manufactured and shipped Prysmian black and red photovoltaic wire to Shoals and that it met the applicable standards. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian also denies that the certifications contained in Paragraph 27 supersede the terms, representations, or warranties in General Cable's Terms & Conditions. Prysmian denies the remaining allegations of Paragraph 27.

28. Paragraph 28 purports to cite information allegedly from a Shoals document, which speaks for itself such that no response is necessary. To the extent that a response is required, despite the contractual relationship existing between itself and Shoals since 2014, Prysmian agrees

with Shoals' admission that Shoals did not provide its own proposed Terms & Conditions until November 2021. Prysmian denies that it ever accepted Shoals' Terms & Conditions or that Shoals' Terms & Conditions applied to any transaction between Shoals and Prysmian. General Cable provided its Terms & Conditions to Shoals in 2017 at the latest, which Shoals agreed to by accepting the millions of feet of wire it regularly purchased from Prysmian. Prysmian denies the remaining allegations of Paragraph 28.

29. Prysmian denies the allegations in Paragraph 29. Shoals' Terms & Conditions, which Shoals proposed to Prysmian in November 2021, were not accepted by Prysmian, and did not govern any aspect of the relationship that existed between the parties since 2014.

30. Prysmian denies the allegations in Paragraph 30. Shoals' Terms & Conditions, which Shoals proposed to Prysmian in November 2021, was not accepted by Prysmian, and did not govern any aspect of the relationship that existed between the parties since 2014.

31. Prysmian denies the allegations in Paragraph 31. Shoals' Terms & Conditions, which Shoals proposed to Prysmian in November 2021, was not accepted by Prysmian, and did not govern any aspect of the relationship that existed between the parties since 2014.

32. Prysmian denies the allegations in Paragraph 32. Shoals' Terms & Conditions, which Shoals proposed to Prysmian in November 2021, was not accepted by Prysmian, and did not govern any aspect of the relationship that existed between the parties since 2014.

33. Prysmian denies the allegations in Paragraph 33. Shoals' Terms & Conditions, which Shoals proposed to Prysmian in November 2021, was not accepted by Prysmian, and did not govern any aspect of the relationship that existed between the parties since 2014.

34. Prysmian denies the allegations in Paragraph 34. Shoals' Terms & Conditions, which Shoals proposed to Prysmian in November 2021, was not accepted by Prysmian, and did not govern any aspect of the relationship that existed between the parties since 2014.

35. Prysmian denies the allegations in Paragraph 35. Shoals' Terms & Conditions, which Shoals proposed to Prysmian in November 2021, was not accepted by Prysmian, and did not govern any aspect of the relationship that existed between the parties since 2014.

**PRYSMIAN WIRE AND INDUSTRY STANDARDS**

36. Prysmian admits that the wires at issue in this lawsuit contain a polymer insulation covering a stranded copper conductor. Prysmian denies the remaining allegations of Paragraph 36.

37. Paragraph 37 purports to cite to documents, which speaks for themselves such that no response is required. To the extent that a response is required, Prysmian denies any characterizations that are different from or inconsistent with the documents. To the extent they are inconsistent with General Cable's Terms and Conditions, Prysmian also denies that the specification sheets referenced in Paragraph 37 supersede the terms, representations, or warranties in General Cable's Terms & Conditions. Prysmian further states that UL 44 contains numerous sections and requirements, some of which are applicable to Prysmian's SunGen® Photovoltaic Wire and some of which are not. In particular, UL 44's shrinkback requirements and the UL 2556 shrinkback test do not apply to the stranded copper conductor wire Prysmian sold to Shoals. Shoals, in fact, knows that the UL 44 shrinkback test only applies to wires with solid conductors, and has admitted and acknowledged this in multiple internal communications before it filed this lawsuit. UL 44 Section 5.21, entitled "Shrinkback", states in its entirety:

> This requirement applies to *solid* 2.08 – 5.26 mm$^2$ (14 – 10 AWG) XL insulated conductors only. No exposed end of the conductor shall exceed 3 mm (0.12 in) in

9

length after 24 h when subjected to the test, Shrinkback, in UL 2556, CSA C22.2 No. 2556, or NMX-J-556-ANCE.  As an option, if the exposed conductor length exceeds 3 mm (0.12 in), it shall not exceed 4 mm (0.16 in) in length after 7 d.

*See* Dkt. No. 57-6, UL 44 Excerpt, Exhibit F to Amended Complaint.  (emphasis added).  The black and red SunGen® Photovoltaic Wire Prysmian sold to Shoals at issue in this lawsuit contained *stranded* copper conductors.  Prior to filing this lawsuit, Shoals knew the distinction between solid and stranded conductors, and Shoals admitted that UL 44's shrinkback requirements applies to solid crosslinked insulated conductors.

38.     Prysmian denies the allegations in Paragraph 38.  Prysmian admits that it has tested the cable at issue pursuant to UL 2556 in the past as part of other test protocols it utilized for root cause analysis purposes; however, Prysmian denies that UL 2556 applies to the cable at issue in this lawsuit.  Prysmian also denies that any defined "industry expectation" as to shrinkback and the specific cable at issue exists.

39.     Paragraph 39 purports to cite to portions of third-party documents, which speak for themselves, therefore no response is required.  To the extent that a response is required, Prysmian denies the allegations of Paragraph 39.  Prysmian further states that while Shoals quotes a portion of UL 44 § 5.21 in its footnote 6, Shoals omits from its quotation the first sentence of § 5.21, which states "[t]his requirement applies to *solid* 2.08 – 5.26 mm$^2$ (14 – 10 AWG) XL insulated conductors only."  *See* Dkt. No. 57-6, UL 44 Excerpt, Exhibit F to Amended Complaint (emphasis added).  Similarly, in its footnote 6, Shoals cites generally to UL 2556 § 7.4.3, but does not quote the section, which states "[a] 5 m (16 ft) length of *solid* conductor shall be formed into a loose coil . . ."  *See* Dkt. No. 57-7, UL 2556 Excerpt, Exhibit G to Amended Complaint (emphasis added).  UL 2556 calls for a specific test length and provides maximum shrinkback acceptable for that specific

test specimen length. UL 2556 does not specify any percentage and does not contemplate extrapolating a shrinkback percentage to all lengths of wire.

40. Paragraph 40 purports to cite to portions of third-party documents, which speak for themselves, therefore no response is required. To the extent that a response is required, Prysmian denies the allegations of Paragraph 40. Prysmian further states that the "ICEA Test" Shoals references in Paragraph 40 does not apply to the wire at issue, because the ICEA Test applies only to *medium* voltage (*i.e.*, 5,000 – 46,000 volts) rated wires with concentric neutrals. Prysmian's red and black photovoltaic wires at issue lacked concentric neutrals and are *low* voltage, meaning they are only rated for up to 2,000 volts.

41. Prysmian denies the allegations of Paragraph 41.

42. To the extent that the allegations of Paragraph 42 purport to be based on ICEA test methods, the contents of which speak for themselves, all characterizations thereof are denied. To the extent that a response is required, Prysmian denies the allegations of Paragraph 42. Prysmian further incorporates by reference its response to Paragraph 40. The ICEA standards, like UL 44 and UL 2556, do not specify any percentage and do not contemplate a shrinkback percentage that can be applied across all lengths of wire.

43. Prysmian admits that UL 44 and ICEA contain shrinkback test methodologies and standards, but Prysmian denies that these shrinkback tests or standards apply to the low voltage stranded conductor wires at issue that Prysmian sold to Shoals. Prysmian admits that wire experiencing a certain amount of insulation shrinkback can expose copper conductors. Prysmian denies the remaining allegations of Paragraph 43, including that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor

products at issue in this lawsuit. Prysmian further incorporates by reference its response to Paragraph 40.

44. Prysmian admits that insulation shrinkback is a normal characteristic of all cross-linked polyethelene wire insulation products and that Prysmian is aware of, and has investigated, such phenomenon for years. Prysmian admits that is had processes in place to prevent insulation shrinkback beyond certain tolerances in normal use cases. Prysmian admits that its wires comply with applicable and relevant portions of UL 44 and other industry standards. Prysmian denies that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit. Prysmian denies that its wire insulation has or will ever shrink back an "unacceptable amount" in the ordinary use case. Prysmian denies the remaining allegations of Paragraph 44.

45. Prysmian admits that its red and black photovoltaic wire at issue contains a stranded copper conductor in a polymer insulation. Prysmian admits that it had and has processes in place to prevent insulation shrinkback beyond certain internal Prysmian tolerances. Prysmian denies the remaining allegations of Paragraph 45, including that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit.

46. Prysmian denies that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit. Prysmian admits that it had and has processes in place to prevent insultation shrinkback beyond certain internal Prysmian tolerances. Prysmian denies the allegations of Paragraph 46.

47. Paragraph 47 of the Amended Complaint states a legal conclusion to which no response is required. Paragraph 47 also purports to cite to portions of third-party documents, which

speak for themselves, therefore no response is required.  To the extent a response is required, Prysmian denies the allegations of Paragraph 47, including that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit.  Prysmian further states that the shrinkback testing requirements of UL 44 do not apply to the stranded copper conductor wire Prysmian sold to Shoals.  Moreover, UL 4703 does not contain a shrinkback test, requirement, or any other section related to shrinkback.

48.     Paragraph 48 of the Amended Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Prysmian denies the allegations of Paragraph 48, including any allegation that Shoals' Terms & Conditions, which Shoals provided to Prysmian in November 2021 and were never accepted, govern any aspect of the relationship that existed between the parties since 2014.  Prysmian also denies that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit.

### DISCOVERY OF THE INSULATION SHRINKBACK DEFECT IN PRYSMIAN WIRE

49.     Prysmian admits that it went with Shoals and a third-party to a Shoals' customer's solar field site to examine Shoals' T-Junctions in March 2022 and that it observed some instances of exposed conductor around Shoals' connectors.  Prysmian denies the remaining allegations in Paragraph 49.

50.     Prysmian admits that there is no industry standard shrinkback requirement or test applicable to the low voltage stranded conductor products at issue in this lawsuit. Prysmian admits that it created its own internal testing protocols and quality benchmarks for shrinkback. Prysmian admits that it conducted a preliminary investigation of limited (fewer than five) samples of wire sold to Shoals, which is all Shoals provided to Prysmian before filing this lawsuit, the results of

which did not identify any anomalies with the wires.  Paragraph 50 purports to recite information allegedly from a Prysmian document, the content of which speaks for itself, and all characterizations thereof are denied.  Prysmian denies the remaining allegations in Paragraph 50.  Prysmian further states that prior to filing this lawsuit, Shoals did not provide Prysmian *any* wire samples in addition to the samples referenced above, despite Prysmian's repeated requests in 2022 and 2023.  Prysmian was forced to limit its testing to the limited samples Shoals provided and the wire it had on hand, which did not contain any wire installed by Shoals or with Shoals' products.  To date (more than 14 months since filing this lawsuit), in addition to the initial samples, Shoals has provided Prysmian with wire samples from only *three* of the "more than thirty solar fields" allegedly exhibiting insulation shrinkback.  *See* Amended Complaint, ¶ 79.

51.    Prysmian denies the allegations in Paragraph 51.

52.    Prysmian admits that it prepared a Meeting/Visit Report.  Paragraph 52 purports to recite information allegedly from Prysmian's report, the content of which speaks for itself, and all characterizations thereof are denied.  Prysmian denies the remaining allegations in Paragraph 52.  Prysmian further alleges that Shoals and at least one of its third-party consultants previously determined (before filing this lawsuit) that Shoals' improper installation practices (which did not involve Prysmian) caused the exposed conductor.

53.    Prysmian denies the allegations in Paragraph 53.  Prysmian further states that some insulation shrinkback is a well-known and accepted phenomenon in wire insulation.

54.    Prysmian admits that Shoals continued to purchase Prysmian red wire after the alleged exposed conductor issue arose but denies that Shoals has paid for all of that wire.  Prysmian admits that its design and/or manufacture of its wires was not the root cause of the exposed

conductors at Shoals' installations at issue, and that it told this to Shoals. Prysmian incorporates by reference its response to Paragraph 52 and denies the remaining allegations in Paragraph 54.

55. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 55 because Shoals has not disclosed the full extent and nature of its replacement of harnesses and, on that basis, Prysmian denies them.

56. Prysmian admits that some of Shoals' customers raised exposed conductor concerns in 2022 and 2023, and that at least one customer determined in 2023 that Shoals' T-Connector overmolds did not properly bond to Prysmian's wire insulation due to the overmolds' porosity. Prysmian denies that this customer or any of its third-party testing companies opined that Prysmian's wire was defective.

57. Prysmian denies the allegations in Paragraph 57.

58. Prysmian cannot speak to the mindset of the unnamed Shoals representative. Prysmian therefore lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding Shoals' knowledge in Paragraph 58 and, on that basis, denies them. Prysmian denies the allegations in Paragraph 58.

59. Prysmian cannot speak to the mindset of the unnamed Shoals representative and therefore lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 59 and, on that basis, denies them.

60. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding Shoals knowledge in Paragraph 60 and, on that basis, denies them.

61.     Prysmian denies the allegations in Paragraph 61.  To the extent Paragraph 61 purports to cite information allegedly from written correspondence, the content of such correspondence speaks for itself and all characterizations thereof are denied.

62.     Prysmian admits that it met with Shoals in January 2023.  Paragraph 62 purports to cite information allegedly from a Prysmian document, the content of which speaks for itself, and all characterizations thereof are denied.  Prysmian denies the remaining allegations of Paragraph 62. Prysmian further states that, despite conducting numerous tests, it has not been able to replicate the amount of exposed conductor (multiple inches in some instances) observed only when Prysmian's wire is stripped by Shoals and affixed to Shoals' various connector types and is not aware of Shoals or any third party replicating such lengths of exposed conductor by virtue of any method of shrinkback testing.

63.     Prysmian admits that it questioned whether Shoals' harness design, molding process, and/or installation methods caused exposed conductor on Prysmian's wire.  Prysmian admits that it denied that its wire was defective.  For the avoidance of doubt, Prysmian continues to deny that its wire was defective.  Prysmian admits that one of Shoals' own consultants agreed with this conclusion before Shoals filed this lawsuit.   Prysmian also states that Shoals acknowledged in its own internal communications that its improper installation practices caused the observed exposed conductor.  Prysmian continues to believe improper installation practices and/or Shoals' manufacturing practices caused or, at minimum, contributed to cause exposed conductor.  Prysmian also alleges that Shoals was previously aware of adhesion and molding issues on its connector products between at least 2020 and 2023, which may have caused or contributed to exposed conductors.  Shoals acknowledged in internal communications that it made

modifications to its adhesion testing and quality control processes during this timeframe to fix its adhesion problem. Prysmian denies the remaining allegations in Paragraph 63.

64. Paragraph 64 purports to cite information allegedly from a Prysmian document, the content of which speaks for itself, and all characterizations thereof are denied. Prysmian admits that, as of January 2023, its red wire at issue in this lawsuit has been made with the same manufacturing process and with the same materials since 2016. The suppliers of such materials occasionally changed; however, the materials themselves did not. Prysmian has manufactured the red and black wire at issue on one line at one facility since it began production of the wire in 2013. Prysmian denies the remaining allegations of Paragraph 64.

65. Prysmian admits it conducted shrinkback tests in January and February 2023 but denies that the tests showed "unacceptable levels of shrinkback on its wire." Prysmian denies the remaining allegations in Paragraph 65. Prysmian further states that UL independently tests Prysmian's UL certified wire portfolio, including the wire at issue, on a regular basis. UL has not found that Prysmian's 10 or 12 AWG black or red copper photovoltaic wire fails to meet any applicable standard for which the wire is certified.

66. Prysmian admits that it told Shoals that its wires were not the root cause of the shrinkback issue and that the Prysmian wires were free of defects and manufactured to the required applicable UL specification. Prysmian's representations were true, as evidenced in part by that the fact that UL has not found that Prysmian's 10 or 12 AWG black or red copper photovoltaic wire fails to meet any applicable standard for which the wire is certified. Prysmian therefore denies the remaining allegations in Paragraph 66.

67. Prysmian admits that it denies responsibility for the shrinkback issues at Shoals' sites. Prysmian denies that it refused to accept return of its red wire Shoals had on hand. Rather,

Prysmian made multiple attempts to take back its red wire that Shoals possessed, including in June 2023, July 2023, and August 2023. *Shoals acknowledged in writing before filing this lawsuit* that Prysmian tentatively agreed to accept the return of its red wire Shoals possessed *and* credit Shoals' outstanding accounts receivable for the value of that wire; however, Shoals never accepted this offer or returned the red wire to Prysmian, and instead sued Prysmian. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 67 and, on that basis, denies them.

68. Prysmian denies the allegations in Paragraph 68. Prysmian further states that it made numerous attempts to mutually determine a root cause of the exposed conductor issue with Shoals beginning in March 2022. Prysmian continued making these efforts into 2023; however, Shoals ignored Prysmian's efforts. Shoals did not request any information from Prysmian about the alleged "failure rate" of its wire. Rather, Shoals tested Prysmian's wire internally as early as 2022 and throughout 2023. To date, upon information and belief, Shoals has not produced the complete underlying data from these tests to Prysmian. Unbeknownst to Prysmian until May 2024—seven months after filing this lawsuit—Shoals also provided Prysmian's wire to one of Prysmian's primary competitors for shrinkback testing in early 2023. Shoals has not provided the Prysmian wire used for Prysmian's competitor's evaluation to Prysmian.

69. Prysmian admits that it denies responsibility for the shrinkback issues at Shoals' sites. Shoals did not request any information from Prysmian about the alleged "failure rate" of its wire during the second quarter of 2023 and invited Prysmian's representatives to attend *one* site visit during all of 2023. Prysmian accepted the invitation and attended the site visit. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 69 and, on that basis, denies them.

18

70. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 70 regarding Shoals' understanding and mental impressions, and on that basis, Prysmian denies them. Prysmian further states that under Prysmian's GC Method, which typically tests a 254 mm length cable at 131 degrees Celsius for one 30-minute cycle, the maximum allowable shrinkback on *either* end of the cable is 3 mm. Prysmian therefore also denies Shoals' allegation that the GC Method allows for 3 mm of shrinkback on *each* end of a 12-inch wire sample and denies that the GC Method refers to *percentage* of shrinkback. Shoals' allegation that the GC Method allows for 2.4% shrinkback of that sample length is also not true because Shoals arrived at this percentage by *combining* 3 mm of shrinkback on *each* end of the cable sample (6/254 = .0236). Shoals' allegations in this regard are misleading and Prysmian denies them.

71. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 71 regarding Shoals' knowledge and mental impressions, and on that basis, Prysmian denies them. Prysmian also denies the remaining allegations in Paragraph 71. Prysmian further states that no certifying agency (including UL and ICEA) has *ever* said that Prysmian's GC Method tests were improper or inadequate.

72. Prysmian denies the allegations in Paragraph 72 and incorporates by reference its responses to Paragraphs 70 and 71.

73. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 73 and, on that basis, denies them. Prysmian further states that Shoals made no effort to involve Prysmian in its remediation efforts despite Prysmian's requests, including numerous requests for wire samples to mutually determine a root cause of the exposed conductor issue. Shoals refused Prysmian's offers to support Shoals during the

19

remediation process, including its offers to develop alternative remediation measures. To the extent Shoals is alleging it incurred remediation costs, then Prysmian denies that Shoals did not understand this before "summer and fall of 2023"; such allegation is belied by Shoals' internal response to reported exposed conductor as early as March 2022, including conducting site visits to inspect reported exposed conductor, engaging third-party testing companies to analyze its harnesses and composition of its own T-Connector overmold, engaging one of Prysmian's primary competitors to test Prysmian's cable for shrinkback, and reaching its own conclusion that the exposed conductor was caused by improper installation methods. Prysmian further states that, as of December 2022, Shoals informed Prysmian that it was aware of reported exposed conductor at eight solar sites. Prysmian incorporates by reference its response to Paragraph 63.

74. Prysmian denies that Shoals used a significant amount of wire from other manufacturers on the relevant solar panel applications during the relevant timeframe. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 74 and, on that basis, denies them. Prysmian also denies that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit.

### CAUSES OF THE INSULATION SHRINKBACK DEFECT IN PRYSMIAN WIRE

75. Prysmian denies the allegations in Paragraph 75. Prysmian further states that the red and black wire at issue in this lawsuit, which Shoals alleges Prysmian manufactured between 2019 and 2022, was made pursuant to the same manufacturing process, on the same line, in the same facility, and with the same materials since 2016. The suppliers of such materials occasionally changed; however, the materials themselves did not.

76.     Paragraph 76 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 76, including that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit.  Prysmian further states that Shoals has not identified any "departure from industry practice" associated with its manufacturing or production processes, and there were none.  Prysmian alleges that Shoals made *numerous changes* to its own adhesion and molding processes between at least 2020 and 2023, including up until (and likely after) Shoals filed this lawsuit, in response to repeated failures to adhere its undermold and overmold material to several wire suppliers' insulation.  These changes include, but are not limited to, modifications to injection molding speeds, barrel heat, cooling time, and supposed improvements to the molding machines themselves. Shoals acknowledged in internal communications that certain departures from its molding process can lead to small holes in its molded connector products.  Moreover, upon information and belief, as of the date Shoals filed this lawsuit, Shoals did not have a formal or objective adhesion quality testing protocol or wire inspection protocol in place to certify that its molded connector products sufficiently adhered to its suppliers' wire and verify the integrity and quality of its manufactured harnesses.  Shoals also acknowledged in internal communications that it did not conduct regular supplier audits after its initial qualification process.

77.     Paragraph 77 states conclusions of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 77 and refers to its answer to Paragraph 76.

### DEFECTIVE PRYSMIAN WIRE FORCED SHOALS TO INCUR SUBSTANTIAL DAMAGES

78.     Prysmian denies the allegations of Paragraph 78.  Prysmian further states that its black and red photovoltaic wires remain on Shoals' harness systems on numerous, fully

21

functioning solar field sites. Prysmian understands that multiple sites will not undergo a full remediation of Prysmian wire. Prysmian is also aware that at some sites, Shoals has replaced areas of exposed conductor with its own replacement T-Connectors. Prysmian is unaware of any exposed conductor occurring at the replacement T-Connectors.

79. Prysmian denies that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit. Prysmian admits that Shoals informed Prysmian that as of June 14, 2024, it was aware of allegedly "unacceptable amounts of insulation shrinkback" at 35 solar field sites out of the approximately 300 solar sites containing Shoals' harness system with Prysmian wire. Shoals has not identified any additional allegedly impacted sites since providing the initial list of 35 sites. To date, Shoals has given Prysmian the opportunity to inspect only 10 of the 35 identified sites, only one of which Prysmian is aware contained Prysmian wire manufactured in 2019, and none that Prysmian is aware contained Prysmian's 12 AWG wire. Prysmian denies the remaining allegations of Paragraph 79.

80. Paragraph 80 purports to cite information allegedly from a Shoals document, which speaks for itself such that no response is necessary. Paragraph 80 also states conclusions of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 80, including that there is any definition of "unacceptable amount of insulation shrinkback" applicable to the low voltage stranded conductor products at issue in this lawsuit.

81. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 81 and, on that basis, denies them. Prysmian further states, despite Prysmian's request, Shoals has not produced any support for its claim that a "site reported

property damage arising from a fire in 2023" and neither the unidentified site owner nor any other site owner has ever notified Prysmian of such an issue.

82. The allegations within Paragraph 82 are not directed toward Prysmian and therefore do not require any response from Prysmian. To the extent a response is required, Prysmian admits that Shoals hired a drone imaging company to investigate certain solar field sites. Prysmian repeatedly requested the drone data from Shoals in 2023, which Shoals ignored. To date, Shoals has produced mostly illegible data from *one* allegedly impacted solar field site, despite Prysmian's requests for the data before and during this lawsuit. Prysmian denies the remaining allegations in Paragraph 82.

83. Prysmian denies the allegations in Paragraph 83. Prysmian further states that Prysmian made multiple attempts to take back its red wire that Shoals possessed, including in June 2023, July 2023, and August 2023. *Shoals acknowledged before filing this lawsuit* that Prysmian tentatively agreed to accept the return of its red wire Shoals possessed *and* credit Shoals' outstanding accounts receivable for the value of that wire; however, Shoals never accepted this offer or returned the Prysmian red wire it possessed. Prysmian informed Shoals in November 2023 that it consented to Shoals scrapping the identified red Prysmian wire. To date, Shoals has not informed Prysmian whether it scrapped the wire. To the extent Shoals incurred any damages resulting from storing this wire, Shoals could have avoided such damages by either returning the wire to Prysmian or scrapping the wire.

84. The allegations within Paragraph 84 are not directed toward Prysmian and therefore do not require any response from Prysmian. To the extent a response is required, Prysmian denies the allegations in Paragraph 84. Prysmian further states that Shoals has produced data showing the amount of alleged exposed conductor at less than half of the 35 allegedly impacted solar field

sites. This data, and Prysmian's onsite inspections, show that only a fraction of harnesses at a given solar field site have exhibited any exposed conductor. Moreover, Prysmian is aware of alternative remediation methods that do not require the complete removal and reinstallation of its harnesses, including replacing its connectors adjacent to exposed conductor with new T-Connector kits.

85. Prysmian lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 85 and, on that basis, denies them. Prysmian further states it is not aware of any support for Shoals' claim that it experienced reputational damage and the loss of prospective customers and revenue due to any Prysmian act or omission.

86. Prysmian admits that its wire is safe, non-defective, and in conformity with its representations of quality, as evidenced by the fact that its other Electrical Balance of Systems customers use Prysmian's wire on the same types of applications as Shoals and have not observed any shrinkback or exposed conductor. Prysmian denies the remaining allegations in Paragraph 86.

87. Paragraph 87 purports to cite information allegedly from a Prysmian document, which speaks for itself such that no response is required. To the extent that a response is required, Prysmian denies any characterizations that are different from or inconsistent with the document. Prysmian denies the remaining allegations in Paragraph 87.

88. Prysmian denies the allegations in Paragraph 88.

89. Paragraph 89 states conclusions of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 89.

90. Paragraph 90 states conclusions of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 90.

Case 3:23-cv-00344-3 Document 98-2 Filed 04/22/25 Page 25 of 41 PageID #: 7598

91.     Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 90.

92.     Prysmian denies that Tennessee law applies and denies the allegations in Paragraph 92.

93.     Prysmian denies the allegations in Paragraph 93.

94.     Prysmian denies the allegations in Paragraph 94.

95.     Prysmian denies the allegations in Paragraph 95, including all of its subparts.

## COUNT TWO
### BREACH OF CONTRACT FOR WIRE SOLD UNTIL NOVEMBER 2021

96.     Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 95.

97.     Prysmian admits only that it issued weekly price sheets to Shoals.  Prysmian denies the remaining allegations of Paragraph 97.

98.     Prysmian denies the allegations in Paragraph 98.  Prysmian further states that, despite the contractual relationship existing between itself and Shoals since 2014, Shoals did not provide its own proposed Terms & Conditions until November 2021.  Prysmian denies that it ever accepted Shoals' Terms & Conditions or that Shoals' Terms & Conditions applied to any transaction between Shoals and Prysmian.  General Cable provided its Terms & Conditions to Shoals in 2017 at the latest, which Shoals agreed to by accepting the millions of feet of wire it consistently purchased from Prysmian.

99.     Prysmian denies the allegations in Paragraph 99.

100.    Prysmian denies the allegations in Paragraph 100.

101.    Prysmian denies the allegations in Paragraph 101.  Prysmian further states that UL

44 and UL 4703 are inapplicable for the reasons Prysmian previously stated, and Shoals has not and cannot identify "other applicable standards."

102. Prysmian denies the allegations in Paragraph 102, including all of its subparts.

103. Prysmian denies the allegations in Paragraph 103, including all of its subparts.

104. Prysmian denies the allegations in Paragraph 104.

<b>COUNT THREE</b><br><b>BREACH OF CONTRACT SHOALS' 2021 TERMS AND CONDITIONS</b>

105. Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 104.

106. Prysmian admits that it issued weekly price sheets to Shoals after November 5, 2021, as Prysmian had done previously.

107. Prysmian denies the allegations in Paragraph 107. Prysmian further states that, despite the contractual relationship existing between itself and Shoals since 2014, Shoals did not provide its own proposed Terms & Conditions until November 2021. Prysmian denies that it ever accepted Shoals' Terms & Conditions or that Shoals' Terms & Conditions applied to any transaction between Shoals and Prysmian. General Cable provided its Terms & Conditions to Shoals in 2017 at the latest, which Shoals agreed to by accepting the millions of feet of wire it consistently purchased from Prysmian.

108. Paragraph 108 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 108.

109. Prysmian denies the allegations in Paragraph 109, including all of its subparts.

110. Prysmian denies the allegations in Paragraph 110, including all of its subparts.

111. Paragraph 111 states a conclusions of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 111.

26

112.   Paragraph 112 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 112.

**COUNT FOUR**
**UNJUST ENRICHMENT (IN THE ALTERNATIVE TO COUNTS II AND III)**

113.   Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 116.

114.   Prysmian admits the allegations in Paragraph 114.

115.   Prysmian denies the allegations in Paragraph 115.

116.   Prysmian denies the allegations in Paragraph 116.

**COUNT FIVE**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

117.   Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 116.

118.   Paragraph 118 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 118.

119.   Prysmian admits only that Prysmian and Shoals entered into a contractual relationship based on General Cable's Terms & Conditions. Prysmian denies that Shoals' proposed 2021 Terms and Conditions apply and Prysmian denies the remaining allegations of Paragraph 119.

120.   Prysmian denies the allegations in Paragraph 120.

121.   Prysmian denies the allegations in Paragraph 121.

122.   Prysmian denies the allegations in Paragraph 122.

123.   Prysmian denies the allegations in Paragraph 123, including all of its subparts.

124.   Prysmian denies the allegations in Paragraph 124.

## COUNT SIX
## BREACH OF EXPRESS WARRANTY

125.    Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 124.

126.    Prysmian denies the allegations in Paragraph 126.

127.    Prysmian denies the allegations in Paragraph 127, including all of its subparts.

128.    Prysmian denies the allegations in Paragraph 128, including all of its subparts.

129.    Prysmian denies the allegations in Paragraph 129.

## COUNT SEVEN
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

130.    Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 129.

131.    Prysmian denies the allegations in Paragraph 131.

132.    Paragraph 132 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies that Tennessee law applies and denies the allegations in Paragraph 132.

133.    Prysmian denies the allegations in Paragraph 133.

134.    Prysmian denies the allegations in Paragraph 134, including all of its subparts.

135.    Prysmian denies the allegations in Paragraph 135.

## COUNT EIGHT
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

136.    Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 135.

137.    Prysmian denies the allegations in Paragraph 137.

138.    Prysmian denies the allegations in Paragraph 138.

139. Prysmian denies the allegations in Paragraph 139.

140. Prysmian denies the allegations in Paragraph 140.

141. Paragraph 141 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies that Tennessee law applies and Prysmian denies the allegations in Paragraph 141.

142. Prysmian denies the allegations in Paragraph 142.

143. Prysmian denies the allegations in Paragraph 143, including all of its subparts.

144. Prysmian denies the allegations in Paragraph 144.

**COUNT NINE**
**EXPRESS INDEMNITY**

145. Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 144.

146. Prysmian denies the allegations in Paragraph 146.

147. Prysmian denies that Shoals' proposed 2021 Terms and Conditions apply and Prysmian denies the remaining allegations of Paragraph 147.

148. Prysmian denies that Shoals' proposed 2021 Terms and Conditions apply and Prysmian denies the remaining allegations of Paragraph 148.

149. Prysmian denies that Shoals' proposed 2021 Terms and Conditions apply and Prysmian denies the remaining allegations of Paragraph 149.

150. Prysmian denies that Shoals' proposed 2021 Terms and Conditions apply and Prysmian denies the remaining allegations of Paragraph 150.

151. Prysmian denies that Shoals' proposed 2021 Terms and Conditions apply and Prysmian denies the remaining allegations of Paragraph 151.

152.	Prysmian denies that Shoals' proposed 2021 Terms and Conditions apply and Prysmian denies the remaining allegations of Paragraph 152.

**COUNT TEN**
**EQUITABLE INDEMNITY**

153.	Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 152.

154.	Prysmian denies the allegations in Paragraph 154.

155.	Paragraph 155 states a conclusion of law to which no response is required.  To the extent a response is required, Prysmian admits only that it is the successor to General Cable and that it has no duty or legal obligation to indemnify Shoals, and therefore is not indemnifying Shoals, for Shoals' own defective manufacture, design and/or installation of Shoals' products. Prysmian denies the remaining allegations in Paragraph 155.

156.	Prysmian denies the allegations in Paragraph 156.

**COUNT ELEVEN**
**INTENTIONAL MISREPRESENTATION**

157.	Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 156.

158.	Prysmian denies the allegations in Paragraph 158.

159.	Prysmian denies the allegations in Paragraph 159, including all of its subparts.

160.	Prysmian denies the allegations in Paragraph 160.

161.	Prysmian denies the allegations in Paragraph 161.

162.	Prysmian denies the allegations in Paragraph 162, including all of its subparts.

163.	Prysmian denies the allegations in Paragraph 163.

164.	Prysmian denies the allegations in Paragraph 164.

165.	Prysmian denies the allegations in Paragraph 165.

166. Prysmian denies the allegations in Paragraph 166.

167. Prysmian denies the allegations in Paragraph 167.

### COUNT TWELVE
### NEGLIGENCE

168. Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 167.

169. Paragraph 169 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 169.

170. Paragraph 170 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 170.

171. Prysmian denies the allegations in Paragraph 171.

172. Prysmian denies the allegations in Paragraph 172.

173. Prysmian denies the allegations in Paragraph 173.

174. Prysmian denies the allegations in Paragraph 174.

175. Prysmian denies the allegations in Paragraph 175.

176. Prysmian denies the allegations in Paragraph 176.

### COUNT THIRTEEN
### GROSS NEGLIGENCE

177. Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 176.

178. Paragraph 178 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 178.

179. Paragraph 179 states a conclusion of law to which no response is required. To the extent a response is required, Prysmian denies the allegations in Paragraph 179.

180. Prysmian denies the allegations in Paragraph 180.

181. Prysmian denies the allegations in Paragraph 181.

182. Prysmian denies the allegations in Paragraph 182.

183. Prysmian denies the allegations in Paragraph 183.

184. Prysmian denies the allegations in Paragraph 184.

185. Prysmian denies the allegations in Paragraph 185.

186. Prysmian denies the allegations in Paragraph 186.

**COUNT FOURTEEN**
**STRICT LIABILITY**

187. Prysmian reasserts and incorporates by reference its responses to Paragraphs 1 through 186.

188. Prysmian denies the allegations in Paragraph 188.

189. Prysmian denies the allegations in Paragraph 189.

190. Prysmian denies the allegations in Paragraph 190.

191. Prysmian denies the allegations in Paragraph 191.

192. Prysmian denies the allegations in Paragraph 192.

193. Prysmian denies the allegations in Paragraph 193.

**PRAYER FOR RELIEF**

Prysmian denies that Shoals is entitled to any relief at all and Prysmian denies each and every subparagraph in the Prayer for Relief alleged in Shoals' Amended Complaint.

**III.**
**AFFIRMATIVE DEFENSES**

Prysmian asserts that Shoals' claims against it are barred pursuant to the following defenses, each of which is raised in the alternative.

Further, discovery is ongoing. Thus, Prysmian reserves the right to seek amendment of,

modify, and/or expand these defenses and to take further positions as discovery proceeds in this action.  Furthermore, to the extent Shoals amends the Amended Complaint and/or its contentions, Prysmian expressly reserves the right to amend this Answer and its defenses.

### FIRST AFFIRMATIVE DEFENSE
### (SHOALS' PROPOSED TERMS & CONDITIONS DO NOT APPLY)

Shoals' claims are barred, in whole or in part, because they are premised on Shoals' proposed 2021 Terms & Conditions, which are not applicable to the transactions at issue between Prysmian and Shoals.

### SECOND AFFIRMATIVE DEFENSE
### (CHOICE OF LAW)

Shoals' claims are barred, in whole or in part, because they are pled under Tennessee law, when the applicable contract between the parties, the General Cable Terms & Conditions, mandate that Kentucky law applies.

### THIRD AFFIRMATIVE DEFENSE
### (SHOALS' BREACH OF GOOD FAITH AND FAIR DEALING)

Shoals' claims are barred, in whole or in part, because Shoals breached the implied covenant of good faith and fair dealing.

### FOURTH AFFIRMATIVE DEFENSE
### (PRYSMIAN'S GOOD FAITH AND FAIR DEALING)

Prysmian acted reasonably and in good faith at all times material herein, based on all relevant facts, law, and circumstances known by it at the time that it acted.  Accordingly, Shoals' Amended Complaint is barred, in whole or in part, from any recovery in this action.

### FIFTH AFFIRMATIVE DEFENSE
### (INSUFFICIENT NOTICE)

Shoals' claims are barred, in whole or in part, for failure to provide Prysmian with notice of Shoals' allegedly defective products within a reasonable time after Shoals discovered the

33

alleged defect as required under U.C.C. § 2-607(3)(a) and § 9 of governing General Cable Terms & Conditions.

## SIXTH AFFIRMATIVE DEFENSE
## (CONTRACTUAL LIMITATIONS OF SHOALS' REMEDIES)

Shoals' claims for damages are barred, in whole or in part, by the warranty limitation provision in § 9 and the limitation of liability provision in § 13 of the General Cable Terms & Conditions.

## SEVENTH AFFIRMATIVE DEFENSE
## (DISCLAIMER)

Shoals' claims are barred, in whole or in part, by the warranty disclaimer provision in § 9 the applicable General Cable Terms & Conditions.

## EIGHTH AFFIRMATIVE DEFENSE
## (MISUSE)

Shoals' claims are barred, in whole or in part, by any alteration, modification, or misuse of the Prysmian wires by Shoals, for which Prysmian cannot be held responsible.

## NINTH AFFIRMATIVE DEFENSE
## (INDEPENDENT/INTERVENING CONDUCT)

Shoals' claims are barred, in whole or in part, because the alleged damages, if any, sustained by Shoals are the direct and proximate result of the independent, intervening, negligent and/or unlawful conduct of Shoals or other parties, including but not limited to independent third parties or their agents, and not any act or omission on the part of Prysmian.

## TENTH AFFIRMATIVE DEFENSE
## (COMPARATIVE NEGLIGENCE/PROPORTIONATE FAULT)

Prysmian is not legally responsible with respect to the damages that may be claimed by Shoals, as a result of the matters alleged in the Amended Complaint; however, if Prysmian is found to be legally responsible in any manner, then it is averred that Shoals was at least 50% at fault and

Shoals' recovery should be barred under the doctrine of comparative fault. In the alternative, if Shoals is entitled to any recovery against Prysmian, which is denied by Prysmian, then Prysmian is entitled to have any award reduced or mitigated according to the contributory or comparative negligence of Shoals and other individuals or entities who contributed to and/or caused said damages.

## ELEVENTH AFFIRMATIVE DEFENSE
## (FAILURE TO MITIGATE DAMAGES)

Shoals' claims are barred, in whole or in part, by Shoals' failure to mitigate any alleged damages.

## TWELFTH AFFIRMATIVE DEFENSE
## (LACHES)

Shoals' claims are barred pursuant to the doctrine of laches. Among other failures, Shoals unreasonably delayed taking action in connection with the allegations and claims asserted in the Amended Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE
## (ESTOPPEL)

Shoals' claims are barred, in whole or in part, by the doctrine of estoppel. Shoals' conduct, actions, and inactions amount to and constitute an estoppel of the claims it seeks to assert, and any relief sought thereby.

## FOURTEENTH AFFIRMATIVE DEFENSE
## (WAIVER)

Shoals' claims are barred, in whole or in part, by the doctrine of waiver. Shoals' conduct, actions, and inactions amount to and constitute a waiver of any right or rights that Shoals may or might have in relation to the matters alleged in the Amended Complaint.

35

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(UNCLEAN HANDS)**

Shoals' claims are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**(UNJUST ENRICHMENT)**

Shoals' claims are barred, in whole or in part, by the doctrine of unjust enrichment.  The

damages Shoals seeks, if awarded, would result in unjust enrichment to Shoals.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**(SUBSTANTIAL COMPLIANCE)**

Shoals' claims are barred, in whole or in part, because Prysmian's wires were at all times

in substantial compliance with applicable law.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(SPECULATIVE DAMAGES)**

Shoals is precluded from recovering the damages alleged in the Amended Complaint

because those damages and are too vague, ambiguous, excessive, unreasonable, uncertain and

speculative to permit recovery.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(STATUTE OF LIMITATIONS)**

Shoals' claims are barred, in whole or in part, by the applicable statutes of limitations.

**TWENTIETH AFFIRMATIVE DEFENSE**
**(ECONOMIC LOSS RULE)**

Shoals' claims are barred, in whole or in part, by the economic loss rule.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**
**(FAILURE TO STATE A CLAIM)**

The Amended Complaint fails, in whole or in part, to state a claim upon which relief may

be granted, fails to state facts sufficient to constitute a cause of action, and fails to plead a legally

cognizable injury.

36

## TWENTY-SECOND AFFIRMATIVE DEFENSE
## (FAILURE TO PLEAD WITH PARTICULARITY)

Shoals' claims are barred, in whole or in part, because Shoals fails to plead any allegedly intentional act or misrepresentation or alleged gross negligence with the requisite particularity and fails to allege facts sufficient to entitle Shoals to any claim for punitive damages.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
## (SHOALS' BREACH OF CONTRACT)

Shoals' claims are barred, in whole or in part, by virtue of Shoals' failure to perform and/or its breaches of its obligations to Prysmian.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
## (TENNESSEE PRODUCTS LIABILITY ACT)

To the extent that Tennessee law governs, which is disputed by Prysmian, Prysmian asserts and relies upon any defense set forth in the Tennessee Products Liability Act, § 29-28-101 et seq.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
## (TENN. CODE ANN. § 29-28-108)

To the extent that Tennessee law governs, which is disputed by Prysmian, Shoals' claims should be barred under Tenn. Code Ann. § 29-28-108 to the extent that discovery reveals that the product "was made unreasonably dangerous by subsequent unforeseeable alteration, change, improper maintenance or abnormal use."

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
## (PUNITIVE DAMAGES)

To the extent that Tennessee law governs, which is disputed by Prysmian, Shoals is not entitled to punitive damages as a matter of law. Prysmian did not act maliciously, intentionally, fraudulently, or recklessly as required under Tenn. Code Ann. §29-39-104, and punitive damages are "appropriate only in the most egregious cases." *See Goff v. Elmo Greer & Sons Const. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.

1992)).  Prysmian asserts and relies upon every defense set forth in Tenn. Code Ann. §§ 29-39-104 and 29-28-104.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**
**(PUNITIVE DAMAGES UNCONSTITUTIONAL)**

The assessment of punitive damages against Prysmian, under the circumstances of this case, would violate Prysmian's right to due process under the United States Constitution.

**RESERVATION OF ADDITIONAL DEFENSES**

Prysmian reserves all defenses and affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, and any other defenses at law or equity that may now or in the future be available based on discovery or any other factual investigation concerning this case or any related action.

**PRAYER FOR RELIEF**

Accordingly, Prysmian prays for judgment as follows:  (1) that Shoals' Amended Complaint be dismissed with prejudice, or that judgment be entered in Prysmian's favor; (2) that Prysmian be awarded all costs and expenses, including attorneys' fees, incurred by Prysmian as permitted by the applicable Terms & Conditions and/or as permitted by applicable law in an amount to be proven by the trier of fact; and (3) for any such other relief in Prysmian's favor that this Court deems equitable and just.

38

Dated: January 2, 2025

Respectfully submitted,

**FROST BROWN TODD LLP**

/s/ *Lucas T. Elliot*
Lucas T. Elliot (BPR # 037084)
lelliot@fbtlaw.com
Elle G. Kern (BPR # 034301)
ekern@fbtlaw.com
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
615.251.5500 (Telephone)

***Attorneys for Defendant Prysmian Cable and Systems USA, LLC***

OF COUNSEL:

**MORGAN, LEWIS & BOCKIUS LLP**

David J. Levy (pro hac vice)
Texas State Bar No. 12264850
david.levy@morganlewis.com
Cullen G. Pick (pro hac vice)
Texas State Bar No. 24098260
cullen.pick@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, TX 77002
713.890.5000 (telephone)

**CERTIFICATE OF SERVICE**

I certify that on January 2, 2025, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Middle District of Tennessee via the CM/ECF system. I hereby certify that I have served the document on all counsel of record by a manner authorized by LR 5.01:

Jessalyn H. Zeigler
Jeffrey Gibson
Courtney A. Hunter
BASS, BERRY, & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
jzeigler@bassberry.com
jgibson@bassberry.com
courtney.hunter@bassberry.com

James B. Manley, Jr.
Jill C. Kuhn
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, NE
Suite 3000
Atlanta, GA 30308
Jim.Manley@Troutman.com
Jill.Kuhn@Troutman.com

*Attorneys for Plaintiff Shoals Technologies Group, LLC*

/s/ Lucas T. Elliot
Lucas T. Elliot