UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re SHOALS TECHNOLOGIES GROUP, INC. SECURITIES LITIGATION | Civil Action No. 3:24-cv-00334 |
| | **CLASS ACTION** |
| This Document Relates To: All Actions | Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Alistair Newbern |
| | **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CONSOLIDATED COMPLAINT** |

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. PLAINTIFFS FAIL TO PLEAD AN EXCHANGE ACT CLAIM....................................1

    A. Plaintiffs Do Not Allege an Actionable GAAP Opinion .........................................2

    B. Statements Discussing Shoals' Warranty Reserves Are Protected FLS ..................4

    C. Shoals' Warranty Risk Disclosures Are Not Misleading ........................................5

    D. "Safety," "Reliability," and "Cost-Saving" Statements Are Not Actionable ..........5

    E. Plaintiffs Have Not Alleged a Fraudulent Scheme ..................................................6

    F. Plaintiffs Do Not Allege Scienter for Any Exchange Act Defendant ......................6

    G. Plaintiffs Do Not Plead Loss Causation...................................................................9

III. KUAERP FAILS TO PLEAD A SECURITIES ACT CLAIM............................................9

    A. KUAERP Does Not Allege an Actionable Misstatement........................................9

    B. KUAERP Lacks Standing to Assert Securities Act Claims..................................10

    C. KUAERP Does Not Adequately Allege a Direct Sale or Solicitation...................10

IV. PLAINTIFFS' SECTION 20A, 20(A), AND 15 CLAIMS FAIL ....................................10

V. CONCLUSION................................................................................................................10

## CASES

*Bond v. Clover Health Investments, Corp.*,
   587 F. Supp. 3d 641 (M.D. Tenn. 2022) .................................................................... 5

*Bondali v. Yum! Brands, Inc.*,
   620 F. App'x 483 (6th Cir. 2015) ............................................................................... 5

*Chapman v. Mueller Water Products, Inc.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020) ..................................................................... 4, 5

*City of Pontiac General Employees' Retirement System v. Stryker Corp.*,
   865 F. Supp. 2d 811 (W.D. Mich. 2012) .................................................................... 4

*Cozzarelli v. Inspire Pharmaceuticals Inc.*,
   549 F.3d 618 (4th Cir. 2008) ....................................................................................... 9

*Cupat v. Palantir Technologies, Inc.*,
   2025 WL 1141534 (D. Colo. Apr. 4, 2025) ............................................................. 10

*Dang v. Amarin Corp. PLC*,
   750 F. Supp. 3d 431 (D.N.J. 2024) ............................................................................. 7

*Doshi v. General Cable Corp.*,
   823 F.3d 1032 (6th Cir. 2016) ..................................................................................... 6

*Flynn v. Sientra, Inc.*,
   2016 WL 3360676 (C.D. Cal. June 9, 2016) ............................................................ 10

*Grae v. Corrections Corp. of Am.*,
   2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017) ......................................................... 5

*Higginbotham v. Baxter International Inc.*,
   495 F.3d 753 (7th Cir. 2007) ....................................................................................... 3

*In re Diebold Nixdorf, Inc., Securities Litigation*,
   2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ............................................................ 8

*In re Envision Healthcare Corp. Securities Litigation*,
   2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019) ............................................... 7, 8, 10

*In re FirstEnergy Corp.*,
   2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ............................................................. 10

*In re Ford Motor Co. Securities Litigation*,
   184 F. Supp. 2d 626 (E.D. Mich. 2001) ..................................................................... 3

*In re Huntington Bancshares Securities Litigation*,
    674 F. Supp. 2d 951 (S.D. Ohio 2009) .......................................................... 4, 8

*In re Sotera Health Co. Securities Litigation*,
    2025 WL 860897 (N.D. Ohio Mar. 19, 2025) ..................................................... 9

*In re Walmart Inc. Securities Litigation*,
    2024 WL 1513532 (D. Del. Apr. 8, 2024) .......................................................... 2

*In re Washington Prime Group Securities Litigation*,
    2024 WL 1307103 (S.D. Ohio Mar. 27, 2024) .................................................. 9

*Indiana Public Retirement System v. AAC Holdings, Inc.*,
    2021 WL 1316705 (M.D. Tenn. Apr. 8, 2021) .................................................. 2

*Lewakowski v. Aquestive Therapeutics Inc.*,
    2023 WL 2496504 (D.N.J. Mar. 14, 2023) ........................................................ 7

*Lim v. Hightower*,
    2024 WL 4349409 (N.D. Ohio Sept. 30, 2024) ................................................. 8

*Notredan, LLC v. Old Republic Exchange Facilitator Co.*,
    531 F. App'x 567 (6th Cir. 2013) ...................................................................... 2

*Padilla v. Community Health Systems*,
    2022 WL 3452318 (M.D. Tenn. Aug. 17, 2022) ............................................... 3

*St. Clair County Employees' Retirement System v. Acadia Healthcare Co.*,
    2021 WL 195370 (M.D. Tenn. Jan. 20, 2021) ................................................... 8

*Stichting Pensioenfonds Metaal En Techniek v. Verizon Communications, Inc.*,
    2025 WL 957662 (D.N.J. Mar. 31, 2025) ........................................................... 3

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Global Holdings, Inc.*,
    83 F.4th 514 (6th Cir. 2023) ..................................................................... 6, 7, 8

**STATUTES**

15 U.S.C. § 77a *et seq.* ................................................................................................ 9

15 U.S.C. § 78a *et seq.* ..................................................................................... 4, 5, 6, 7

15 U.S.C. § 78u-4 *et seq.* ........................................................................................... 4

**RULES**

Fed. R. Civ. P. 8 ........................................................................................................... 9

Fed. R. Civ. P. 9 ........................................................................................................... 9

# TABLE OF ABBREVIATIONS

| AC | Plaintiffs' Amended Consolidated Class Action Complaint, Dkt. 82 |
|---|---|
| App. C | Appendix C, filed concurrently with this brief |
| BLA | Big Lead Assembly (Shoals' proprietary "above-ground feeder cable," a separate component of Shoals' EBOS solution than the wire harnesses containing the copper conductors presenting with shrinkback. *See* AC ¶ 36 (wire harnesses connect the solar panels to the BLA); *see also id.* ¶¶ 42, 67, 101) |
| Class Period | May 16, 2022, through May 7, 2024, inclusive |
| Defendants | Shoals, Individual Defendants, and Underwriter Defendants |
| Director Defendants | Jason R. Whitaker, Brad Forth, Peter Wilver, Ty Daul, Toni Volpe, Lori Sundberg, Jeannette Mills, and Robert Julian |
| EBOS | Electrical Balance of Systems |
| Erste AM | Lead Plaintiff Erste Asset Management GmbH |
| Ex. | Exhibit attached to the Latham Declaration, filed at Dkt. 86 |
| Exchange Act | Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* |
| Exchange Act Defendants | Shoals, Jason Whitaker, Kevin Hubbard, Dominic Bardos, Jeffrey Tolnar, Brandon Moss |
| Exchange Act Individual Defendants | Jason Whitaker, Kevin Hubbard, Dominic Bardos, Jeffrey Tolnar, Brandon Moss |
| FE | Former employee |
| FLS | Forward-looking statements |
| GAAP | Generally Accepted Accounting Principles |
| Individual Defendants | Dominic Bardos, Jason R. Whitaker, Jeffrey Tolnar, Brandon Moss, Kevin Hubbard, Brad Forth, Peter Wilver, Ty Daul, Toni Volpe, Lori Sundberg, Jeanette Mills, Robert Julian, and Dean Solon |
| KUAERP | Plaintiff Kissimmee Utility Authority Employees' Retirement Plan |
| Motion ("Mot.") | Memorandum of Law in Support of Defendants' Motion to Dismiss Consolidated Complaint, Dkt. 85 |
| Opposition ("Opp.") | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Dkt. 91 |

| | |
|---|---|
| Plaintiffs | Lead Plaintiff Erste Asset Management GmbH[1] and Kissimmee Utility Authority Employees' Retirement Plan |
| PSLRA | Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.* |
| Rule 12(b)(6) | Federal Rule of Civil Procedure 12(b)(6) |
| Section 12 | Section 12(a)(2) of the Securities Act |
| Securities Act | Securities Act of 1933, 15 U.S.C. § 77a *et seq.* |
| Securities Act Defendants | Dean Solon,[2] the Director Defendants, the Underwriter Defendants, Shoals, and Dominic Bardos |
| Section 12 Defendants | Shoals, Bardos, the Director Defendants, and the Underwriter Defendants |
| Shoals or the Company | Shoals Technologies Group, Inc. |
| SPO | Secondary Public Offering |
| SPOs | Shoals' December 2022 and March 2023 SPOs |
| Underwriter Defendants | J.P. Morgan Securities LLC; Guggenheim Securities, LLC; Morgan Stanley & Co. LLC; UBS Securities LLC; Goldman Sachs & Co. LLC; Barclays Capital Inc.; Credit Suisse Securities (USA) LLC; Cowen and Company, LLC; Oppenheimer & Co. Inc.; Piper Sandler & Co.; Roth Capital Partners, LLC; Johnson Rice & Company L.L.C.; Northland Securities, Inc |

---

[1] Lead Plaintiff Erste AM did not purchase shares in the SPO and does not bring any Securities Act Claims. *See* AC ¶¶ 230–250 (only KUAERP alleging Counts IV-VI).

[2] Solon is only a Securities Act Defendant and only to the extent Plaintiffs allege he violated Section 15 of the 1933 Act. AC at iii n.1.

## I. INTRODUCTION

Plaintiffs' Opposition makes clear that all of Plaintiffs' claims stem from the theory that Defendants allegedly violated GAAP by (i) failing to immediately disclose a disputed issue with one product arising at a few customer sites and (ii) understating Shoals' warranty reserves for defective product claims—even though Shoals has received clean audits and has never restated its financials. This theory is not actionable. Plaintiffs fail to allege a GAAP violation, and regardless, GAAP violations do not state a securities fraud claim. Plaintiffs base their theory on three FEs who had no involvement in Shoals' accounting and who can say nothing about what any Defendant "knew" or "recklessly disregarded" at the time of the challenged statements. Worse, Plaintiffs rely on the implausible argument that Shoals' executives hid the issue from investors so Shoals' founder (not alleged to have a relationship with any executive) could cash out in two SPOs.

Plaintiffs cannot escape the AC's allegations, which set out the following series of events: In March 2022, Shoals learned of an issue affecting certain wire harnesses at a client site. Shoals believed the issue stemmed from the customer's own installation, not defective wiring. Shoals continued to investigate, allegedly becoming aware of eight impacted sites (out of hundreds) by some time in December 2022. When Shoals determined in April 2023 that all affected harnesses used one type of one supplier's wire, Shoals disclosed the issue in its very next public filing. At that time, due to limited information on the scope of affected sites, potential solutions, and possible recovery from its supplier, Shoals could not yet estimate its potential liability. But as Shoals learned more, it updated investors each quarter on its estimates for future warranty claims.

The AC does not support a claim of securities fraud and should be dismissed with prejudice.

## II. PLAINTIFFS FAIL TO PLEAD AN EXCHANGE ACT CLAIM

Plaintiffs fail to address that they have not identified with particularity "each statement alleged to have been misleading." Mot. 8–9; *see, e.g.*, Opp. 7 (identifying different set of "safety,"

1

"reliability," and "cost-saving" statements than Defendants surmised Plaintiffs are challenging, *see* Mot. 18–19). That failure alone merits dismissal of all Plaintiffs' claims. *See* Mot. 8–9; *see also Notredan, LLC v. Old Rep. Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (failing to address argument forfeits claim).

### A. Plaintiffs Do Not Allege an Actionable GAAP Opinion

Plaintiffs' challenges to GAAP-related statements fail. Plaintiffs assert—without support—that Shoals' estimation of its warranty reserves and related disclosures are *not* opinions. Opp. 11. Plaintiffs ignore that GAAP standards, including ASC 450, are "subjective" and tolerate a "range of 'reasonable' treatments, leaving the choice among alternatives to management." *In re Walmart Inc. Sec. Litig.*, 2024 WL 1513532, at *10 (D. Del. Apr. 8, 2024). That is why "courts have deemed them to be opinions." *Id.* To state an actionable opinion, Plaintiffs do not dispute they must allege with particularity (1) false embedded statements of fact; (2) material omissions; or (3) statements not genuinely believed. *See* Mot. 10. Their failure to do so requires dismissal.

**No False Embedded Statements or Material Omissions.** Plaintiffs argue Shoals' warning that it "may face warranty, indemnity and product liability claims arising from defective products" violated GAAP. Opp. 11. This argument fails on two levels. ***First***, the AC does not support Plaintiffs' hindsight argument that ASC 450 required disclosure prior to May 2023. The Opposition supports that an opinion is actionable only if it conflicts with what Defendants knew at the time. *See Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2021 WL 1316705, at *11 (M.D. Tenn. Apr. 8, 2021) (Opp. 12). Plaintiffs fail to allege with particularity, however, that material warranty claims were "reasonably possible," let alone "probable," before Shoals disclosed the issue in May 2023. Opp. 10. Plaintiffs' theory stretches ASC 450 far beyond its limits, and would require Shoals to have disclosed one report of exposed wire in March 2022 and alleged awareness of eight sites (out of hundreds) by some time in December 2022. Opp. 11. But "[p]rudent managers

2

conduct inquiries rather than jump the gun with half-formed stories as soon as a problem comes to their attention." *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 760–61 (7th Cir. 2007).

Plaintiffs' FE-based allegations do not save them. Plaintiffs' own FEs contend Shoals first believed the issue stemmed from installation, not a defect triggering Shoals' warranty obligations. *See* AC ¶¶ 40, 50, 53-54; *In re Ford Motor Co. Sec. Litig.*, 184 F. Supp. 2d 626, 633 (E.D. Mich. 2001) (no duty to disclose where "[c]osts associated with a recall were not substantially certain to hold"). Plaintiffs mischaracterize their own FE allegations by arguing that Shoals had "already incurred" $15 million in remediation costs by June 2022 (Opp. 4), contrary to the FE contention that Shoals was "facing" such expenses by June 2022 (AC ¶ 54).[3] Further, Plaintiffs cannot credibly rely on either FE1's or FE2's contentions about cost estimates. *Id.* ¶¶ 54, 135. Unlike the FEs in *Padilla v. Community Health Systems*, it is clear from the AC that neither FE would have "first-hand knowledge" of the financial accounting for the wire issue given neither was involved in such work, nor is there any allegation they shared their purported estimate with anyone at Shoals. 2022 WL 3452318, at *36 (M.D. Tenn. Aug. 17, 2022); *see also Stichting Pensioenfonds Metaal En Techniek v. Verizon Commc'ns, Inc.*, 2025 WL 957662, at *5 (D.N.J. Mar. 31, 2025) (loss reserve is inactionable opinion where "plaintiffs say nothing about the reserve setting process and the basis for the [GAAP] opinion"). Instead, Plaintiffs' allegations confirm that it was not until April 2023—just before Shoals disclosed a probable loss—that Shoals eventually learned that all affected harnesses used one type of one supplier's wire, AC ¶ 57, and that even today, there is an "ongoing debate" about the root cause of the issue. *E.g.*, *id.* ¶ 158(e).

---

[3] In another attempt to suggest events earlier than their AC allegations support, Plaintiffs misleadingly suggest that a fire from exposed wire "had already occurred" in early 2022, Opp. 3, but their allegations and documents incorporated by reference confirm the fire occurred in 2023. AC ¶¶ 72, 61 (lifting allegations from Dkt. 92-1, quoted throughout the AC).

3

Plaintiffs' hindsight argument that Shoals' reserves were understated from May 2023 forward (Opp. 12–13) therefore boils down to the theory that the reserves "eventually proved to be inadequate," which is not sufficient to allege a material misrepresentation of opinion. *In re Huntington Bancshares Sec. Litig.*, 674 F. Supp. 2d 951, 964–65 (S.D. Ohio 2009); *see also* Mot. 14.

**Second**, Shoals' risk disclosures were not a "guarantee" that none of its products would require repair or replacement; rather, the risk disclosure language "convey[s] that, in addition to the costs for which [Shoals] had accrued and that it had determined should be disclosed pursuant to GAAP," there was a risk that Shoals could incur *additional* expenses relating to product defects. *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 406 (S.D.N.Y. 2020).

**No Genuine Disbelief.** Plaintiffs do not address, and thus waive, that the AC fails to allege the Exchange Act Defendants disbelieved the warranty statements. Mot. 15-16; *supra* pp. 1–2.

### B. Statements Discussing Shoals' Warranty Reserves Are Protected FLS

Shoals' warranty statements are forward-looking and thus protected by the PSLRA safe harbor. *See* Mot. 16. Plaintiffs' own allegations confirm the statements are forward-looking. Opp. 14. Bardos's statement (AC ¶ 116) refers to the "charge that we booked"—in other words, the "provision for ***estimated future costs***." *See* Ex. 7 at 18. As for AC ¶ 111, the Opposition omits key context that confirms the statements are forward-looking: "it is ***probable*** that the Company ***will*** incur costs," "[but] not possible to reasonably ***estimate*** those costs" (emphases added).

Next, Plaintiffs argue that "even if" the Court finds the reserve-related statements are forward-looking, Shoals' cautionary language was "boilerplate." Opp. 15. Yet the quoted examples show Shoals warned of the very risks Plaintiffs claim caused their loss. *Id.*; *see City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 831 (W.D. Mich. 2012) (warnings sufficiently detailed when warned of factors that caused earnings miss). Moreover, the

4

"actual knowledge" inlet of the safe harbor is an independent basis for dismissal: Plaintiffs fail to allege scienter, let alone "actual knowledge." *See infra* Section II(F); Mot. 22–29.

C.  **Shoals' Warranty Risk Disclosures Are Not Misleading**

Nor can Plaintiffs credibly allege Shoals' risk disclosures are misleading because the Company was "already" facing warranty claims. Opp. 16–17. Shoals accrued its estimated warranty liability and disclosed related information in its financial statements. Dkt. 85-2. Shoals' risk disclosures served a separate function: warning investors about potential risks to their investment, including that Shoals may experience more liability than estimated. *Chapman*, 466 F. Supp. 3d at 406; *see, e.g.*, Ex. 4 at 11-30. Indeed, risk disclosures "are not meant to educate investors on what harms are currently affecting the company." *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015). And unlike their cited cases,[4] Plaintiffs have not alleged facts to support their claim of widespread warranty claims. Instead, Plaintiffs point to what was believed to be a customer installation (not warranty) issue at "four or five" sites by June 2022 and eight sites (out of hundreds of sites) by December 2022. *See id.* at 491 (eight impacted chicken batches was "hardly a companywide food safety epidemic" requiring disclosure); AC ¶¶ 51, 54.

D.  **"Safety," "Reliability," and "Cost-Saving" Statements Are Not Actionable**

Plaintiffs do not rebut Defendants' argument that the safety, reliability, and cost statements rehash their GAAP-related challenged statements. *See* Mot. 18–19. Instead, they double-down: Plaintiffs' theory is that each time the Exchange Act Defendants truthfully discussed Shoals' products, including topics unrelated to wire harnesses (*e.g.*, AC ¶¶ 89, 92, 77–78, 84), they should have disclosed "the growing problem of excess shrinkback," allegedly occurring "as early as

---

[4] *See, e.g.*, *Grae v. Corr. Corp. of Am.*, 2017 WL 6442145, at *8 (M.D. Tenn. Dec. 18, 2017) (alleging widespread rejection of marketing practices including in government report); *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 673 (M.D. Tenn. 2022) (alleging broad DOJ investigation into defendant's business model and product offering) (both cases at Opp. 6–7).

5

March 2022." Opp. 7–8. That fails for the reasons stated above and in the Motion. *Supra* Section II(A); Mot. 18–21. Moreover, Plaintiffs fail to contend with any of Defendants' cited cases explaining these type of statements are non-actionable "corporate optimism." Mot. 18–21.

E.     **Plaintiffs Have Not Alleged a Fraudulent Scheme**

Plaintiffs claim they allege deceptive "conduct" constituting a "scheme," not just false and misleading statements. *See* Opp. 27. But the only "scheme" allegation Plaintiffs identify is a background paragraph in the "Parties" section describing the titles, nomination rights, and stock sales of Solon (who is ***not*** an Exchange Act Defendant nor even an officer or director during the relevant period). *Id.* (citing AC ¶ 31). That paragraph does not support Plaintiffs' claim that the SPOs somehow constitute "misleading conduct" outside the alleged false and misleading statements that Plaintiffs repeatedly allege caused Shoals' stock price to be "artificially inflated." *See, e.g.*, AC ¶¶ 159, 166, 210. Plaintiffs' "scheme" claims thus rely on the "same factual circumstances" as the alleged misstatements and should be dismissed. *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 533 (6th Cir. 2023). Moreover, Plaintiffs are wrong that Defendants did not address these allegations. *See* Mot. 27–28, 31–35.

F.     **Plaintiffs Do Not Allege Scienter for Any Exchange Act Defendant**

The Opposition underscores the AC's failure to plead a strong inference of scienter, let alone for ***each*** Exchange Act Defendant. *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039–43 (6th Cir. 2016) (assessing allegations for each defendant). The Opposition does not even mention three of them (Hubbard, Tolnar, Moss). Plaintiffs baldly claim the AC alleges what Defendants "knew," "were aware of," and "recklessly disregarded." *See* Opp. 17 n.9. But the cited paragraphs highlight the AC's ***lack*** of particularized allegations. *See* App. C. Plaintiffs fail to allege *which* Defendant knew *what*, or *when* and *how* they knew, which requires dismissal. *ServiceMaster*, 83 F.4th at 532.

6

**Stock Sales Do Not Support Scienter.** Plaintiffs cannot plead scienter focusing on the sale amounts of (i) one (out of five) Exchange Act Individual Defendants; (ii) Shoals' founder; and (iii) the Company itself. Opp. 19–20. **Whitaker's** trades were either pursuant to a predetermined trading plan or in the lead-up to his medical retirement, and he retained most of his shares. Mot. 24; Ex. 14; *Dang v. Amarin Corp. PLC*, 750 F. Supp. 3d 431, 480 (D.N.J. 2024) ("Courts routinely consider publicly-filed Form 4s."). Plaintiffs do not dispute **Solon** is not an *Omnicare* individual, and, thus his sales cannot support an inference of scienter. Mot. 27. Even so, Plaintiffs do not allege Solon knew about the wire issue before it was publicly disclosed or had any involvement in Shoals' disclosures. Nor do Plaintiffs explain why a founder's stock sales following his board departure are suspicious, or why Shoals' executives (including the newly hired CFO) would defraud investors just so Solon could cash out at inflated prices. AC ¶ 31; *In re Envision Healthcare Corp. Sec. Litig.*, 2019 WL 6168254, at *26 (M.D. Tenn. Nov. 19, 2019) (stock sales not suspicious where fund's "sole purpose is to invest in companies and ultimately sell them"). Finally, Plaintiffs ignore that the **Company's** sales are "not indicative of scienter." *Lewakowski v. Aquestive Therapeutics, Inc.*, 2023 WL 2496504, at *12 (D.N.J. Mar. 14, 2023).

**No Internal Reports or Negative Information.** Plaintiffs fail to identify a single Exchange Act Defendant who received any alleged "internal reports" or "negative information," let alone who "knew" or "recklessly disregarded" these unidentified reports when making public statements. *ServiceMaster*, 83 F.4th at 531 (plaintiffs "must allege specific facts or circumstances suggestive of [defendants'] knowledge" and cannot rely on "senior positions"). Plaintiffs in fact have *no* allegations as to Shoals' accounting practices for its warranty reserves under ASC 450.

**Timing Contradicts Scienter.** Plaintiffs point to the timing of the December 2022 SPO statements and alleged "contrary" information in Shoals' May 8, 2023 10-Q and later disclosures.

7

*See* Opp. 22. But Shoals' investigation into a still-disputed issue at a handful of sites in 2022 and its subsequent evolving disclosures shows prudent management, not conduct suggesting a strong inference of scienter. *See* Mot. 28. Moreover, Shoals has not restated any financials, and its auditors "have not retracted nor qualified any audit opinions." *Bancshares*, 674 F. Supp. 2d at 973 (rejecting allegations of GAAP violation and temporal proximity as insufficient).

**No Motive.** Plaintiffs' argument that Whitaker was motivated to "maintain his job as CEO until the Company complete[s] its SPOs" (Opp. 23) is not in the AC, and Plaintiffs cannot amend the AC in an opposition brief. *See ServiceMaster*, 83 F.4th at 530. But even so, the argument fails because this "motive" is not "concrete" or "personal" to Whitaker (or any other Defendant). *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *13 (S.D.N.Y. Mar. 30, 2021).

**Additional Allegations Do Not Support Scienter.** *First*, Plaintiffs say the FEs support scienter as to "management," not any particular Defendant. *See* Opp. 24; Mot. 25 –26; *see also Lim v. Hightower*, 2024 WL 4349409, at *18 (N.D. Ohio Sept. 30, 2024) (rejecting FE allegations where none spoke to defendants and plaintiffs alleged "only that [defendants] must have known" partnership was failing because FEs "concluded that it was"). *Second*, Plaintiffs ask the Court to "presume that high-level executives are aware of matter[s] related to their business's operations," but omit that this presumption can apply only to facts "critical to a business's core management." *Envision*, 2019 WL 6168254, at *22. The AC does not plausibly allege that a believed-customer installation issue at a handful of sites was a "core" component of Shoals' business, rather than a typical customer service issue that businesses face daily. Nor are there facts to presume the executives were aware of the eventual accounting implications. *Finally*, Plaintiffs cite Whitaker's departure, but in their cited case, the executives "were abruptly fired or resigned with no notice." *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2021 WL 195370, at *7 (M.D. Tenn.

8

Jan. 20, 2021) (Opp. 25). In contrast, Whitaker told the Board in November 2022 he would step down for health reasons and stayed with the Company until mid-March 2023. Ex. 3 at S-3.

For these same reasons, Plaintiffs have failed to plead corporate scienter as to Shoals.

### G. Plaintiffs Do Not Plead Loss Causation

*First*, Plaintiffs appear to argue Defendants failed to address every corrective disclosure, which is untrue. *See* Mot. 29–30. *Second*, Plaintiffs rely on the "materialization of the risk" theory, but that does not work where Shoals disclosed the precise risk. *See* Mot. 3–7; *In re Wash. Prime Grp., Inc. Sec. Litig.*, 2024 WL 1307103, at *14 (S.D. Ohio Mar. 27, 2024). *Third*, Plaintiffs allege no support for their claim that the exposed wire issue caused any backlog reduction (AC ¶ 125(a)), and the cited analyst report does not make that connection either. *See* AC ¶ 169(a).

## III. KUAERP FAILS TO PLEAD A SECURITIES ACT CLAIM

### A. KUAERP Does Not Allege an Actionable Misstatement

KUAERP argues Rule 8 governs the Securities Act Claims while contending this case stems from Shoals allegedly delaying "disclosing [its] shrinkback problems" so Shoals and Solon could "cash[] out from the SPOs." Opp. 1. Plaintiffs cite the SPOs to claim a scheme to defraud and scienter (*id.* at 20-21, 27), and, contrary to their assertion (*id.* at 34), do not offer *any* "distinct" reasons the SPO materials were purportedly misleading. *Compare* AC ¶¶ 81, 92 *with id.* ¶ 184. KUAERP even baldly asserts that the Securities Act Defendants knew or "recklessly disregarded" alleged "adverse facts." *Id.* ¶ 184. That the AC alleges "different claims against different defendants" and "segregat[es]" the claims (Opp. 31–32) does not change that the claims "sound in fraud." *See In re Sotera Health Co. Sec. Litig.*, 2025 WL 860897, at *21–22 (N.D. Ohio Mar. 19, 2025) (applying Rule 9 to Securities Act claims); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (similar). Rule 9 applies, but no matter the standard, KUAERP fails to plead the December 2022 SPO statements were false. *See* Mot. 32; *supra* Section II(A)–(D).

### B. KUAERP Lacks Standing to Assert Securities Act Claims

KUAERP's conclusory allegations that it purchased stock in the December 2022 SPO are "the exact sort that binding Supreme Court precedent directs courts not to consider at the pleading stage." *Cupat v. Palantir Techs., Inc.*, 2025 WL 1141534, at *15 (D. Colo. Apr. 4, 2025). Nor does KUAERP explain how its 12/2/22 purchase ***before*** the SPO closing on 12/6/22 pleads a direct SPO purchase. *See* Opp. 35 (citing *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *18 (C.D. Cal. June 9, 2016), which, in contrast, involved a purchase on the SPO date at the SPO offering price).

### C. KUAERP Does Not Adequately Allege a Direct Sale or Solicitation

The Opposition confirms KUAERP fails to plead a statutory-seller based claim. Opp. 35. KUAERP cites cases in which specific facts supported solicitation. *Envision*, 2019 WL 6168254, at *28 (registration statement said board is "soliciting proxies"); *In re FirstEnergy Corp.*, 2022 WL 681320, at *38 (S.D. Ohio 2022) (defendant "actively and intentionally" deceived investors). KUAERP points only to its own insufficient, conclusory solicitation allegations. *See* Mot. 33–34.

## IV. PLAINTIFFS' SECTION 20A, 20(A), AND 15 CLAIMS FAIL

Plaintiffs' "control person" and 20A claims fail because they have not alleged a primary securities law violation. *See* Mot. 34–35. Nor have Plaintiffs alleged any Defendant was a "control person." *Id.* (citing dismissals for failure to allege control). Plaintiffs cite *Envision*, but the court decided on the pleadings that nominating two directors to an eight-director board failed to allege control. 2019 WL 6168254, at *30. Plaintiffs' allegation that Solon had the ***right to nominate*** a ***single*** director to Shoals' eight-director board is even worse (AC ¶ 31): nominating one director is insufficient (Mot. 35), but Plaintiffs do not even allege Solon ever exercised his right to nominate a director, let alone that any director "continued to act on [his] behalf." 2019 WL 6168254, at *30.

## V. CONCLUSION

Given the fatal flaws in Plaintiffs' claims, the AC should be dismissed with prejudice.

DATED: June 5, 2025
BASS, BERRY & SIMS
BRITT K. LATHAM
MARGARET V. DODSON


  */s/ Britt K. Latham*
BRITT K. LATHAM

21 Platform Way South, Suite 3500
Nashville, TN 37201
Telephone: 615/742-6200
615/742-6293 (fax)
blatham@bassberry.com
margaret.dodson@bassberry.com

LATHAM & WATKINS LLP
MICHELE D. JOHNSON
(admitted *pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714/540-1235
714/755-8290 (fax)
michele.johnson@lw.com

LATHAM & WATKINS LLP
HEATHER A. WALLER
(admitted *pro hac vice*)
RENATTA A. GORSKI
(admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312/876-7700
617/993-9767 (fax)
heather.waller@lw.com
renatta.gorski @lw.com

*Counsel for Defendants Shoals Technologies Group, Inc., Jason R. Whitaker, Jeffrey Tolnar, Brandon Moss, Kevin Hubbard, Dominic Bardos, Brad Forth, Peter Wilver, Ty Daul, Toni Volpe, Lori Sundberg, Jeanette Mills, Robert Julian, and Dean Solon*

11

POLSINELLI PC
MOZIANIO S. RELIFORD, III

*/s/ Mozianio S. Reliford, III*
501 Commerce Street, Suite 1300
Nashville, TN 37203
Tel.: (615) 252-3948
treliford@polsinelli.com

ALLEN OVERY SHEARMAN STERLING US LLP
AGNÈS DUNOGUÉ
(admitted *pro hac vice*)
BENJAMIN KLEBANOFF
(admitted *pro hac vice*)
599 Lexington Avenue
New York, NY 10022-6069
Tel.: (212) 848-4000
agnes.dunogue@aoshearman.com
benjamin.klebanoff@aoshearman.com

DAN GOLD
(admitted *pro hac vice*)
The Link at Uptown, 2601 Olive Street, 17th Floor
Dallas, TX 75201
Tel.: (214) 271-5777
dan.gold@aoshearman.com

*Counsel for the Underwriter Defendants*

*\* \* \* \**

*Filer's Attestation: Pursuant to the Court's CM/ECF Manual regarding signatures, Britt K. Latham hereby attests that concurrence in the filing of this document has been obtained.*

# CERTIFICATE OF SERVICE

       I certify that on June 5, 2025, the foregoing was filed electronically with the Clerk of the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the filing receipt, which includes the following:

James Gerard Stranch, IV
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com

Rachel A. Avan
Marco A. Dueñas
Saxena White P.A.
10 Bank Street
Suite 882
White Plains, NY 10606
ravan@saxenawhite.com
mduenas@saxenawhite.com

Jerry E. Martin
Barrett Johnston Martin & Garrison, LLC
200 31st Avenue North
Nashville, TN 37203
jmartin@barrettjohnston.com

Christopher M. Wood
Robbins Geller Rudman
& Dowd LLP
200 31st Avenue North
Nashville, TN 37203
cwood@rgrdlaw.com

Debra J. Wyman
Matthew Isaac Alpert
Robbins Geller Rudman & Dowd LLP
655 W Broadway, Suite 1900
San Diego, CA 92101
debraw@rgrdlaw.com
malpert@rgrdlaw.com

Lester R. Hooker
Saxena White P.A.
5200 Town Center Circle
Suite 601
Boca Raton, FL 33486
lhooker@saxenawhite.com

Gregg S. Levin
Christopher F. Moriarty
William S. Norton
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
glevin@motleyrice.com
cmoriarty@motleyrice.com
bnorton@motleyrice.com

Agnès Dunogué
Dan Gold
Benjamin Klebanoff
Allen Overy Shearman Sterling US LLP
599 Lexington Avenue
New York, NY 10022-6069
agnes.dunogue@aoshearman.com
dan.gold@aoshearman.com
benjamin.klebanoff@aoshearman.com

Mozianio S. Reliford, III
Polsinelli PC
501 Commerce Street, Suite 1300
Nashville, TN 37203
treliford@polsinelli.com

                                                */s/ Britt K. Latham*