UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

In re SHOALS TECHNOLOGIES GROUP,
INC. SECURITIES LITIGATION

)  Civil Action No. 3:24-cv-00334
)
)  Judge Waverly D. Crenshaw, Jr.
   Magistrate Judge Barbara D. Holmes

CLASS ACTION

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT, CLASS CERTIFICATION, AND APPROVAL OF NOTICE
TO THE CLASS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................2

II. SUMMARY OF THE LITIGATION .....................................................................3

III. THE TERMS OF THE SETTLEMENT.................................................................6

IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ...................9

    A. Plaintiffs and Lead Counsel Have Adequately Represented the Class.................10

    B. The Settlement Is the Result of a Thorough, Rigorous, and Arm's-Length Negotiation Process .........................................................................................10

    C. The Settlement Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria ...........................11

        1. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Potential Appeals ........................................................11

        2. The Method of Distributing Relief Is Effective ........................................12

        3. Attorneys' Fees and Expenses ..................................................................13

        4. Identification of Agreements ....................................................................14

        5. Class Members Are Treated Equitably.......................................................14

        6. The Judgment of Experienced Lead Counsel ...........................................14

        7. The Sixth Circuit's Public Interest Factor Is Satisfied...............................15

V. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ........................................15

VI. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS...........................17

    A. The Class Meets the Requirements of Rule 23(a) ..................................................18

        1. Numerosity.................................................................................................18

        2. Commonality..............................................................................................19

        3. Typicality ...................................................................................................20

        4. Adequacy of Class Representatives............................................................20

    B. The Class Meets the Requirements of Rule 23(b) .................................................22

4931-6299-6640.v2

VII.     PROPOSED SCHEDULE OF EVENTS................................................................................24

VIII.    CONCLUSION.....................................................................................................................25

4931-6299-6640.v2

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ..................................................................................................22, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) ..........................................................................................................19

*Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank,*
2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) .................................................16

*Beach v. Healthways, Inc.,*
2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010) ....................................................17

*Bovee v. Coopers & Lybrand,*
216 F.R.D. 596 (S.D. Ohio 2003) ...............................................................22, 24

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.,*
843 F.3d 1119 (6th Cir. 2016) ......................................................................24

*Burges v. Bancorpsouth, Inc.,*
2017 WL 2772122 (M.D. Tenn. June 26, 2017) ..................................................21

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ....................................................................................24

*Deutschman v. Beneficial Corp.,*
132 F.R.D. 359 (D. Del. 1990) ......................................................................22

*Fidel v. Farley,*
534 F.3d 508 (6th Cir. 2008) ........................................................................16

*Franks v. Kroger Co.,*
649 F.2d 1216 (6th Cir. 1981) ......................................................................15

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.,*
2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012) ..................................................12

*Gokare v. Fed. Express Corp.,*
2013 WL 12094887 (W.D. Tenn. Nov. 22, 2013) ................................................13

*Grae v. Corr. Corp. of Am.,*
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ....................................................13

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) .......................................................................................18

*Hosp. Auth. of Metro. Gov't of Nashv. & Davidson Cnty.,
Tenn. v. Momenta Pharms., Inc.*,
333 F.R.D. 390 (M.D. Tenn. 2019) .......................................................................................20

*Hyland v. HomeServices of Am., Inc.*,
2012 WL 122608 (W.D. Ky. Jan. 17, 2012) .........................................................................11

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ...........................................................................................17, 20

*In re Direct Gen. Corp. Sec. Litig.*,
2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006) ....................................................................21

*In re: Genworth Fin. Sec. Litig.*,
2016 WL 7187290 (E.D. Va. Sep. 26, 2016).........................................................................13

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................................................11

*In re Upstart Holdings, Inc. Sec. Litig.*,
348 F.R.D. 612 (S.D. Ohio 2025)................................................................................. *passim*

*Ind. Pub. Ret. Sys. v. AAC Holdings*,
2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023).....................................................................20

*Int'l Union, United Auto., Aerospace, & Agric. Implement
Workers of Am. v. Gen. Motors Co.*,
497 F.3d 615 (6th Cir. 2007) ................................................................................................15

*Motter v. O'Brien*,
2014 WL 12892732 (S.D. Ohio June 12, 2014) ..................................................................9, 15

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016),
*aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
2017 WL 6398014 (6th Cir. Nov. 27, 2017).........................................................................13

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
332 F.R.D. 556 (M.D. Tenn. 2019) ..................................................................................18, 21

4931-6299-6640.v2

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,
  1996 WL 739170 (W.D. Mich. Sept. 27, 1996) ......................................................................24

*Ross v. Abercrombie & Fitch Co.*,
  257 F.R.D. 435 (S.D. Ohio 2009) ......................................................................18

*Rudi v. Wexner*,
  2022 WL 1682297 (S.D. Ohio May 16, 2022) ......................................................................14

*Shy v. Navistar Int'l Corp.*,
  2022 WL 2125574 (S.D. Ohio June 13, 2022) ......................................................................14

*Sprague v. GMC*,
  133 F.3d 388 (6th Cir. 1998) ......................................................................20

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*,
  2022 WL 4598044 (M.D. Tenn. Sep. 30, 2022) ......................................................18, 19, 20, 22

*Stein v. U.S. Xpress Enters.*,
  2021 WL 1410035 (E.D. Tenn. Feb. 12, 2021) ......................................................................23, 26

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ......................................................................20

*Weinberg v. Insituform Techs.*,
  1995 WL 368002 (W.D. Tenn. Apr. 7, 1995) ......................................................................22, 23

*Williams v. Vukuvich*,
  720 F.2d 909 (6th Cir. 1983) ......................................................................14, 16

*Willis v. Big Lots, Inc.*,
  242 F. Supp. 3d 634 (S.D. Ohio 2017) ......................................................................19

*Zwick Partners, LP v. Quorum Health Corp.*,
  2019 WL 1450546 (M.D. Tenn. Mar. 29, 2019) ......................................................................19

4931-6299-6640.v2

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §77(k).................................................................................................................................4
  §77(l)..................................................................................................................................4
  §77(l)(a)(2)........................................................................................................................4
  §77(o)................................................................................................................................4
  §78j(b)...........................................................................................................................4, 22
  §78t(a)...........................................................................................................................4, 22
  §78u-4(a)(4)..........................................................................................................1, 7, 8, 13
  §78u-4(a)(7).......................................................................................................................16

Federal Rules of Civil Procedure
  Rule 23(a)...............................................................................................17, 18, 20
  Rule 23(a)(1)........................................................................................................18
  Rule 23(a)(2)....................................................................................................3, 19
  Rule 23(a)(3)........................................................................................................20
  Rule 23(a)(4)........................................................................................................21
  Rule 23(b) ......................................................................................................22, 23
  Rule 23(b)(3)..........................................................................................17, 23, 24
  Rule 23(c)(2)........................................................................................................16
  Rule 23(e)......................................................................................................14, 20
  Rule 23(e)(1)......................................................................................................3, 8
  Rule 23(e)(1)(B)...............................................................................................9, 16
  Rule 23(e)(2)..................................................................................................2, 8, 9
  Rule 23(e)(2)(A)..................................................................................................10
  Rule 23(e)(2)(C)..................................................................................................11
  Rule 23(e)(2)(C)(i).................................................................................................9
  Rule 23(e)(2)(C)(ii)..............................................................................................12
  Rule 23(e)(2)(C)(iii).............................................................................................13
  Rule 23(e)(2)(C)(iv).............................................................................................13
  Rule 23(e)(2)(D)..................................................................................................14

4931-6299-6640.v2

Lead Plaintiff Erste Asset Management GmbH ("Erste") and plaintiff Kissimmee Utility Authority Employees' Retirement Plan ("KUAERP") (together, "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of the settlement reached in this Litigation ("Settlement").[1] The proposed Settlement, memorialized in the Stipulation, provides a recovery of $70,000,000 in cash to resolve this securities class action against all Defendants.[2] Defendants do not oppose the relief requested herein.

By this motion, Plaintiffs seek entry of an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the form and manner of giving notice of the proposed Settlement to the Class; (3) preliminarily granting class certification for settlement purposes; and (4) setting a hearing date for the Court to consider final approval of the Settlement, approval of the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for awards pursuant to 15 U.S.C. §78u-4(a)(4) (the "Settlement Hearing"), and a schedule for various deadlines relevant thereto ("Preliminary Approval Order"). The Settlement is an excellent result for the Class; is fair, reasonable, and adequate and warrants preliminary and ultimately final approval by this Court.

---

[1] Unless otherwise defined herein, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated April 28, 2026 ("Stipulation"), filed concurrently herewith. Emphasis is added and citations are omitted throughout unless otherwise noted.

[2] "Defendants" refers to: (i) Shoals Technologies Group, Inc. ("Shoals" or the "Company"); (ii) Jason R. Whitaker, Brad Forth, Peter Wilver, Ty Daul, Toni Volpe, Lori Sundberg, Jeanette Mills, and Robert Julian (the "Director Defendants"); (iii) Dominic Bardos, Jeffery Tolnar, Brandon Moss, Dean Solon, Kevin Hubbard; and (iv) J.P. Morgan Securities LLC, Guggenheim Securities, LLC, Morgan Stanley & Co. LLC, UBS Securities LLC, Goldman Sachs & Co. LLC, Barclays Capital, Inc., Credit Suisse Securities (USA) LLC, Cowen and Company, LLC, Oppenheimer & Co. Inc., Piper Sandler & Co., Roth Capital Partners, LLC, Johnson Rice & Company L.L.C., and Northland Securities, Inc. (the "Underwriter Defendants").

4931-6299-6640.v2

## I. INTRODUCTION

As set forth in the Stipulation, the Settlement provides for the payment of $70 million in cash to resolve this securities class action against all Defendants. This is an excellent recovery for the Class and was reached by experienced counsel after the Parties litigated Defendants' motion to dismiss, began fact discovery, and participated in arm's-length mediations overseen by Miles N. Ruthberg of Phillips ADR Enterprises, a highly respected and experienced mediator. The Settlement is the result of a knowledgeable and comprehensive assessment of the strengths and weaknesses of the claims asserted in this Litigation, the costs and risks of proceeding with the Litigation, and the benefit to Class Members of receiving a recovery without further delay.

While Plaintiffs and Lead Counsel believe in the merits of their case against the Defendants, they recognize that Defendants do as well as to their defenses. Indeed, in the absence of settlement, Defendants would continue to vigorously assert numerous defenses to Plaintiffs' claims, and Plaintiffs faced the risk that they would not prevail at trial of the Litigation or the likely appeals that would follow, which could have precluded any recovery for the Class from some or all of the Defendants, let alone a recovery greater than the Settlement Amount.

The proposed Settlement satisfies Rule 23(e)(2) of the Federal Rules of Civil Procedure (the "Rule(s)") and the Sixth Circuit's standards for settlement approval. The Settlement is fair, reasonable, and adequate as it provides for the all-cash recovery which represents a very favorable recovery for the Class, based on an estimate of Plaintiffs' reasonable recoverable damages, and eliminates the risks and uncertainty of continued proceedings.

Plaintiffs and Lead Counsel approve of the Settlement. Each Plaintiff is a sophisticated institutional investor with either tens of billions of Euros (Erste) or tens of millions of dollars (KUAERP) of assets under management and experience overseeing securities fraud litigation. Lead Counsel, Motley Rice LLC ("Motley Rice") and Robbins Geller Rudman & Dowd LLP

("Robbins Geller"), have substantial securities litigation experience, both in this District and around the country, and have litigated hundreds of cases to resolution; their attorneys are recognized as leading experts in the field. Plaintiffs retained Motley Rice and Robbins Geller specifically because of their experience as well as their experience in this Court.

At this stage, the Court need only determine that it will "likely" be able to approve the proposal under Rule 23(a)(2) (*see* Fed. R. Civ. P. 23(e)(1)) such that the Class should be notified of the proposed Settlement. In light of the substantial recovery obtained and the risks and expenses posed by a trial of this case, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order, which will, among other things: certify the Class for settlement purposes only; preliminarily approve the Settlement on the terms set forth in the Stipulation; approve the form and content of the Notice, Proof of Claim and Release, Summary Notice, and Postcard Notice, attached as Exhibits 1 through 4 to the Preliminary Approval Order; find that the procedures for distribution of the Notice and Postcard Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and set a schedule and procedures for: (i) disseminating the Postcard Notice and Notice; (ii) publishing the Summary Notice; (iii) objecting to any aspect of the Settlement; and (iv) submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.     SUMMARY OF THE LITIGATION

On March 21, 2024, the above-captioned action was filed in this Court asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"). ECF 1. By Order dated October 2, 2024, the Court appointed Erste as Lead Plaintiff and Robbins Geller and Motley Rice as Lead Counsel. ECF 65.

- 3 -

On February 4, 2025, Plaintiffs filed their Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint"), asserting: (i) claims against defendants Shoals, Whitaker, Hubbard, Bardos, Tolnar, and former defendant Brandon Moss under §§10(b) and 20(a) of the Exchange Act; (ii) claims against defendants Shoals and Whitaker under §20(A) of the Exchange Act; (iii) claims against defendants Shoals, the Director Defendants, and the Underwriter Defendants under §11 of the Securities Act; (iv) claims against defendants Shoals, Bardos, the Director Defendants, and the Underwriter Defendants under §12(a)(2) of the Securities Act; and (v) claims against defendants Shoals, Solon, Bardos, and the Director Defendants under §15 of the Securities Act. ECF 82.

On February 18, 2025, Defendants and former defendant Moss filed their motion to dismiss the Complaint. ECF 84. On April 21, 2025, Plaintiffs filed their memorandum of law in opposition to the motion to dismiss. ECF 91. Defendants and former defendant Moss filed their reply brief on June 5, 2025 (ECF 93), and their Notice of Supplemental Authority on July 7, 2025 (ECF 94). On July 25, 2025, Plaintiffs filed a response to the Notice of Supplemental Authority. ECF 97.

On September 30, 2025, the Court granted in part and denied in part Defendants' motion to dismiss. The Court denied the motion with respect to (i) Plaintiffs' claims under §10(b) of the Exchange Act against defendants Shoals, Whitaker, Hubbard, Bardos, and Tolnar; (ii) Plaintiffs' claims under §20(a) of the Exchange Act against defendants Whitaker and Tolnar; (iii) Plaintiffs' claims under §20(A) of the Exchange Act against defendants Shoals and Whitaker; (iv) Plaintiffs' claims under §11 of the Securities Act against defendants Shoals, Bardos, the Director Defendants, and the Underwriter Defendants; and (v) Plaintiffs' claims under §15 of the Securities Act against Shoals and Solon. ECF 100. The Court granted the motion with respect to former defendant Moss, Plaintiffs' claims under §12 of the Securities Act, Plaintiffs' claims under §15 of the Securities

- 4 -

Act against Hubbard, Bardos, and the Director Defendants, and Plaintiffs' claims under §20(a) of the Exchange Act against Hubbard and Bardos. Defendants answered the Complaint on November 13, 2025. ECF 114-115.

On November 21, 2025, the Parties exchanged initial disclosures. Soon thereafter, the Parties served discovery on each other that included requests for production of documents and interrogatories. Plaintiffs also subpoenaed several third parties for documents and testimony – including analysts covering Shoals and Shoals' customers.

Plaintiffs filed their motion for class certification on January 21, 2026. ECF 126.

On October 17, 2024, the Court ordered the Parties to submit a joint plan to mediate this action. ECF 69. The Parties informed the Court that they had agreed to mediate before Miles N. Ruthberg. Plaintiffs and Defendants participated in a mediation session with Mr. Ruthberg on December 3, 2025. In advance of the mediation, Plaintiffs and Defendants submitted detailed opening and reply mediation statements. The Parties engaged in good-faith negotiations, but did not reach a settlement at the mediation session. A second, in-person, mediation was held on January 22, 2026, and a third mediation was virtually held on February 27, 2026. The Parties exchanged and provided to Mr. Ruthberg additional mediation materials in advance of the January 22, 2026 session. Following additional settlement discussions with Mr. Ruthberg, on March 9, 2026, the Parties accepted a mediator's proposal to settle the Litigation in return for a cash payment of $70 million to be paid by or on behalf of Defendants for the benefit of the Class, subject to the negotiation of the terms of a stipulation of settlement and approval by the Court. The Parties negotiated and executed a Memorandum of Understanding on March 12, 2026, and thereafter notified the Court of the agreement and moved to vacate remaining deadlines on March 16, 2026.

- 5 -

ECF 133. The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement among the Settling Parties.

Plaintiffs, through Lead Counsel, have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate to Plaintiffs and to the other Class Members, and in their best interests, and have agreed to settle the claims raised in the Litigation pursuant to the terms and conditions of this Settlement.

Defendants have denied, and continue to deny, any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the securities laws. Defendants have denied, and continue to deny, *inter alia*, the allegations that they failed to disclose any material information to investors, or that Plaintiffs or Class Members have suffered any damages or were otherwise harmed by the conduct alleged in the Litigation. Defendants have asserted, and continue to assert, that their conduct was, at all times, proper, that they acted, at all times, in good faith and in compliance with all applicable provisions of law, and that the claims asserted against Defendants are without merit. Defendants maintain that they have meritorious defenses to all of the claims alleged in the Litigation. Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden, and expense of further protracted litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

## III. THE TERMS OF THE SETTLEMENT

The Settlement resolves, fully, finally and with prejudice, the claims against Defendants of a class of all Persons (with certain exclusions, *see* §VI) who, between May 16, 2022, and May 7, 2024, inclusive, purchased or otherwise acquired Shoals common stock, including purchasers in Shoals' December 2022 secondary public offering, and were allegedly harmed thereby.

- 6 -

Pursuant to the proposed Settlement, Defendants shall pay, or cause to be paid, $70 million, which will be deposited into an interest-bearing escrow account ("Escrow Account") as follows: (i) $65.5 million in cash (the "Initial Settlement Amount") within thirty (30) calendar days of the date of an order preliminarily approving the Settlement; and (ii) $4.5 million in cash (the "Subsequent Settlement Amount" and together with the "Initial Settlement Amount," the "Settlement Amount") within sixty (60) calendar days after a final, non-appealable judgment or settlement in the matter *Shoals Techs. Grp., LLC v. Prysmian Cables & Sys. USA, LLC*, No. 3:23-cv-01153 (M.D. Tenn.). Stipulation, ¶2.2. Interest on the Settlement Amount will accrue for the benefit of the Class. *Id.*, ¶1.32.

Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. Stipulation, ¶2.6. Plaintiffs propose that a nationally recognized class action settlement administrator, Verita Global LLC ("Verita" or "Claims Administrator"), be appointed here to oversee notice and administration. The proposed notice plan and plan for claims processing is discussed below in §IV.C.2.

Plaintiffs intend to request an amount not to exceed $40,000 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. Any such amounts the Court awards shall be paid from the Settlement Fund.

Lead Counsel will submit an application with their opening papers in support of final approval of the Settlement for: (i) an award of attorneys' fees of no more than 30% of the Settlement Amount; (ii) payment of expenses or charges resulting from the prosecution of the Litigation not to exceed $650,000; and (iii) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. Such fees and expenses shall be paid from the

- 7 -

Settlement Fund once the Court executes an order awarding such fees and expenses. Stipulation, ¶6.2.

Once Notice and Administration Expenses, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses, and any awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount ("Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00. Stipulation, ¶5.10. The Plan of Allocation treats Class Members equitably and accounts for the strengths of their particular claims.

The Settling Parties have negotiated a Supplemental Agreement providing Defendants the right to terminate the Settlement based on certain conditions related to requests for exclusion from the Class. Stipulation, ¶7.3.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against Defendants arising out of, or in connection with both: (i) the purchase or acquisition of Shoals common stock during the Class Period; and (ii) the allegations, transactions, acts, facts, events, matters, occurrences, representations, or omissions that were or could have been alleged in the Litigation. Stipulation, ¶¶1.25, 4.1-4.6.

If the Court grants preliminary approval, the Claims Administrator will email or mail the Postcard Notice (Exhibit 4 to the Preliminary Approval Order) to Class Members who can be identified with reasonable effort. Preliminary Approval Order, ¶9(b). After entry of the Preliminary Approval Order, the Claims Administrator will cause the Notice and Proof of Claim to be posted on the Settlement-designated website. *Id.* Additionally, the Claims Administrator will cause the Summary Notice (Exhibit 3 to the Preliminary Approval Order) to be published once in *The Wall Street Journal* and once over a national newswire service. *Id.*, ¶9(c).

- 8 -

## IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2) provides:

> (2)   *Approval of the Proposal*.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

In addition, "[w]hen determining whether the proposed settlement is fair[,] adequate, and reasonable," courts in the Sixth Circuit take into account the following factors (several of which overlap with Rule 23(e)(2)): (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (2) the complexity, expense[,] and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest.  *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001).

The proposed $70 million cash Settlement easily satisfies Rule 23(e), as well as the Sixth Circuit's factors, which are addressed below (some together, to the extent they overlap).  While Plaintiffs and their counsel believe the Settlement merits final approval, the Court need not make that determination at this time.  The Court is being asked simply to permit notice of the terms of the Settlement to be provided to the Class and to schedule a settlement hearing, pursuant to Rule 23(e), to consider any expressed views by Class Members of the fairness of the Settlement, the

Plan of Allocation, and Lead Counsel's request for an award of fees and expenses, including Plaintiffs' request for an award of their time and expenses incurred in representing the Class. Fed. R. Civ. P. 23(e); *Motter v. O'Brien*, 2014 WL 12892732, at *1 (S.D. Ohio June 12, 2014).

### A. Plaintiffs and Lead Counsel Have Adequately Represented the Class

Plaintiffs and their counsel have adequately represented the Class, satisfying Rule 23(e)(2)(A) (the class representatives and class counsel adequately represented the class), as well as the Sixth Circuit's closely related third factor (the stage of proceedings and the amount of discovery completed), by diligently prosecuting this Litigation on their behalf.

The Court appointed Erste as Lead Plaintiff on October 2, 2024. *See* ECF 65. After its appointment, Erste, along with KUAERP, and their counsel, among other things: (i) drafted the operative complaint; (ii) opposed Defendants' motion to dismiss; (iii) moved for class certification; (iv) produced documents responsive to Defendants' document requests; (v) issued subpoenas to numerous nonparties pursuant to Rule 45 of the Federal Rules of Civil Procedure; (vi) reviewed and analyzed documents and information produced by Defendants and numerous third parties; (vii) conferred regarding numerous discovery disputes; and (viii) engaged in protracted settlement negotiations with the assistance of Miles N. Ruthberg, an experienced and nationally recognized mediator. Plaintiffs' and Lead Counsel's efforts resulted in this Settlement of $70 million, which will provide a significant recovery to the Class.

### B. The Settlement Is the Result of a Thorough, Rigorous, and Arm's-Length Negotiation Process

The negotiations were at arm's length and well informed by, among other things, extensive investigation and litigation by Lead Counsel, including: (i) analysis of publicly available information about Defendants; (ii) contentious and lengthy motion practice seeking dismissal of the claims; (iii) Plaintiffs' pending motion to certify the Class; and (iv) review and analysis of

- 10 -

documents and information produced by Defendants and third parties in response to Plaintiffs' discovery requests and subpoenas as well as in mediation. As a result, Plaintiffs and Lead Counsel were knowledgeable of the strengths and weaknesses of their case. *See Hyland v. HomeServices of Am., Inc.*, 2012 WL 122608, at \*2 (W.D. Ky. Jan. 17, 2012) (When determining whether preliminary approval is appropriate, courts should evaluate whether the settlement "'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'").

Moreover, the Settlement was achieved only after Plaintiffs and Defendants participated in settlement negotiations involving three formal mediation sessions. *See* §III above. Thus, here, the fact that experienced and sophisticated counsel, well aware of the other side's legal position, engaged in lengthy arm's-length settlement negotiations facilitated by an experienced mediator, weighs in favor of finding the Settlement fair. *Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at \*5 (E.D. Mich. Dec. 27, 2013).

### C. The Settlement Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria

#### 1. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Potential Appeals

The proposed Settlement satisfies the Rule 23(e)(2)(C)(i) adequacy standard, taking into account the costs, risks, and delay of trial and appeal, which also covers the Sixth Circuit's overlapping second factor (the complexity, expense, and likely duration of the litigation). The Settlement also satisfies the Sixth Circuit's first factor (plaintiff's likelihood of ultimate success on the merits balanced against the settlement amount). It provides a significant benefit for the Class – $70 million in cash.

Given the complexities of this Litigation, the many issues in contention, the amount in controversy, and the substantial risks of continued litigation through the class certification, summary judgment, and trial, Lead Counsel believe the Settlement represents a favorable result. Importantly, the Settlement eliminates the risk that Plaintiffs and the Class might recover nothing, or might not recover as much as obtained in the Settlement, if the Litigation were to continue.

In addition, while confident in the strength of their case, Plaintiffs are aware of the many defenses available to Defendants and the inherent risks and delay of continued litigation. For example, as set forth at length in the Memorandum of Law in Support of Defendants' Motion to Dismiss Consolidated Complaint (ECF 85), Defendants challenged whether: (i) the alleged misstatements and omissions were materially false and misleading; (ii) Plaintiffs had alleged scienter; (iii) Plaintiffs had alleged loss causation; (iv) KUAERP had standing to assert Securities Act claims; (v) Plaintiffs' insider trading claims were viable; and (vi) Plaintiffs had alleged control person liability. In other words, a positive result was far from assured.

### 2. The Method of Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process also satisfies Rule 23(e)(2)(C)(ii).

The notice plan is discussed below in §IV and includes email or direct-mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and over a national newswire service. Verita will use time-tested methods to ensure that Class Members who held Shoals common stock in their own names, as well as those who held Shoals common stock in street name, will receive a Postcard Notice. Verita will contact brokerages, custodial banks, and other institutions ("Nominee Holders") that hold securities as nominees in street name for the benefit of their customers who are the beneficial owners of the securities. Based on experience locating class

- 12 -

members who hold securities in street name, Verita has developed a propriety database of Nominee Holders to whom it will send a Postcard Notice and cover letter. Verita will also create a case-specific website (www.ShoalsSecuritiesSettlement.com) and post important documents regarding the Settlement, including the Stipulation, Preliminary Approval Order, Notice, Proof of Claim, and all briefs and declarations in support of approval of the Settlement, and provide a toll-free number that Class Members can call to make inquiries about the Settlement. Similar notice programs have regularly been found to satisfy due process. *See N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 242 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

### 3. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses the attorneys' fees award Lead Counsel intends to seek. As discussed above in §III, Lead Counsel intend to request attorneys' fees of no more than 30% of the Settlement Amount and expenses in an amount not to exceed $650,000, plus interest on both amounts. This attorneys' fees request is consistent with – and in many cases lower than – fee requests approved by courts in this District and courts within the Sixth Circuit. *See, e.g.*, *Gokare v. Fed. Express Corp.*, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013); *Grae v. Corr. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021). In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award. *See In re: Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sep. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to [Class] Counsel immediately upon entry of this [o]rder").

Further, Plaintiffs intend to request an amount not to exceed $40,000 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

4931-6299-6640.v2

### 4. Identification of Agreements

Rule 23(e)(2)(C)(iv) requires that the parties identify any agreements between them. Plaintiffs and Defendants have negotiated a standard supplemental agreement providing that, if opt outs from the Class equal or exceed a certain threshold, then Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.3.

### 5. Class Members Are Treated Equitably

As reflected in the Plan of Allocation, the Settlement treats Class Members equitably relative to each other while taking into account the timing of their purchase or acquisition of Shoals common stock (including whether they purchased in the offering), and their subsequent disposition, if any, and provides that each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on their recognized losses as calculated by the Plan of Allocation. Accordingly, Rule 23(e)(2)(D) is satisfied.

### 6. The Judgment of Experienced Lead Counsel

The Sixth Circuit's fourth factor (judgment of experienced counsel) is also satisfied. Lead Counsel have carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence pertaining to the claims asserted against Defendants and the defenses they raised; the likelihood of prevailing on the claims; and the risk, expense, and duration of continued litigation, and have concluded that the Settlement is fair, reasonable, and in the best interests of the Class.

Significant weight should be attributed to experienced counsel's evaluation and conclusion that a settlement is in the best interests of the class. *See Williams v. Vukuvich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (stating that courts should defer judgment of experienced counsel who have evaluated the strength of plaintiff's case); *Shy v. Navistar Int'l Corp.*, 2022 WL 2125574, at *6 (S.D. Ohio June 13, 2022) ("Settlements resulting from arm's length negotiations conducted by competent counsel are *prima facie* fair."); *Rudi v. Wexner*, 2022 WL 1682297, at *4 (S.D. Ohio

- 14 -

May 16, 2022) ("The Court gives significant weight to the opinions of Settling Shareholders' counsel, who have indicated that the Settlement is fair, reasonable, and adequate."). Here, Lead Counsel have significant experience in securities and other complex class action litigation and have negotiated numerous other substantial class action recoveries throughout the country, including in this District and within the Sixth Circuit. *See* www.rgrdlaw.com; www.motleyrice.com. Given the experience possessed by Lead Counsel, weight should be given to their determination that the Settlement set forth in the Stipulation is an excellent result.

### 7. The Sixth Circuit's Public Interest Factor Is Satisfied

As a matter of public policy, settlement is a strongly favored method for resolving disputes, particularly in complex class actions such as this. *See, e.g.*, *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Co.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting the "federal policy favoring settlement of class actions"); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) ("[T]he law generally favors and encourages the settlement of class actions."); *Motter*, 2014 WL 12892732, at *1 ("The Court further recognizes that 'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'").

The fairness and adequacy of the $70 million recovery are clear. Given the litigation risks involved, it is a fair result for the Class. It could not have been achieved without the commitment of Plaintiffs and their counsel. Plaintiffs and Lead Counsel respectfully submit that the Settlement is both fair and adequate such that notice of the Settlement should be provided to the Class.

### V. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be settled without the approval of the court, and notice of the proposed settlement shall be given to all members of the class in such manner as the

court directs. Fed. R. Civ. P. 23(e). In addition: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The Preliminary Approval Order will require the Claims Administrator to: (i) notify Class Members of the Settlement by emailing or mailing (where an email address is unavailable) the Postcard Notice to all Class Members who can be identified with reasonable effort; (ii) cause a copy of the Summary Notice to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service; and (iii) cause the Notice and Proof of Claim, among other documents, to be posted on the case-specific website. The proposed method of giving notice to Class Members is appropriate because it is calculated to reach Class Members who can be identified with reasonable effort. *Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (notice scheme sufficient because it was "'reasonably calculated to reach interested parties'"); *Williams*, 720 F.2d at 921 (plaintiff class must receive the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort); Fed. R. Civ. P. 23(e)(1)(B) (courts "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]").

As required by Rule 23(c)(2) of the Federal Rules of Civil Procedure and the PSLRA (15 U.S.C. §78u-4(a)(7)), the Notice describes in plain English the nature of the Litigation; sets forth the definition of the Class; and states the Class' claims. In addition, the Notice describes the Settlement; the Settlement Amount, both in the aggregate and on an average per-share distribution basis; explains the Plan of Allocation; sets out the amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per-share basis and the amount sought by Plaintiffs for their time and expenses; provides contact information for Lead Counsel, including

- 16 -

a toll-free telephone number; and summarizes the reasons the parties are proposing the Settlement. The Notice also discloses the date, time, and place of the formal fairness hearing and the procedures for appearing at the hearing and objecting to the Settlement. Lead Counsel believe that the Notice, along with the Summary Notice and Postcard Notice, will fairly apprise Class Members of their rights with respect to the Settlement, that it is the best notice practicable under the circumstances, and that it should be approved.

## VI. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS

As part of the Settlement, the Parties request that the Court certify the following Class:

> [A]ll Persons who purchased or otherwise acquired Shoals common stock between May 16, 2022, and May 7, 2024, inclusive, including purchasers in Shoals' December 2022 secondary public offering, and were allegedly harmed thereby. Excluded from the Class are: Defendants, the immediate families of the Individual Defendants, the officers and directors of the Company and members of their immediate families, and the Underwriter Defendants, at all relevant times, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. For the avoidance of doubt any "Investment Vehicle" shall not be excluded from the Class. Also excluded from the Class is any Person who properly excludes himself, herself, itself, or themselves from the Class by submitting a valid and timely request for exclusion.

In certifying a class for purposes of settlement, courts are afforded broad discretion. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Moreover, courts within this Circuit overwhelmingly find securities fraud actions appropriate for class treatment. *See, e.g.*, *In re Upstart Holdings, Inc. Sec. Litig.*, 348 F.R.D. 612, 630-31 (S.D. Ohio 2025); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012); *Beach v. Healthways, Inc.*, 2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010). As demonstrated below, for settlement purposes only, the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and Rule 23(b)(3) (predominance of common questions of fact or law and superiority of the class action as the method of adjudication) are readily satisfied here.

- 17 -

**A.      The Class Meets the Requirements of Rule 23(a)**

**1.      Numerosity**

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable.  Rather than a "strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement."  *Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122, at *2 (M.D. Tenn. June 26, 2017); *see also Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019) (alteration in original) ("'[T]he exact number of class members need not be pleaded or proved' for a class to be certified.").  Indeed, "'[n]umerosity is generally assumed to have been met in class action suits involving nationally traded securities.'"  *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2022 WL 4598044, at *2 (M.D. Tenn. Sep. 30, 2022) (quoting *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 572 (M.D. Tenn. 2019)); *Upstart*, 348 F.R.D. at 623 ("The Court finds Plaintiffs' evidence of nationally traded securities satisfies numerosity.").

The numerosity requirement is satisfied here because during the Class Period there were over 100 million shares of Shoals common stock outstanding, and the average weekly trading volume for Shoals stock was approximately 13.7% of Shoals' shares outstanding per week.  *See* Expert Report of Jonah B. Gelbach, ¶42, ECF 127-3.  Based on this volume of trading, it is reasonable to conclude that thousands of geographically dispersed individuals purchased or otherwise acquired Shoals common stock during the Class Period, and that joinder of all Class Members is impracticable.  *See Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009) (numerosity satisfied when average daily trading volume was 1.8 million shares); *see also Stein v. U.S. Xpress Enters.*, 2021 WL 1410035, at *4 (E.D. Tenn. Feb. 12, 2021) (numerosity satisfied when more than 16.6 million shares traded).

- 18 -

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mandate that all class members make identical claims and arguments. "'What matters to [the commonality requirement of] class certification is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Zwick Partners, LP v. Quorum Health Corp.*, 2019 WL 1450546, at \*16 (M.D. Tenn. Mar. 29, 2019). "'[C]ourts have repeatedly found [the commonality] requirement satisfied in securities actions.'" *Upstart*, 348 F.R.D. at 624 (second alteration in original) (quoting *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 645 (S.D. Ohio 2017)).

Here, the Complaint's allegations raise numerous questions common to the Class, including, *inter alia*, whether: Defendants made materially false or misleading statements or omissions to investors regarding: (i) Shoals' products' "performance, quality, reliability" and safety; (ii) the ability of Shoals' products to be installed by anyone, thus reducing installation costs for Shoals' customers; and (iii) Shoals' failure to report about a costly product defect and the financial risks it exposed to the Company. Regarding Plaintiffs' Exchange Act claims, common issues also include whether: (i) Defendants acted with scienter; (ii) Defendants' alleged misrepresentations and omissions caused Class Members to suffer damages; and (iii) the Individual Defendants "were 'control persons' within the meaning of §20(a) of the Exchange Act." *See Acadia*, 2022 WL 4598044, at \*2. Regarding Plaintiffs' Securities Act claims, the offering documents made uniform alleged misleading statements to all investors, and the existence and materiality of those alleged misrepresentations and omissions are common, class-wide issues. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (holding "the materiality of Amgen's alleged misrepresentations and omissions is a question common to all members of the class"). Because all Class Members' claims depend on the answers to these common questions,

- 19 -

commonality is established. *See Ind. Pub. Ret. Sys. v. AAC Holdings*, 2023 WL 2592134, at *9 (M.D. Tenn. Feb. 24, 2023).

### 3. Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's burden to establish typicality is "'not onerous.'" *Hosp. Auth. of Metro. Gov't of Nashv. & Davidson Cnty., Tenn. v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 404 (M.D. Tenn. 2019). So long as the claims and defenses of a proposed class representative arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory,'" they are typical. *Am. Med. Sys.*, 75 F.3d at 1082; *Acadia*, 2022 WL 4598044, at *3 (same); *Upstart*, 348 F.R.D. at 624. In other words, typicality exists where, as here, a "'sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, neither the facts nor the legal theories on which this action is based are unique to Plaintiffs because all Class Members' claims arise from their investment in Shoals common stock during the Class Period. Plaintiffs and all other Class Members also allege that their purchase of artificially-inflated Shoals common stock was a result of Defendants' alleged material misrepresentations and omissions as described in the Complaint.

### 4. Adequacy of Class Representatives

The Sixth Circuit's criteria for determining the adequacy requirements in Rule 23(a) provide that: (i) "'the representative must have common interests with unnamed members of the class'"; and (ii) "'it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Am. Med. Sys.*, 75 F.3d at 1083; *see also Stout v. J.D.*

- 20 -

*Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) ("The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another."). The first of these two requirements overlaps with the commonality and typicality prerequisites and merely acts to ensure that the representatives have interests coextensive with the interests of the unnamed class members. *See In re Direct Gen. Corp. Sec. Litig.*, 2006 WL 2265472, at *4 (M.D. Tenn. Aug. 8, 2006). The second factor requires that the representatives have sufficient financial and personal involvement to encourage them to prosecute the action vigorously and that they have adequate resources and legal representation to maintain the action. *Id.* Plaintiffs satisfy both prongs of Rule 23(a)(4)'s adequacy test.

Plaintiffs' interests "are neither antagonistic to nor in conflict with" the interests of the other Class Members. *Norfolk*, 332 F.R.D. at 571. To the contrary, Plaintiffs acquired Shoals common stock during the Class Period and sustained damages as a result of the same alleged material misrepresentations and omissions as other Class Members. In prosecuting their claims, Plaintiffs have also vigorously prosecuted the claims of other Class Members. Plaintiffs actively participated in the prosecution of this Litigation.

Moreover, Lead Counsel are highly qualified and their attorneys are experienced in the successful prosecution of class actions, satisfying the second prong of Rule 23(a)(4). *See* www.rgrdlaw.com; www.motleyrice.com. *See U.S. Xpress*, 2021 WL 1410035, at *8 ("[I]n determining whether the plaintiffs have established adequate representation, the Court considers whether the proposed class counsel are 'qualified, experienced and generally able to conduct the litigation.'"). "Motley Rice and Robbins Geller have demonstrated their qualifications working together and separately as class counsel in securities class actions." *Upstart*, 348 F.R.D. at 626;

- 21 -

*see also In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.) ($1.025 billion recovery); *In re Twitter, Inc. Sec. Litig.*, No. 4:16-cv-05314 (N.D. Cal.) ($809.5 million recovery); *In re Under Armour Sec. Litig.*, No. 1:17-cv-00388 (D. Md.) ($434 million recovery); *Jones v. Pfizer Inc.*, No. 1:10-cv-03864 (S.D.N.Y.) ($400 million recovery); *In re Barrick Gold Sec. Litig.*, No. 1:13-cv-03851 (S.D.N.Y.) ($140 million recovery); *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122 (D. Kan.) ($131 million recovery); and *City of Sterling Heights Gen Emps.' Ret. Sys. v. Hospira, Inc.*, No. 1:11-cv-08332 (N.D. Ill.) ($60 million recovery).

### B. The Class Meets the Requirements of Rule 23(b)

"'The predominance test is not a numerical test and does not require the court to add up the common issues and the individual issues and determine which is greater.'" *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 605 (S.D. Ohio 2003) (quoting *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 375 (D. Del. 1990)).

> The Sixth Circuit has observed that "[t]o satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."

*Upstart*, 348 F.R.D. at 628 (alterations in original) (quoting *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124-25 (6th Cir. 2016). As the Supreme Court noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). *See also Acadia*, 2022 WL 4598044, at *4 (rejecting Defendants' attacks on predominance where "the core elements of Plaintiffs' §§10(b) and 20(a) claims [were] susceptible to common proof").

"Predominance is usually decided on the question of liability, so that if the liability issue is common to the class, common questions are held to predominate over individual ones." *Weinberg v. Insituform Techs.*, 1995 WL 368002, at *7 (W.D. Tenn. Apr. 7, 1995). Here, it is

- 22 -

clear that common questions of law and fact predominate over individual questions because Defendants' liability turns on issues that are common to all the Class Members, *i.e.*, whether, for the Exchange Act claims, Defendants made material misrepresentations and/or omissions with the requisite scienter, and for the Securities Act claims, Defendants made a material misrepresentation in a public offering.

The superiority analysis of Rule 23(b) requires that the Court examine whether a class action is superior to other methods of adjudication, such as joinder. Fed. R. Civ. P. 23(b)(3). This provision is intended to permit class actions that would "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (alteration in original). The Court must consider four factors to ensure that superiority is met: (i) the interests of members of the class in individually controlling the prosecution of separate actions; (ii) whether other litigation has already commenced; (iii) the desirability or undesirability of concentrating claims in one forum; and (iv) the difficulties likely to be encountered in management of a class action. *Upstart*, 348 F.R.D. at 630 (citing Fed. R. Civ. P. 23(b)(3)). Courts have found the superiority requirement is met where, as alleged here: (i) many of the class investors likely have suffered only small losses, making it improbable that they can afford to proceed with their claims as individuals; (ii) use of the class action vehicle will achieve judicial economy, as well as prevent inconsistent judgments; (iii) there are no other actions against the company involving the same claims; and (iv) the court foresees no particular difficulties with adjudicating the class action. *Upstart*, 348 F.R.D. at 630; *Weinberg*, 1995 WL 368002, at *8.

There is no indication that a substantial number of absent Class Members would prefer to control the prosecution of their claims individually. In any event, any Class Member who desires

- 23 -

to do so will have the opportunity to opt-out of the Class.  Additionally, Lead Counsel are unaware of any other litigation in the United States by investors against Defendants asserting the claims involved in this Litigation.  Further, concentration of the Litigation in one forum is desirable to avoid potentially inconsistent adjudications and promote fairness and efficiency.  Finally, this case presents no unusual difficulties in maintaining the class action or providing notice to the Class.

Not only is the class action device the superior method for adjudicating the claims alleged in the instant case, it is the only practical method of obtaining a fair and efficient disposition of these claims.  *See Bovee*, 216 F.R.D. at 607 ("Given that the proposed class consists of thousands of members and that the legal claims are narrowed to whether defendants committed securities violations, a class action will be the most fair and efficient way to resolve this dispute.").  The alternative to a class action either leaves potentially thousands of investors without recourse, or requires a multiplicity of suits throughout the United States resulting in the inefficient administration of justice.  *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 1996 WL 739170, at *9 (W.D. Mich. Sept. 27, 1996) (second alteration in original) (Stating, "[i]f this Court does not certify this class, hundreds of small shareholders . . . will be effectively barred from seeking legal redress of their claims.  Furthermore, because the potential class members 'seek a determination on essentially the same issues, . . . a class action would enhance judicial economy and efficiency.'").  This is precisely "the evil that Rule 23 was designed to prevent."  *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).

In short, because the class action device is far superior to any other means available to this Court, the requirements of Rule 23(b)(3) are met.

## VII.    PROPOSED SCHEDULE OF EVENTS

The Settling Parties respectfully propose a schedule for the Court's consideration, set forth in Exhibit A hereto, which is consistent with the proposed Preliminary Approval Order.

- 24 -

## VIII. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED:  April 28, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977


_s/ Christopher M. Wood_
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DEBRA J. WYMAN
MATTHEW I. ALPERT
JOSEPH J. TULL
ASHLEY G. PYLE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
elleng@rgrdlaw.com
debraw@rgrdlaw.com
malpert@rgrdlaw.com
jtull@rgrdlaw.com
apyle@rgrdlaw.com

- 25 -

MOTLEY RICE LLC
GREGG S. LEVIN
WILLIAM S. NORTON
JOSHUA C. LITTLEJOHN
CHRISTOPHER F. MORIARTY
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: 843/216-9000
glevin@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

Lead Counsel

BARRETT JOHNSTON MARTIN
  & GARRISON, PLLC
JERRY E. MARTIN, #20193
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2202
jmartin@barrettjohnston.com

Local Counsel

KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON, P.A.
ROBERT D. KLAUSNER (*pro hac vice*)
SEAN M SENDRA
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: 954/916-1202
bob@robertdklausner.com
sean@robertdklausner.com

Additional Counsel for Plaintiff Kissimmee
Utility Authority Employees' Retirement Plan

- 26 -