UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In re SHOALS TECHNOLOGIES GROUP, INC. SECURITIES LITIGATION | ) | Civil Action No. 3:24-cv-00334 |
| | ) | Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill |
| This Document Relates To:<br>ALL ACTIONS. | ) | CLASS ACTION |

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................... 1

II. FACTUAL AND PROCEDURAL HISTORY ........................................................... 2

III. THE SETTLEMENT WARRANTS FINAL APPROVAL ............................................ 3

A. Legal Standards for Final Approval of Class Action Settlement ............................ 3

B. The Rule 23 and Sixth Circuit Factors Support Approval ...................................... 5

1. The Class Was Adequately Represented ....................................................... 5

2. The Absence of Fraud or Collusion Favors Approval ..................................... 6

3. The Relief Provided to the Class Is Adequate ............................................... 7

a. The Complexity, Expense, and Likely Duration of the Litigation ........................ 7

b. The Likelihood of Success on the Merits ....................................................... 8

4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval ........................................................ 12

5. Lead Counsel and Plaintiffs Endorse the Settlement ...................................... 13

6. The Reaction of the Class Supports Final Approval ...................................... 13

7. Public Interest Favors Approval of the Settlement ......................................... 14

8. Other Rule 23(e)(2) Factors Support Final Approval ...................................... 14

IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................................. 16

V. THE COURT SHOULD CERTIFY THE CLASS ..................................................... 17

VI. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS ................................................................................ 18

VII. CONCLUSION ....................................................................................... 20

## TABLE OF AUTHORITIES

**Page**

**CASES**


*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 18

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) .......... 9

*Arledge v. Domino's Pizza, Inc.*,
2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) .......... 7

*Armstrong v. Gallia Metro. Hous. Auth.*,
2001 WL 1842452 (S.D. Ohio Apr. 23, 2001) .......... 13

*Bartell v. LTF Club Operations Co.*,
2020 WL 7062834 (S.D. Ohio Aug. 7, 2020) .......... 11

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) .......... 18

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) .......... 13

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) .......... 4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2015 WL 10714013 (5th Cir. Nov. 4, 2015) .......... 10

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) .......... 19

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .......... 9

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) .......... 4

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*
*Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) .......... 4

*In re Accredo Health, Inc.*,
2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) .......... 17

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ....................17

*In re AME Church Emp. Ret. Fund Litig.*,
2025 WL 2396514 (W.D. Tenn. Aug. 18, 2025) ....................14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ....................10

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ....................14

*In re Chevrolet Bolt EV Battery Litig.*,
2025 WL 3708892 (E.D. Mich. Dec. 22, 2025) ....................8, 11, 13

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ....................8

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ....................7

*In re Direct Gen. Corp. Sec. Litig.*,
2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006) ....................17

*In re Envision Healthcare Corp. Sec. Litig.*,
2024 WL 1270007 (M.D. Tenn. Mar. 21, 2024) ....................15

*In re Home Point Capital Inc. Sec. Litig.*,
2024 WL 3273275 (E.D. Mich. June 28, 2024).................... *passim*

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................16

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015)....................7

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379 (E.D. Tenn. May 17, 2013)....................6, 8, 13

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014)....................20

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011) *aff'd*,
838 F.3d 223 (2d Cir. 2016)....................9

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)....................9

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) .................... *passim*

*Jones v. Varsity Brands, LLC*,
2024 WL 5010412 (W.D. Tenn. Dec. 6, 2024) ....................6, 13

*Karpik v. Huntington Bancshares Inc.*,
2021 WL 757123 (S.D. Ohio Feb. 18, 2021)....................8, 13

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ....................7

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
2017 WL 6398014 (6th Cir. Nov. 27, 2017) .................... *passim*

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) ....................8

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011) ....................8, 13

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................9

*Robinson v. Shelby Cnty. Bd. of Educ.*,
566 F.3d 642 (6th Cir. 2009) ....................3

*Ross v. Abercrombie & Fitch, Co.*,
257 F.R.D. 435 (S.D. Ohio 2009)....................17

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
No. 3:18-cv-00988 (ECF 548) (M.D. Tenn. Apr. 29, 2026)....................15

*Schuh v. HCA Holdings, Inc.*,
2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) ....................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................14

*Whitford v. First Nationwide Bank*,
147 F.R.D. 135 (W.D. Ky. 1992) ....................4, 15

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ....................5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78u-4(a)(4) ....................1, 15
§78u-4(a)(7) ....................19

Federal Rules of Civil Procedure
Rule 23(a) ....................17, 20
Rule 23(b)(3) ....................18, 20
Rule 23(c)(2)(B) ....................18, 19, 20
Rule 23(e)(1)(B) ....................18
Rule 23(e)(2) ....................3, 14
Rule 23(e)(2)(A) ....................5
Rule 23(e)(2)(B) ....................6
Rule 23(e)(2)(C) ....................7
Rule 23(e)(2)(C)(ii) ....................15
Rule 23(e)(2)(C)(iii) ....................15
Rule 23(e)(2)(C)(iv) ....................15
Rule 23(e)(2)(D) ....................15

**SECONDARY AUTHORITIES**

Ivelina Velikova and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: H1 2026 Update*,
(NERA July 21, 2026) ....................11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Erste Asset Management GmbH ("Erste AM") and plaintiff Kissimmee Utility Authority Employees' Retirement Plan ("KUAERP") (collectively, "Plaintiffs") respectfully submit this memorandum in support of their motion for: (i) final approval of the proposed settlement of this securities class action; and (ii) approval of the proposed Plan of Allocation.[1]

## I. INTRODUCTION

After more than two years of hard-fought litigation, Plaintiffs have reached a proposed $70 million cash settlement for the benefit of the Class.[2] As described below and detailed in the Joint Declaration, the Settlement is an excellent result for the Class, as it provides a significant and certain recovery in a case that presented numerous hurdles and risks.

Plaintiffs' decision to settle the Litigation was the product of extensive investigation and vigorous litigation by experienced counsel, which included substantial discovery efforts and arm's-length settlement negotiations supervised by an experienced mediator. While Plaintiffs believe that their claims had merit and that they could prevail at trial, they also recognize that had the Litigation continued, they faced substantial risks to obtaining any recovery for the Class, let alone a recovery greater than that produced by the Settlement. Defendants raised strong defenses to falsity and materiality, scienter, as well as loss causation and damages, and were expected to press those

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement, filed on April 28, 2026 (ECF 140) (the "Stipulation") or in the accompanying Joint Declaration of Christopher M. Wood and Christopher F. Moriarty in Support of Motions for: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Joint Declaration" or "Joint Decl."). Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[2] As detailed in the Stipulation, $65.5 million has already been deposited into the Escrow Account, and the remaining $4.5 million will be deposited within 60 calendar days after a Final, non-appealable judgment or settlement in the matter *Shoals Techs. Grp., LLC v. Prysmian Cables and Systems USA LLC*, No. 3:23-cv-01153 (M.D. Tenn.) (the "*Prysmian* Litigation").

defenses at summary judgment and trial. Indeed, at the time of the Settlement, Shoals was (and remains) in a financially precarious position, with only $7.3 million in cash and cash equivalents as of December 31, 2025.

In light of these considerations, Plaintiffs and Lead Counsel believe that the $70 million Settlement is eminently fair, reasonable, adequate, and easily satisfies the standards of approval under Federal Rule of Civil Procedure ("Rule") 23, as it provides a very favorable result for the Class. The reaction of the Class thus far also supports the Settlement. As discussed below, potential Class Members have been notified of the Settlement in accordance with the Preliminary Approval Order and, to date, not a single Class Member has filed an objection. Nor have any Class Members sought exclusion from the Class.[3] Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Plaintiffs also request that the Court finally certify the Class and approve the proposed Plan of Allocation, which was set forth in the Notice. This Plan governs how claims will be calculated and, ultimately, how the Net Settlement Fund will be equitably distributed to Authorized Claimants. No objections have been filed to the Plan.

## II. FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration is an integral part of this submission, and for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation, Lead Counsel's efforts on behalf of the Class, the negotiations leading to the Settlement, and the risks and uncertainties of continued litigation.

---

[3] *See* Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date ("Murray Decl."), submitted herewith.

## III. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. Legal Standards for Final Approval of Class Action Settlement

Rule 23 requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Home Point Capital Inc. Sec. Litig.*, 2024 WL 3273275, at *2 (E.D. Mich. June 28, 2024). It is well settled within the Sixth Circuit that "federal policy favor[s] settlement of class actions." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*"). "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'" *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009). Rule 23(e)(2) provides the courts with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee

Notes to the 2018 Amendments to the Federal Rules of Civil Procedure. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the [Sixth] Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). The Court considered these factors in connection with its order preliminarily approving the Settlement and found that each had been met. *See* ECF 141 at 1-3.

To evaluate the substantive fairness of the settlement, courts in the Sixth Circuit have considered the following factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. That is, these factors should not be applied in a formalistic fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). Courts are to "'judge the fairness of a proposed compromise,'" "'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement,'" as opposed to deciding the merits of the case or resolving unsettled legal questions. *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "[D]istrict court[s] enjoy[] wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich.

2016) ("*GMC*"), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

**B. The Rule 23 and Sixth Circuit Factors Support Approval**

**1. The Class Was Adequately Represented**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." The Sixth Circuit looks at two criteria to determine whether adequacy is met: the representative must (i) "'have common interests with unnamed members of the class,'" and (ii) be willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012); *In re Home Point*, 2024 WL 3273275, at *3.

These requirements have easily been met here. Plaintiffs' claims are typical of and co-extensive with the claims of the Class, and they have no antagonistic interests with respect to the Class as a whole. Plaintiffs have amply demonstrated that they have an interest in obtaining the largest possible recovery in this Litigation, as do the other absent Class Members. *See UAW*, 497 F.3d at 626 (class representatives are adequate if they "'will vigorously prosecute the interests of the class through qualified counsel'" and are "'part of the class and possess the same interest and suffer the same injury as the class members'"). Additionally, as detailed in their declarations, Plaintiffs were highly involved in each stage of the Litigation and worked closely with Lead Counsel throughout the pendency of this action to achieve the best possible result for themselves and the Class. *See* Declaration of Winfried Buchbauer and Magdalena Reischl and Declaration of James Terry (collectively, "Plaintiffs' Decls."), submitted herewith.

Lead Counsel have also adequately represented the Class. Lead Counsel are highly experienced in securities litigation, with long and successful track records representing investors in this District, as well as in courts throughout the country. *See* Declaration of Christopher M. Wood

Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), Ex. C; Declaration of Christopher F. Moriarty Filed on Behalf of Motley Rice LLC in Support of Application for Award of Attorneys' Fees and Expenses ("Motley Rice Decl."), Ex. D, submitted herewith. Lead Counsel had a strong appreciation of the strengths and weaknesses of the case before agreeing to the Settlement, and believe it is in the best interest of the Class. In vigorously pursuing the Litigation, Lead Counsel incurred $547,984.16 in expenses and expended over 7,800 hours. RGRD Decl., ¶¶4, 6-7; Motley Rice Decl., ¶¶4, 6-7. Accordingly, this factor is easily satisfied and warrants final approval. *See UAW*, 497 F.3d at 626 (representation was adequate because class counsel "was willing to, and indeed did, commit substantial 'resources . . . to represent[ ] the class'").

### 2. The Absence of Fraud or Collusion Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which analyze whether the Settlement was reached at arm's length and without fraud or collusion, also support approval. "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2013); *Jones v. Varsity Brands, LLC*, 2024 WL 5010412, at *6 (W.D. Tenn. Dec. 6, 2024). "Courts consistently approve class action settlements achieved through arms-length negotiations, particularly if an independent mediator participated in those negotiations." *In re Home Point*, 2024 WL 3273275, at *3.

Here, the proposed Settlement was reached after more than two years of litigation, with each side aggressively advocating its respective positions. Indeed, Lead Counsel secured the Settlement only after arm's-length negotiations facilitated by an experienced and well-respected mediator, Miles Ruthberg of Phillips ADR. Joint Decl., ¶¶53-59. The Settlement negotiations were extensive, and included the exchange of briefs and exhibits, and mediation sessions with follow-up discussions. *Id.*

Plaintiffs and Defendants ultimately agreed to settle only after Mr. Ruthberg issued a mediator's proposal. As such, the Settlement warrants approval given that the "'participation of an independent mediator . . . [which] virtually insures that the negotiations were conducted at arm's length and without collusion.'" *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

### 3. The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the class is adequate, considering "the costs, risks, and delay of trial and appeal" and other factors. This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity, expense, and likely duration of the litigation; and (ii) the likelihood of success on the merits. Each of these factors supports approval.

#### a. The Complexity, Expense, and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Most class actions are "'inherently complex'" and "'[s]ettlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *2 (E.D. Mich. Jan. 20, 2015). Indeed, courts have consistently recognized that "'[s]ecurities class actions are often "difficult and . . . uncertain."'" *See, e.g.*, *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves complex issues relating to falsity, materiality, scienter (with respect to Plaintiffs' Exchange Act claims), due diligence, loss causation (including negative causation), and damages.

This Litigation was filed over two years ago. Discovery was underway, with more than 235,000 pages of documents produced to date, and more expected, and Plaintiffs' class certification motion was pending. This Settlement avoids the risks of a lengthy trial, and the certain appeal by the non-prevailing party.[4] "As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement." *See GMC*, 315 F.R.D. at 236.

**b. The Likelihood of Success on the Merits**

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *5 (S.D. Ohio Feb. 18, 2021) (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). In other words, when considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the Settlement. *UAW*, 497 F.3d at 631; *see also In re Chevrolet Bolt EV Battery Litig.*, 2025 WL 3708892, at *6 (E.D. Mich. Dec. 22, 2025).

---

4 *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming settlement and noting that, among other factors in favor of settlement, "[f]ollowing the trial, there would most likely have been an appeal that would have required an additional investment of substantial resources and time"); *Se. Milk*, 2013 WL 2155379, at *5 ("[T]he likelihood of an appeal was great . . . [and] [t]he Court agrees with plaintiffs that the immediate recovery of substantial monetary and structural relief provided by the settlement far outweighs the risk and commitment of time inherent in further litigation of this complex matter, especially in view of the risks, expenses and delays noted above."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010) ("Even if litigation is successful for the plaintiff class, appeals are likely to delay any sort of meaningful relief. In contrast, the settlement provides recovery without delay.").

Plaintiffs intended to prove that Defendants concealed a dangerous defect in Shoals' flagship product, as well as the magnitude of the Company's costs associated with the defective product, and that Defendants knew about the defects and the costs to remediate it for at least a year, but delayed publicly disclosing the existence until after Shoals conducted two public stock offerings, allowing Company insiders to collect over $1 billion. *See* Complaint, ECF 82, ¶¶36-129, 174-187.

Plaintiffs believe they would establish that Defendants' misstatements and omissions caused Shoals' common stock to trade at inflated prices, thereby causing harm to Class Members when the risks and conditions concealed by Defendants' misrepresentations and omissions were revealed.[5] *Id.*, ¶22. Specifically, Plaintiffs alleged that the truth regarding the Company's BLA shrinkback defect and its associated warranty liability exposure was gradually revealed through a series of partial disclosures between August 2023 and November 2024. *Id.*

Nevertheless, Plaintiffs are also cognizant of the fact that there was no guarantee that they would prevail at trial with respect to any of their claims. Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[6]

---

[5] Plaintiffs also believed they would prevail on their negligence-based claims against Defendants arising out of misstatements and omissions concerning the alleged BLA defect, related warranty exposure, and associated risks in the offering document for Shoals' December 2022 Secondary Offering (the "SPO"). Joint Decl., ¶23.

[6] *See, e.g.*, *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and Supreme Court review); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on limited issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiffs against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiffs and modifying class definition after intervening change in Supreme Court precedent), *aff'd*, 838 F.3d 223 (2d Cir.

Here, as detailed in the Joint Declaration, there were numerous potential defenses available to Defendants that could reduce, or preclude entirely, any recovery by the Class. Defendants argued that the challenged statements regarding Shoals' product "quality," "reliability," and "safety" constituted non-actionable puffery, forward-looking statements, or otherwise accurate statements of opinion. Joint Decl., ¶24. Defendants further contended that Plaintiffs improperly relied on hindsight and evolving information about the BLA defect, rather than contemporaneous facts demonstrating that the statements were false when made. *Id.* As they have argued in the *Prysmian* Litigation, Defendants would maintain that Prysmian concealed elements of the defects in its wire and was the true party at fault for the defect. *Id.*, ¶67. Additionally, Defendants argued that the alleged GAAP violations were not actionable because the accounting judgments regarding warranty reserves constituted non-actionable opinions, were reasonable at the time, and were accompanied by adequate risk disclosures. *Id.*, ¶24.

Defendants were confident Plaintiffs could not establish scienter. *Id.*, ¶¶25, 68. They argued that discovery undermined the allegedly suspicious nature of the stock sales by corporate insiders, including Defendant Solon. *Id.*, ¶68. Defendant Solon testified in the *Prysmian* Litigation, and was expected to testify here, that he had no knowledge of the shrinkback defect and first learned of it when it became known to the public. *Id.* They also argued that none of the confidential witnesses identified in the Complaint connected any specific defendant's knowledge to the alleged wrongdoing. *Id.*, ¶25.

---

2016); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (setting aside jury verdict in favor of plaintiffs and granting securities defendants' post-trial motion for judgment as a matter of law), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2015 WL 10714013, at *3 (5th Cir. Nov. 4, 2015) (granting a "third interlocutory appeal in a [securities] case that has remained in the class certification stage for thirteen years," with two successive appeals to the U.S. Supreme Court).

Plaintiffs also faced risks in establishing causation and damages. Defendants argued that the alleged disclosures did not reveal any fraud but instead disclosed new information as Shoals' investigation evolved. *Id.*, ¶26. Defendants argued that the stock price declines tied to updated warranty estimates or business performance did not establish loss causation because they reflected changing circumstances, not the correction of prior misrepresentation. *Id.* Defendants also argued that Plaintiffs and the Class would recover only the portion of any stock price declines from August 1, 2023 through November 12, 2024, if any, that Plaintiffs could prove was directly attributable to disclosures regarding Shoals' BLA defect and related warranty reserves. *Id.*, ¶71.[7]

Lead Counsel knew the strengths and weaknesses of Plaintiffs' case, including the many complicated and nuanced legal issues that would have to be resolved in Plaintiffs' favor to achieve a successful result. In short, continued litigation would be hard fought, expensive, and a positive result was far from assured. *See In re Chevrolet Bolt*, 2025 WL 3708892, at *7 ("The certainty provided by the monetary settlement in this case outweighs the risks of Plaintiffs potentially receiving nothing if the matter were to proceed to trial."); *Bartell v. LTF Club Operations Co.*, 2020 WL 7062834, at *4 (S.D. Ohio Aug. 7, 2020) ("In summary, continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as to the merits of Plaintiff's claims creates substantial risk to the Class. When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.").

Despite these risks, Plaintiffs obtained a very favorable recovery. The Settlement exceeds the $54 million average recovery in securities class action settlements nationwide in the first half of 2026, according to data from NERA. *See, e.g.*, Ivelina Velikova and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2026 Update*, at 15, Figure 13 (NERA July 21,

---

[7] Defendants also maintained that because no primary violations had occurred, Plaintiffs' secondary claims – §20(a), §15, and §20(A) – could not succeed. *Id.*, ¶27.

2026). The proposed Settlement is an excellent result for the Class and is certainly within the range of what would be determined to be fair, reasonable, and adequate.

### 4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *GMC*, 315 F.R.D. at 236; *In re Home Point*, 2024 WL 3273275, at *3 (same). Here, Lead Counsel undoubtedly had a thorough understanding of the strengths and weaknesses of Plaintiffs' claims. During the Litigation, Lead Counsel had, among other things:

- researched and drafted the Complaint;
- successfully defeated, in large part, Defendants' motion to dismiss the Complaint;
- requested, subpoenaed, negotiated for, and reviewed and analyzed hundreds of thousands of pages of evidence produced by Defendants and third parties;
- sought written discovery from Defendants;
- responded to discovery propounded by Defendants;
- moved for class certification;
- retained experts in the fields of causation and damages;
- engaged in settlement negotiations with a nationally recognized mediator; and
- assessed the risks of prevailing on Plaintiffs' claims at trial.

*See generally* Joint Decl.

There can be no question that by the time the Settlement was reached, Plaintiffs and Lead Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement," *GMC*, 315 F.R.D. at 237, and reached the well-informed decision to enter into this Settlement. Accordingly, this factor supports approval of the Settlement.

### 5. Lead Counsel and Plaintiffs Endorse the Settlement

In assessing the fairness of a proposed settlement, courts consider counsel's endorsement of the settlement, which "is entitled to significant deference." *Id.* at 238; *accord In re Chevrolet Bolt*, 2025 WL 3708892, at *7 ("'[W]hen experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference.'. . . Similarly, courts in the Sixth Circuit defer to the recommendations made by class representatives who support the Settlement."). This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of plaintiffs' case and the probable course of future litigation. *See Armstrong v. Gallia Metro. Hous. Auth.*, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 23, 2001).

Here, as a result of the settlement evaluation process, Lead Counsel and Plaintiffs carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; and the risk, expense, and duration of continued litigation, including the recoverability of a verdict. Based on these considerations, Lead Counsel and Plaintiffs concluded that the Settlement is not only fair and reasonable but is a highly favorable result for the Class. *Karpik*, 2021 WL 757123, at *6; *see also* Plaintiffs' Decls., submitted herewith. "Their support also favors approval." *Karpik*, 2021 WL 757123, at *6. Accordingly, this factor supports final approval.

### 6. The Reaction of the Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class. *Poplar Creek*, 636 F.3d at 244; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *Se. Milk*, 2013 WL 2155379, at *6; *see also Varsity Brands*, 2024 WL 5010412, at *7 ("The lack of

objections and positive reception further support approval of the settlement."). Here, as detailed *infra*, Section VI, as of August 21, 2026, the Claims Administrator has disseminated 56,270 Postcard Notices to potential Class Members and nominees. To date, not one Class Member has objected to any aspect of the Settlement.[8] Nor have any Class Members requested exclusion from the Class. Thus, this factor favors approval of the Settlement.

### 7. Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'" *GMC*, 315 F.R.D. at 241-42; *accord In re AME Church Emp. Ret. Fund Litig.*, 2025 WL 2396514, at *5 (W.D. Tenn. Aug. 18, 2025). As discussed herein, the Settlement provides $70 million in cash, plus interest. The Settlement concludes this Litigation, which, absent settlement, would have continued in this Court and likely in the Sixth Circuit. Thus, the Settlement also furthers public policy by conserving judicial resources. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8. Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class members' claims; (ii) the

[8] As set forth in the Notice, the deadline to provide the Court and counsel with objections is September 4, 2026. Plaintiffs will address any objections and requests for exclusion filed after the filing of this Motion in the reply brief.

terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), & (iv); Fed. R. Civ. P. 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

***First***, the method for processing Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, the Court-appointed Claims Administrator will review and process the claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the proposed Plan of Allocation). *See infra* Section IV; *see also, e.g.*, *In re Home Point*, 2024 WL 3273275, at *4 (approving settlement with a nearly identical distribution process).

***Second***, as discussed in the accompanying fee and expense memorandum, Lead Counsel are applying for a fee award of 30% of the common fund as compensation for the services they rendered on behalf of the Class, as well as payment of their litigation costs and expenses. The proposed attorneys' fees are reasonable in light of the work performed and the results obtained, and a 30% award is consistent with, if not below, attorneys' fee percentages that courts have approved in similar cases. *See, e.g.*, *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-cv-00988, ECF 548 (M.D. Tenn. Apr. 29, 2026) (awarding one-third of $179 million recovery); *In re Envision Healthcare Corp. Sec. Litig.*, 2024 WL 1270007, at *1 (M.D. Tenn. Mar. 21, 2024) (awarding 30% of $177.5 million recovery); and *Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016) (awarding 30% of a $215 million recovery).[9] Notably, approval of the

[9] Additional jurisprudence supporting this award is included in Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) and Memorandum of Law in Support Thereof, submitted herewith.

requested fees is separate from consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees. *See* Stipulation, ECF 140, ¶6.4.

***Third***, Plaintiffs and Defendants entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Class Members exclude themselves. *Id.*, ¶7.3. This type of agreement is a standard provision in securities class action settlements, has no negative impact on the fairness of the Settlement, and is routinely approved by courts. *See In re Home Point*, 2024 WL 3273275, at *4 (approving settlement with similar confidential agreement).

***Fourth***, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, its, or their *pro rata* share of the Net Settlement Fund based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of the Plan of Allocation requires that it is fair, reasonable, and adequate. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011). """Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.""" *Id.*

Here, the proposed Plan of Allocation is fair, reasonable, and adequate. The Plan of Allocation is based on Plaintiffs' damages expert's event study and analysis of the movement in Shoals' stock during the Class Period. Joint Decl., ¶85. The Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have suffered losses. Moreover, the Plan of Allocation was disclosed in the Notice and, to date, there have been no objections to the Plan of Allocation. *See* Murray Decl., Ex. B. Thus, the Plan of Allocation is fair and reasonable.

## V. THE COURT SHOULD CERTIFY THE CLASS

The Court is hearing the proposed Settlement prior to any hearing or ruling on class certification, making it necessary for the Court to certify a class pursuant to Rule 23 prior to approving the proposed Settlement. In certifying a class for purposes of settlement, courts are afforded broad discretion. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Here, all the requirements for class certification are met.[10]

Each of the four Rule 23(a) prerequisites to class certification – (a) numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation – is satisfied. First, numerosity is satisfied in cases involving nationally traded securities such as Shoals common stock. *In re Accredo Health, Inc.*, 2006 U.S. Dist. LEXIS 97621, at *17 (W.D. Tenn. Mar. 7, 2006). Second, commonality exists where, as here, all Members of the Class purchased Shoals common stock subject to the same alleged misrepresentations and omissions. *Ross v. Abercrombie & Fitch, Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009). Third, typicality is satisfied by Plaintiffs having suffered losses following the disclosures, as the other Class Members did. *Am. Med. Sys.*, 75 F.3d at 1082. Fourth, Plaintiffs are adequate representatives because they have no conflicts with the other Class Members, and have been actively involved in the case, maintaining communication with Lead Counsel, who are qualified, experienced, and able to conduct the Litigation. *Id.* at 1083; *In re Direct Gen. Corp. Sec. Litig.*, 2006 WL 2265472, at *4 (M.D. Tenn. Aug. 8, 2006); *see also* Plaintiffs' Decls.

---

[10] The Court preliminarily certified the Class in connection with its order preliminarily approving the Settlement. ECF 141 at ¶2. Nothing has changed since that time that would require a different result here, and Plaintiffs respectfully incorporate herein their arguments in support of class certification in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Class Certification, and Approval of Notice to the Class and Memorandum of Law in Support Thereof. ECF 139 at §VI.

A proposed class action must also satisfy one of the tests of Rule 23(b). Plaintiffs bring this Litigation under Rule 23(b)(3): predominance of common questions of fact or law and superiority of the class action device as the method of adjudication. Each is readily satisfied here.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement is "readily met" in securities class actions. *Id.* at 625. Here, common questions of law and fact predominate over individual questions because the alleged misstatements and omissions affected all Members of the Class in the same manner (*i.e.*, through public statements to the market). *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 607 (S.D. Ohio 2003) (noting when fraud-on-the market theory is invoked, courts agree that legal and factual issues common to all members of class predominate). Additionally, the class action mechanism is the best method of resolving all the individual claims aggregated in this matter because the controversy for each Class Member is identical and will result in the adjudication of all claims in one suit and one forum. *Amchem*, 521 U.S. at 615.

In short, because the class action device is far superior to any other means available to this Court, the requirements of Rule 23(b)(3) are met.

## VI. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. In securities class actions, the notice must contain the

information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. §78u-4(a)(7). A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). The notice program utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated 56,270 copies of the Postcard Notice[11] via First-Class Mail or email to potential Class Members and nominees. *See* Murray Decl., ¶¶4-11. The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*, ¶12. In addition, a dedicated toll-free telephone number and website were established to assist potential Class Members with inquiries regarding the Litigation, the Settlement, and the claims process. *Id.*, ¶¶13-14.

The Notice provides Class Members, among other things, (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average recovery; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or the maximum attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Class Members; and (x) a way of obtaining additional information about the Litigation, by contacting Lead Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7). The Notice

---

[11] Class Members also requested seven Claim Packages, which were provided by Verita. *Id.*, ¶¶10-11.

also provides recipients with information on how to submit a Proof of Claim and Release. *See* Murray Decl., Ex. B.

Plaintiffs and their counsel have satisfied all the obligations of the notice plan approved by the Court. *See generally* Murray Decl. Accordingly, the notice program implemented in this Litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23, and the PSLRA. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also GMC*, 315 F.R.D. at 242 (finding similar notice program "satisfied Rule 23's notice requirement"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014) (finding that dissemination of notice by first class mail and posting on a hosted website satisfied the requirements of Rule 23).

## VII. CONCLUSION

Lead Counsel obtained an outstanding result for the Class. For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) approve the $70 million Settlement as fair, reasonable, and adequate; (ii) approve the Plan of Allocation as fair and reasonable pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); and (iii) certify the Class for settlement purposes.

DATED: August 24, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
CHRISTOPHER M. WOOD, #032977

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ELLEN GUSIKOFF STEWART (*pro hac vice*)
DEBRA J. WYMAN (*pro hac vice*)
MATTHEW I. ALPERT (*pro hac vice*)
JOSEPH J. TULL (*pro hac vice*)
ASHLEY G. PYLE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
elleng@rgrdlaw.com
debraw@rgrdlaw.com
malpert@rgrdlaw.com
jtull@rgrdlaw.com
apyle@rgrdlaw.com

MOTLEY RICE LLC
WILLIAM S. NORTON (*pro hac vice*)
JOSHUA C. LITTLEJOHN (*pro hac vice*)
CHRISTOPHER F. MORIARTY (*pro hac vice*)
GREGG S. LEVIN (*pro hac vice*)
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: 843/216-9000
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com
glevin@motleyrice.com

Lead Counsel

BARRETT JOHNSTON MARTIN
& GARRISON, PLLC
JERRY E. MARTIN, #20193
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2202
jmartin@barrettjohnston.com

Local Counsel

KLAUSNER, KAUFMAN, JENSEN
& LEVINSON, P.A.
ROBERT D. KLAUSNER (*pro hac vice*)
SEAN M SENDRA
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: 954/916-1202
bob@robertdklausner.com
sean@robertdklausner.com

Additional Counsel for Plaintiff Kissimmee
Utility Authority Employees' Retirement Plan